# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V., <br><br> Plaintiff, <br><br> vs. <br><br> QUECTEL WIRELESS SOLUTIONS CO. LTD., <br><br> Defendant. <br><br> (C.A. No. 20-1707-CFC) <br><br> AND <br><br> KONINKLIJKE PHILIPS N.V., <br><br> Plaintiff, <br><br> vs. <br><br> QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY, INC. <br><br> (C.A. No. 20-1710-CFC) | C.A. No. 20-1707-CFC <br><br> AND <br><br> C.A. No. 20-1710-CFC <br><br><br> JURY TRIAL DEMANDED <br><br> ███████████████ <br><br> Redacted version filed November 17, 2025 |

## KONINKLIJKE PHILIPS'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ITS COMPLAINTS

# **TABLE OF CONTENTS**

I.    Introduction......................................................................................................1

II.    Leave to Amend to Add Eagle Should Be Granted.........................................2

    A.    The Amendment Would Not Be Futile: Philips's Proposed
Amended Complaints Satisfy the Joinder Requirements Because
Quectel and Eagle Have a Partnership Wherein Eagle Sells IoT
Modules that Are Copycats of Quectel Modules ......................................2

    B.    There Was No Delay; Philips Complied with the Scheduling Order........10

III.    Philips's Counts Asserting Infringement of the '711 and '943 Patents Should
Not Be Dismissed with Prejudice..................................................................11

IV.    Conclusion .....................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cozy Comfort Company LLC v. Parties Identified on Schedule A*,
   No. 23-cv-16563, 2024 WL 2722625 (N.D. Ill., May 28, 2024) ..........................9

*Digitech Image Techs., LLC v. Agfaphoto Holding GmbH*,
   No. 8:12-CV-1153-ODW, 2012 WL 4513805 (C.D. Cal. Oct. 1, 2012) .............3

*In re EMC Corp.*,
   677 F.3d 1351 (Fed. Cir. 2012) ....................................................................3, 4

*Klay v. United Healthgroup, Inc.*,
   376 F.3d 1092 (11th Cir. 2004) ........................................................................11

*MGT Gaming Inc. v. WMS Gaming, Inc.*,
   978 F. Supp. 2d 647 (S.D. Miss. 2013) ..............................................................3

*Novartis Vaccines & Diagnostics, Inc. v. MedImmune, LLC*,
   11-084-SLR, 2012 WL 3150524 (D. Del. Aug. 2, 2012).....................................8

*NFC Technology, LLC v. HTC America*,
   No. 2:13-cv-01058-JRG, 2014 WL 3834959 (E.D. Tex. Aug. 1, 2014)..............8

*Omega Patents, LLC v. Skypatrol, LLC*,
   No. 1:11-cv-24201-KMM, 2012 WL 2339320 (S.D. Fla. June 19, 2012)............8

*Ravgen, Inc. v. Quest Diagnostics Inc.*,
   No. 2:21-cv-09011-RGK-GJS, 2022 WL 2047614 (C.D. Cal. Apr. 27, 2022)....8

*SitePro, Inc. v. Waterbridge Res., LLC*,
   No. 6:23-cv-00115-ADA-DTG,
   2024 WL 1724252 (W.D. Tex. Apr. 22, 2024) ...............................................5, 8

*SRI Int'l., Inc. v. Internet Sec. Sys., Inc.*,
   No. 04-1199-SLR, 2005 WL 851126 (D. Del. Apr.13, 2005)............................11

*U.S. Ethernet Innovations, LLC v. Samsung Elecs. Co.*,
   No. 6:12-CV-398-MHS-JDL, 2013 WL 12224135 (E.D. Tex. Feb. 6, 2013) ......7

*Whatru Holding LLC v. Bouncing Angels Inc.*,
No. CV 14-05187, 2014 WL 12629952 (C.D. Cal. Sept. 18, 2014) .....................9

**Statutes**

35 U.S.C. § 299 .......................................................................................... 1, 2, 3

## I.    INTRODUCTION

Leave to amend to add Eagle as a co-defendant should be granted.  Philips's motions were timely.  Eagle is a recently formed company, formed because of Quectel customer concerns with Quectel being identified as a Chinese military company and potential interruptions in supply, which means there are companies in the U.S. that no longer want to buy IoT modules from Quectel.  Quectel will suffer no prejudice from adding its "onshoring" "partner" Eagle.

Quectel's main argument is that the amendment would be futile because joining Eagle would violate 35 U.S.C. § 299.  Quectel has failed to meet its burden to prove futility, however, making only unsupported assertions that Eagle and Quectel are competitors that sell "completely different" products.  Quectel's assertions are contrary to the well pled allegations in Philips's proposed amended complaints, which must be taken to be true with all inferences drawn in Philips's favor under Rule 12.  Moreover, the facts demonstrate that Eagle sells products that are identical clones of Quectel's products, employing Quectel's source code and technology, using the same underlying chipsets, and being marketed as drop-in replacement modules for Quectel modules.  Quectel's assertion that Eagle's products are "completely different" defies credibility, and Quectel has failed to carry its burden to demonstrate futility.  Leave to amend should therefore be granted.

## II.    LEAVE TO AMEND TO ADD EAGLE SHOULD BE GRANTED

Adding Eagle as a co-defendant would not be futile because joinder is proper, and the motion to amend was timely filed, such that a reasonably adjusted case schedule can be prepared to include Eagle.

### A.    The Amendment Would Not Be Futile: Philips's Proposed Amended Complaints Satisfy the Joinder Requirements Because Quectel and Eagle Have a Partnership Wherein Eagle Sells IoT Modules that Are Copycats of Quectel Modules

Philips's proposed amended complaints that add Eagle as a defendant satisfy the requirements of Rule 20 and 35 U.S.C. § 299.  Philips asserts:

> ***Eagle was created to onshore production of infringing products of Quectel***, …. Quectel and Eagle operate ***in partnership, privity and agency*** with each other to ***provide coordinated infringing IoT modules*** and products to customers.…

D.I. 54 (1707 Case), Ex. A, ¶8 (emphasis added); D.I. 78 (1710 Case), Ex. C, ¶17; *see also* D.I. 54 (1707 Case), Ex. A at ¶178 ("the U.S. Secretary of Defense identified Quectel as a 'Chinese military company' and therefore a foreign adversary to the [U.S.]"). Philips further asserts:

> Eagle is Quectel's ***"onshoring" "partner"***. Companies in the U.S. that do not want to buy IoT modules from a Chinese company ***can buy them from Eagle***, which manufactures the IoT modules in Ohio ….

D.I. 54 (1707 Case), Ex. A, ¶30 (emphasis added); D.I. 78 (1710 Case), Ex. C, ¶52. Philips also alleges:

> … ***Eagle provides onshored products to customers that desire onshored products, and Quectel provides products if onshoring is not necessary for the customer***.

2

D.I. 54 (1707 Case), Ex. A, ¶31 (emphasis added); D.I. 78 (1710 Case), Ex. C, ¶53.

> ***Eagle uses Quectel's source code and software and manufacturing knowledge to manufacture modules corresponding to Quectel modules***, and equally infringing. Eagle recently licensed "tech and source code" from Quectel.

D.I. 54 (1707 Case), Ex. A, ¶36 (emphasis added); *see also* D.I. 78 (1710 Case), Ex. C, ¶63.

The proposed complaints repeatedly refer to Eagle's IoT modules being "***copycat modules***" of Quectel modules.  D.I. 54 (1707 Case), Ex. A, ¶82 ("The Accused Products further include ***Eagle's Quectel copycat modules*** …") (emphasis added); *id.*, ¶109, ¶135, ¶152; D.I. 78 (1710 Case), Ex. C, ¶85, ¶120.

The allegations in the proposed complaints thus make clear that the right to relief arises out of the same transaction, occurrence, or series of occurrences related to infringement by the same accused products.

In *In re EMC Corp.*, 677 F.3d 1351 (Fed. Cir. 2012), the Federal Circuit addressed joinder of alleged infringers under Rule 20 shortly after 35 U.S.C. § 299 was enacted, and although it applied Rule 20, the case has been used as guidance in applying Section 299.  *See MGT Gaming Inc. v. WMS Gaming, Inc.*, 978 F. Supp. 2d 647, 658 (S.D. Miss. 2013) ("Courts have … used *In re EMC* for guidance on how the Federal Circuit might address [Section 299]") (citing *Digitech Image Techs., LLC v. Agfaphoto Holding GmbH*, No. 8:12-CV-1153-ODW, 2012 WL 4513805, at *2 (C.D. Cal. Oct. 1, 2012)).  The Federal Circuit explained that the

3

"same transaction or occurrence" test requires a "logical relationship" between the claims and that the "test is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant." *EMC*, 677 F.3d at 1357-58. Here, there will be shared, overlapping facts in proving infringement of the products because: (1) Eagle has an agreement and relationship with Quectel whereby it uses Quectel's source code and manufacturing technology to manufacture IoT modules that can be interchanged with specific Quectel modules (D.I. 54 (1707 Case), Ex. A, ¶36; D.I. 78 (1710 Case), Ex. C, ¶63); (2) the underlying chipset in an Eagle accused product is the same as the underlying chipset in the corresponding Quectel product that performs the same functions (D.I. 54 (1707 Case), Ex. A, ¶37; D.I. 78 (1710 Case), Ex. C, ¶ 64); and (3) the Eagle infringing modules are copycats of the Quectel modules by agreement of Quectel and Eagle.

The Federal Circuit directed courts to consider "whether the alleged acts of infringement occurred during the same time period, the existence of some relationship among the defendants, the use of identically sourced components, licensing or technology agreements between the defendants, overlaps of the products' or processes' development and manufacture, and whether the case involves a claim for lost profits." *EMC*, 677 F.3d at 1359-60. Those factors overwhelmingly support joinder here:

4

- Eagle's and Quectel's infringement is over the same (current) time period.

- There is a close relationship between Quectel and Eagle, as described above. *See, e.g.*, D.I. 54 (1707 Case), Ex. A, ¶36; D.I. 78 (1710 Case), Ex. C, ¶63.

- The accused products use identically sourced components. *See, e.g.*, D.I. 54 (1707 Case), Ex. A, ¶37 ("the aforementioned modules employ the same Qualcomm chipset as Quectel accused modules …."); D.I. 78 (1710 Case), Ex. C, ¶64. And, as one court recently held, "[a]ccused products are the same even if they are diverse as long as they use identical component parts." *SitePro, Inc. v. Waterbridge Res., LLC*, No. 6:23-cv-00115-ADA-DTG, 2024 WL 1724252, at *4 (W.D. Tex. Apr. 22, 2024).

- There is a licensing and technology agreement(s) between Quectel and Eagle under which Eagle uses Quectel's source code and technology such that Eagle manufactures modules that are copycats of Quectel modules. D.I. 54 (1707 Case), Ex. A, ¶36; D.I. 78 (1710 Case), Ex. C, ¶63; D.I. 54, Ex. E and H ("Backed by a licensing agreement with Quectel, [Eagle] will leverage Quectel's cellular IoT module reference designs and manufacturing technology, generating

license revenue for Quectel…. Quectel will send approximately 30 employees to Ohio in early 2025 to train Eagle's workforce ….").

- Based on that relationship, arrangement and agreement between the companies, there are direct overlaps in the products' development and manufacture. *See id*.

Quectel's allegation that the Eagle and Quectel products are "completely different" (D.I. 61 (1707 Case) at 5) is unsupported and defies credibility. Indeed, Eagle ██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ :

████████████████████████████████████████████████████████████████████████████████████████

Ex. I at KPNV0023901 (attached).

As shown above, ███████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

6



Contrary to Eagle's documents, Quectel asserted in its opposition that "[t]he accused Eagle products are a completely different set of products." D.I. 61 (1707 Case) at 5-6.

Ex. I at KPNV0023908 (emphasis added).

Thus, third party sellers refer to Eagle modules as "[d]rop-in-replacement[s]" for Quectel modules, such as Eagle's I4915Q for Quectel's EG915Q. Ex. J (https://techship.com/product/eagle-i4915-qaflg-n03-sgnsa-lte-cat-1-bis-lga/?variant=001).

In similar cases, and in cases with much less coordination between defendants than here, courts have found joinder permissible. In *NFC Technology, LLC v. HTC America*, the court held that diverse products using identical component parts (just as Eagle uses identical component parts as Quectel) met the joinder standard. No. 2:13-cv-01058-JRG, 2014 WL 3834959, at *4 (E.D. Tex. Aug. 1, 2014); *see also U.S. Ethernet Innovations, LLC v. Samsung Elecs. Co.*, No.

6:12-CV-398-MHS-JDL, 2013 WL 12224135, at *2 (E.D. Tex. Feb. 6, 2013) (finding that joinder was proper because the accused products of second defendant functionally integrate the same accused component), *report and recommendation adopted*, No. 6:12-CV-398 MHS-JDL, 2013 WL 12224134 (E.D. Tex. Mar. 20, 2013).

Likewise, in *SitePro*, the court found that where defendants both allegedly used plaintiff's trade secrets to create the accused products, the products were sufficiently the same.  2024 WL 1724252, at *4; *see also Ravgen, Inc. v. Quest Diagnostics Inc.,* No. 2:21-cv-09011-RGK-GJS, 2022 WL 2047614, at *2 (C.D. Cal. Apr. 27, 2022) (joinder proper where defendants worked "in concert … to process and develop" accused product).

Similarly, in *Novartis Vaccines & Diagnostics, Inc. v. MedImmune, LLC*, the court found that joinder was proper where there was an overlap in "the development and manufacture of the product" for defendants' separate products. No. 11-084-SLR, 2012 WL 3150524, at *3 (D. Del. Aug. 2, 2012).

In *Omega Patents, LLC v. Skypatrol, LLC*, joinder was permissible where one defendant manufactured an accused product and the plaintiff asserted the other defendant reconfigured, modified, and rebranded the product for distribution under its own name.  No. 1:11-cv-24201-KMM, 2012 WL 2339320, at *2 (S.D. Fla. June 19, 2012).

Finally, in *Whatru Holding LLC v. Bouncing Angels Inc.*, the plaintiff's allegation that both defendants had the same address was sufficient, and the court also found that defendants failed to prove futility of amendment where they only made a "bare assertion" that they "act independently."  No. CV 14-05187, 2014 WL 12629952, at *5 (C.D. Cal. Sept. 18, 2014).  Here, similarly, Quectel's unsupported (and incredible) allegation that it is "not collaborative" with Eagle and instead is a "competit[or]" of Eagle (*e.g.*, D.I. 61 (1707 Case) at 9) is insufficient to prove that adding Eagle would be futile.

Quectel cites *Cozy Comfort Company LLC v. Parties Identified on Schedule A*, but that court was addressing the "cottage industry" of "Schedule A" cases in which numerous online retailers are defendants in a single action, the plaintiff made only a cursory allegation that the separate accused products "bear similarities and indicia of being related …, suggesting that the [products] were manufactured by … a common source and that, upon information and belief, Defendants are interrelated," and actual evidence put forth at the preliminary injunction stage showed variance in the different defendants' products.  No. 23-cv-16563, 2024 WL 2722625, at *9 (N.D. Ill., May 28, 2024).  As opposed to *Cozy*, where there was only a suggestion that the defendants might be interrelated, here, Quectel and Eagle have publicly announced their relationship (*e.g.*, D.I. 54 (1707 Case), Ex. E), and Quectel offers only conclusory allegations, rather than evidence.

9

The alleged and actual facts demonstrate that Eagle and Quectel act in concert and sell the same accused products that were originally designed by Quectel, with that design and also manufacturing know-how provided by Quectel so Eagle can manufacture and sell copycat products.  Philips's motion should therefore be granted.

**B.      There Was No Delay; Philips Complied with the Scheduling Order**

There was no delay.  Philips's motions comply with the scheduling order, which includes an amendment and joinder deadline of October 14.  D.I. 36 (1707), ¶8(a); D.I. 63 (1710), 8(a).  Because Quectel agreed to that date, it implicitly agreed the schedule could accommodate such a motion, and Quectel's attempt to argue the contrary now fails.

Quectel claims that joining Eagle would cause "delay," "complicate" the case, and "drive up costs."  D.I. 61 (1707 Case) at 11.  Quectel effectively suggests piecemeal litigation where the resolution of this case could be incomplete because Eagle could be a workaround to an injunction issued by this Court preventing continued infringement.

Moreover, Philips is serving its infringement contentions on Eagle at the same time it is filing this reply, and a redline of those proposed contentions compared to the current contentions demonstrates the simplicity of adding Eagle's accused products, showing minor additions.  *See* Ex. L.  Thus, the schedules

10

should only require minor adjustments to accommodate adding Eagle.  Indeed, the

Court and parties would benefit from resolving overlapping factual (*e.g.*, the

license between Quectel and Eagle) or legal issues (*e.g.*, claim construction)

together.  *See SRI Int'l., Inc. v. Internet Sec. Sys., Inc.*, No. 04-1199-SLR, 2005

WL 851126, at *4 (D. Del. Apr.13, 2005) (permitting joinder to avoid duplicitous

claim construction and validity issues).

## III.  PHILIPS'S COUNTS ASSERTING INFRINGEMENT OF THE '711 AND '943 PATENTS SHOULD NOT BE DISMISSED WITH PREJUDICE

Philips's counts asserting infringement of the '711 and '943 Patents should

be dismissed ***without*** prejudice.  *See, e.g., Klay v. United Healthgroup, Inc.*, 376

F.3d 1092, 1107 (11th Cir. 2004) ("Unless the plaintiff's motion or the district

court's order stipulates otherwise, a claim dropped … is dismissed without

prejudice.").

Quectel cites ***no case law or other legal support*** for its proposition that the

requested dismissal of these claims should be with prejudice.

Instead, Quectel's argument is based on an unsupported allegation that

Philips's reason for seeking to dismiss these counts is not to streamline the cases,

but rather some other reason, although Quectel does not say what that other reason

may be.  Quectel misstates the record, confusing Philips's motion to sever and

consolidate FRAND-related claims with dismissing certain patent counts.  Philips

11

sought to move certain FRAND-related claims from the 1710 Case to the 1707 Case by way of a motion to sever and consolidate filed on September 29, which included proposed amended complaints.  D.I. 42 (1707 Case); D.I. 67 (1710 Case). The amended complaints filed on October 3 –  coincidentally also the day infringement contentions were due – were filed pursuant to the Court's order on the motion to sever and consolidate (D.I. 43 (1707 Case)), under which Philips was bound not to make further substantive changes to those proposed amended complaints at that time, and these amended complaints were filed based on **Defendants' request**, simply to "clarify which counts are at issue for the record." Ex. K.

Philips was separately in the process of evaluating which patents to assert, with an eye toward streamlining the cases, which coincided with the issuance of the infringement contentions.  Quectel makes a strawman argument rather than relying on legal authority.  The Court should permit the '711 and '943 Patents be dismissed without prejudice to streamline the case, as is common practice.

## IV.    CONCLUSION

Philips respectfully requests that the Court grant Philips's motion.

Dated: November 4, 2025

Of Counsel:

Eley O. Thompson (pro hac vice)
Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
(312) 832-4359
ethompson@foley.com

Kevin M. Littman (pro hac vice)
Lucas I. Silva (pro hac vice)
Foley & Lardner LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199-7610
(617) 342-4000
klittman@foley.com
lsilva@foley.com

*Attorneys for Plaintiff Koninklijke Philips N.V*

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Adam W. Poff*
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Alexis N. Stombaugh (No. 6702)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com
astombaugh@ycst.com

13

## <u>WORD COUNT CERTIFICATION</u>

Pursuant to the Court's Standing Order Regarding Briefing in All Cases (Nov. 10, 2022) and Local Rule 7.1.3(a)(4), the undersigned counsel hereby certifies that the foregoing document contains 2,490 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the foregoing document. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Adam W. Poff*
Adam W. Poff (No. 3990)

14

# EXHIBIT I

## REDACTED IN ITS ENTIRETY

# EXHIBIT J



# EXHIBIT K

**Shine, Laura A.**

| | |
|---|---|
| **From:** | Liz Ranks <ranks@fr.com> |
| **Sent:** | Thursday, September 25, 2025 2:18 PM |
| **To:** | Littman, Kevin M.; SERVICE - FR Quectel 1707-1710 Team; Craig.Leavell@btlaw.com; aron.carnahan@huschblackwell.com; kdorsney@morrisjames.com; chad.stover@btlaw.com; Warren Mabey, Jr.; jcp@pmhdelaw.com; Lauren.Griffin@alston.com; Kirk.Bradley@alston.com; chitch; Glennon.fogarty@huschblackwell.com; MJIPPara@morrisjames.com; Katherine Reardon |
| **Cc:** | BOST - F - Philips - Quectel-01707; APOFF@ycst.com; RVrana@ycst.com; astombaugh@ycst.com |
| **Subject:** | RE: Philips v. Quectel et al - 1707 and 1710 actions: (1) unopposed motion to sever/consolidate; (2) stipulation on ITC record |

**\*\*\* EXTERNAL EMAIL MESSAGE \*\*\***

Kevin,

Thanks for the drafts.  We are reviewing and will get back to you with any edits.

On the motion to sever, we do think Philips should provide amended complaints for both cases, and attach them as exhibits to the motion.  For 1710, this will help clarify which counts are at issue for the record.  For the 1707, Philips needs to drop the 814 patent anyway, and possibly the 929 patent, which will impact the numbering of the causes of action.  Happy to have a call to discuss further if Philips does not agree.

Thanks,
Liz

Liz Ranks
FISH : Boston
617.368.2175

---

**From:** Littman, Kevin M. <KLittman@foley.com>
**Sent:** Thursday, September 25, 2025 12:11 PM
**To:** Liz Ranks <ranks@fr.com>; SERVICE - FR Quectel 1707-1710 Team <SERVICEFRQuectel17071710Team@fr.com>; Craig.Leavell@btlaw.com; aron.carnahan@huschblackwell.com; kdorsney@morrisjames.com; chad.stover@btlaw.com; Warren Mabey, Jr. <mabey@fr.com>; jcp@pmhdelaw.com; Lauren.Griffin@alston.com; Kirk.Bradley@alston.com; chitch <chitch@morrisjames.com>; Glennon.fogarty@huschblackwell.com; MJIPPara@morrisjames.com; Katherine Reardon <reardon@fr.com>
**Cc:** BOST-F-Philips-Quectel-01707@foley.com; APOFF@ycst.com; RVrana@ycst.com; astombaugh@ycst.com
**Subject:** Philips v. Quectel et al - 1707 and 1710 actions: (1) unopposed motion to sever/consolidate; (2) stipulation on ITC record

[This email originated outside of F&R.]

Counsel for Quectel, Laird (n/k/a Ezurio), Xirgo and CalAmp,

Attached are: (1) a draft unopposed motion to sever Counts V-VIII from the 1710 case and consolidate them into the 1707 case; and (2) a stipulation and proposed order regarding transfer of the ITC record.

Please let us know if you have any comments and, if not, please confirm that you do not oppose the motion to sever/consolidate and that you agree to the stipulation and proposed order on the transfer of the ITC record.

Regards,


**Kevin M. Littman**
*Partner*

**Foley & Lardner LLP**
111 Huntington Ave, Suite 2500, Boston, MA 02199-7610
Phone 617.342.4020 | Cell 617.797.0690
View My Bio | Visit Foley.com | klittman@foley.com



**FOLEY & LARDNER LLP**


The information contained in this message, including but not limited to any attachments, may be confidential or protected by the attorney-client or work-product privileges. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message and any attachments or copies. Any disclosure, copying, distribution or reliance on the contents of this message or its attachments is strictly prohibited, and may be unlawful. Unintended transmission does not constitute waiver of the attorney-client privilege or any other privilege. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party. Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.


*************************************************************************************************************
*************************
This email message is for the sole use of the intended recipient(s) and may contain confidential
and privileged information. Any unauthorized use or disclosure is prohibited. If you are not the
intended recipient, please contact the sender by reply email and destroy all copies of the original
message.
*************************************************************************************************************
*************************

# EXHIBIT L

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| KONINKLIJKE PHILIPS N.V., <br><br> Plaintiff, <br><br> vs. <br><br> QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY INC., EAGLE ELECTRONICS INC. <br><br> Defendants. | C.A. No. 20-cv-1710-CFC <br><br><br> **JURY TRIAL DEMANDED** |

## KONINKLIJKE PHILIPS N.V.'s UPDATED INFRINGEMENT CONTENTIONS (ADDING EAGLE)

Pursuant to Paragraph 3 of the Scheduling Order (D.I. 63), Plaintiff Koninklijke Philips N.V. ("Philips") hereby provides its updated disclosure of asserted claims and infringement contentions to Quectel Wireless Solutions Co. Ltd ("Quectel"), Eagle Electronics Inc. ("Eagle"), CalAmp Corporation ("CalAmp"), Xirgo Technologies, LLC ("Xirgo"), and Laird Connectivity Inc. (n/k/a Ezurio) ("Laird") (collectively, "Defendants") for Philip's U.S. Patent Nos. 7,944,935 ("'935 Patent") and 7,831,271 ("'271 Patent") (collectively, "Asserted Patents"), adding minor contentions that add Eagle's accused products that are copycat products of Quectel's products.

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

Philips provides these Updated Infringement Contentions, including the contentions set forth herein and in the attached exhibits, based on information currently available to Philips, its present understanding, and without the benefit of full document discovery, depositions, or the claim construction process. The citations in this document and the attached exhibits are only exemplary. For example, where Philips cites a portion of a document or other information, Philips incorporates the entirety of the document or other information by reference. Philips further reserves the right to use and rely on additional information, including information that will be obtained and/or clarified during discovery in this case and any other related proceeding. Philips reserves the right to supplement or amend its Infringement Contentions based on any information obtained or clarified as this action progresses, through discovery, claim construction, or otherwise.

## I.    Summary of Infringement Contentions

Philips contends that Defendants infringesinfringe the Asserted Patents, either literally or under the doctrine of equivalents. Furthermore, Philips contends that Defendants infringe or have infringed under 35 U.S.C. § 271(a) for at least the asserted claims as identified herein by making, using, offering to sell, and selling one or more of its products to its customers. Defendants further are committing/have committed indirect infringement under 35 U.S.C. § 271(b) by actively inducing infringement of the asserted claims as identified herein. Defendants also are

2

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

committing/have committed contributory infringement under 35 U.S.C. § 271(c) by making, using, offering for sale, and/or selling in the United States the products accused of infringement.

The table below provides the following information:

1. each presently asserted claim of each patent infringed by Defendants;

2. each product presently identified, on information and belief, to infringe each asserted claim; and

3. a detailed infringement chart for each Asserted Patent which specifically identifies each element of each asserted claim and where such elements are found in the Accused Products based on information and belief.

In each instance , the following  products of Quectel and Eagle are equivalent and equally accused of infringement:



HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

| Asserted Patent | Asserted Claim(s) | Presently Accused Products | Corresponding Claim Chart(s) |
|---|---|---|---|
| '935 Patent | 1, 2, 3, 4, 9, 10, 11, 12, 17 | EC21<br>EG91 (and all variants thereof including EG91-NA) (and Eagle's I491 / I491-NAX)<br>RG500Q<br>RM500Q-GL<br>EG12<br>EM12<br>EG18<br>AG550Q<br>EC20<br>AG35<br>EC25<br>EG25-G (and Eagle's I425-G / I425-AF)<br>EG95<br>SC200R<br>EG06<br>EM06<br>EP06<br>SC600T<br>SC600Y<br>SC66<br>BG95-M1<br>BG96<br>BG96-MA<br>BG96-MC<br>BG600L-M3<br>BG77<br>BG95 (and all variants) (and Eagle's I490 / I490-M3 / I490-M)<br>BC66<br>BC65<br>BC66-NA | Exs. 1–3 (Quectel and Eagle)[10]<br>Ex. 4 (Xirgo)<br>Ex. 5 (CalAmp)<br>Ex. 6 (Laird) |

---

[10] The Quectel charts should be viewed to now also include accused Eagle products.

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

| Asserted Patent | Asserted Claim(s) | Presently Accused Products | Corresponding Claim Chart(s) |
|---|---|---|---|
| | | BC68 | |
| | | BC92 | |
| | | BC95-G | |
| | | EC21-G | |
| | | EM12-G | |
| | | AG520R | |
| | | AG15 | |
| | | EM05 | |
| | | SC20 and all its variants | |
| | | EC200U | |
| | | EG915K-EU | |
| | | EG916Q-GL (and variants) (and Eagle's I4916Q) | |
| | | EG810M | |
| | | EG800K | |
| | | EG25-GL (and Eagle's I425-GL / I425-AF) | |
| | | EG21-GL (and Eagle's I421-GL / I421-AF) | |
| | | EC200A | |
| | | EG950A | |
| | | EG915Q (and variants) (Eagle's I4915Q) | |
| | | EG800Q (and Eagle's I4810Q) | |
| | | EG912N | |
| | | EG912U | |
| | | EG915N | |
| | | EG915U | |
| | | EM061k-GL | |
| | | EG060W-EA | |
| | | EG060K | |
| | | EG065K | |
| | | EG120K | |
| | | EM120K-GL | |
| | | EM060K | |
| | | EM160R-GL | |

5

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

| Asserted Patent | Asserted Claim(s) | Presently Accused Products | Corresponding Claim Chart(s) |
|---|---|---|---|
| | | EM121R-GL | |
| | | EG512R-EA | |
| | | EM120R-GL | |
| | | 5G RG620T | |
| | | 5G RG255AA | |
| | | 5G RM500K-CN | |
| | | 5G RedCap RG255C-GL | |
| | | 5G RG600L | |
| | | 5G RM500U | |
| | | 5G RedCap RG255G | |
| | | 5G RG651E-NA | |
| | | 5G RedCap RG255C | |
| | | 5G RG650V (and Eagle's I5650V-NA) | |
| | | 5G RG650E | |
| | | 5G RG500L | |
| | | 5G RG530F | |
| | | 5G RedCap RM255C-GL | |
| | | 5G RG520F | |
| | | 5G RM530N-GL | |
| | | 5G RG525F-NA | |
| | | 5G RG500U | |
| | | 5G RG520N | |
| | | 5G RM520N | |
| | | Laird Sentrius RG191[1] | |
| | | Xirgo XT3562[2] | |
| | | Xirgo XT4964[3] | |
| | | Xirgo XT2180[4] | |
| | | Xirgo XT2580[5] | |
| | | Xirgo XT3182[6] | |

---

[1] Accused product as to Defendant Laird only.
[2] Accused product as to Defendant Xirgo only.
[3] Accused product as to Defendant Xirgo only.
[4] Accused product as to Defendant Xirgo only.
[5] Accused product as to Defendant Xirgo only.
[6] Accused product as to Defendant Xirgo only.

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

| Asserted Patent | Asserted Claim(s) | Presently Accused Products | Corresponding Claim Chart(s) |
|---|---|---|---|
| | | Xirgo XT6264[7] -CalAmp products that incorporate the Quectel EG25-G module (and Eagle's I425-G / I425-AF)[8] -CalAmp products that incorporate the Quectel BG96 module[9] | |
| '271 Patent | 1, 2, 3, 4, 5, 6, 7, 8 | UC15 UC200T UG96 UC20 UC20-G EC21 EG21-G (and Eagle's I421-G / I421-AF) EG91 (and all variants thereof including EG91-NA) (and Eagle's I491 / I491-NAX) RG500Q RM500Q-GL EG12 EM12 EG18 AG550Q EC20 AG35 EC25 EG25-G (and Eagle's I425-G / I425-AF) EG95 SC200R | Exs. 7–9 (Quectel and Eagle)[16] Ex. 10 (Xirgo) Ex. 11 (CalAmp) Ex. 12 (Laird) |

---

[7] Accused product as to Defendant Xirgo only.
[8] Accused product as to Defendant CalAmp only.
[9] Accused product as to Defendant CalAmp only.
[16] The Quectel charts should be viewed to now also include accused Eagle products.

7

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

| Asserted Patent | Asserted Claim(s) | Presently Accused Products | Corresponding Claim Chart(s) |
|---|---|---|---|
| | | EG06<br>EM06<br>EP06<br>SC600T<br>SC600Y<br>SC66<br>SC20 and all its variants<br>UC200A-GL<br>EG25-GL (and Eagle's I425-GL / I425-AF)<br>EG21-GL (and Eagle's I421-GL / I421-AF)<br>EC200A<br>Laird Sentrius RG191[11]<br>Xirgo XT4964[12]<br>Xirgo XT3182[13]<br>Xirgo XT6264[14]<br>-CalAmp products that incorporate the Quectel EG25-G module (and Eagle's I425-G / I425-AF)[15] | |

Defendants directly and indirectly infringed, and continues to directly and indirectly infringe, the asserted claims of the Asserted Patents, either literally or under the doctrine of equivalents.

Based on Defendants' discovery responses, Philips may amend the list of accused products for the '271 patent to include any additional of Defendants'

---

[11] Accused product as to Defendant Laird only
[12] Accused product as to Defendant Xirgo only.
[13] Accused product as to Defendant Xirgo only.
[14] Accused product as to Defendant Xirgo only.
[14] Accused product as to Defendant CalAmp only.
[15] Accused product as to Defendant CalAmp only.

8

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

products that support 3G and the list of accused products for the '935 patent to include any additional of Defendants products that support 4G.

## A. Infringement of the '935 Patent

Defendants directly infringed and continue to infringe the '935 Patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and selling within the United States the Accused Products. Defendants willfully infringed and continue to willfully infringe the '935 Patent because they knew of or should have known of the '935 Patent and their infringement of the '935 Patent. Quectel and Eagle knew or should have known of the '935 Patent and its infringement at least as early as December 2015. CalAmp knew or should have known of the '935 Patent and its infringement at least as early as October 2020. Xirgo knew or should have known of the '935 Patent and its infringement at least as early as October 2020. Laird knew or should have known of the '935 Patent and its infringement at least as early as November 2020.  Moreover, each of the Defendants' willfulness is further supported by the fact that they have refused to negotiate in good faith toward a FRAND license for years since receiving notice from Philips.

Defendants indirectly infringed and continue to indirectly infringe, under 35 U.S.C. § 271(b) by actively inducing infringement of the '935 Patent. For example, Defendants instructed and continue to instruct third parties, such as distributors, customers, and/or end users on the use, sale, or offer for sale of the Accused Products

9

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

in the United States in a manner that directly infringes at least one claim of the '935 Patent, despite knowing that such action results in infringement of the '935 Patent. Defendants also marketed, promoted, and continues to market and promote the Accused Products, including, but not limited to, for example, as set forth in Quectel's catalog. *See generally* https://www.quectel.com/product-selector/; *https://www.eagleelectronics.com/products/?_network_categories=4g*. Defendants purposefully designed the Accused Products to be used by distributors, customers, and/or end users, and Defendants continue to sell the Accused Products to be used in an infringing manner.

For example, Quectel has taken the position in previous litigation that the "United States is significant to Quectel" and Quectel maintainsand Eagle maintain salespeople in the United States. Quectel uses itsand Eagle use their module data sheets to market its modules to customers, said data sheets containing information regarding the cellular carrier certifications of a module and technical specifications such as the communication standard of the module. To further facilitate use of the modules in an infringing manner, Quectel providesand Eagle provide customer support, user manuals, and "Master Classes" (a technical webinar focused on IoT devices) to its customers. These materials encourage infringement by showing customers how to integrate the modules into customer products and how to enable cellular connectivity and use the modules in an infringing manner. Furthermore,

10

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

Quectel ~~advertises~~and Eagle advertise the carrier certifications of their modules to customers in the United States. Obtaining such carrier certifications is of significant importance to Quectel and Eagle and further allows it to market these certifications to customers, which leads to Quectel and Eagle inducing infringement through its customers.

Another example of indirect infringement is Laird's public promotion of how its customers deploy Laird products in an infringing manner. Laird also advertises its products as being AT&T and Verizon certified. Obtaining such certification is not simply a regulatory requirement; it removes barriers to U.S. market adoption and gives customers in the United States assurance of immediate compatibility with domestic networks. Laird's marketing emphasizes this capability to target U.S. customers.  By promoting these certifications and providing the technical know-how to enable the certified features, Laird actively induces infringement through its customers.

Another example of indirect infringement is Xirgo's active marketing of its infringing products. Xirgo advertises its products as being FCC certified as well as being AT&T, T-Mobile, Sprint, and Verizon certified. These certifications are featured prominently in Xirgo's various advertising. FCC certification is essential to legally sell such devices in the United States; carrier certifications are equally critical to ensuring the products will operate immediately on U.S. cellular networks. By

11

HIGHLY CONFIDENTIAL — ATTORNEYS EYES ONLY

actively emphasizing these certifications and marketing compatibility with major carriers, Xirgo is deliberately targeting U.S.-based customers to adopt and integrate the accused products into systems and solutions that infringe the Asserted Patents.

Another example of indirect infringement is CalAmp's targeted marketing and promotion of its infringing products' cellular capabilities to U.S. customers. CalAmp advertises that its products are certified for use on the AT&T and Verizon networks and have also been certified by the FCC. CalAmp's marketing materials highlight cellular connectivity as a core feature, demonstrating how customers can connect devices to these networks in ways that infringe the Asserted Patents. By emphasizing network certifications and ensuring that customers can readily implement them, CalAmp's conduct encourages and induces infringement through its customers.

Thus, these third parties indirectly infringe the '935 Patent by making, using, offering for sale, and selling the Accused Products at the direction and encouragement of Defendants.

Defendants also contributorily infringed and continue to contributorily infringe the '935 Patent under 35 U.S.C. § 271(c) by offering to sell and/or selling within the United States the Accused Products, which constitute a material part of the inventions of the '935 Patent. Further, Defendants understand that the Accused Products are adapted for use in the infringement of the '935 Patent and are therefore

12

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

not a staple article or commodity of commerce suitable for non-infringing use. Furthermore, as described above, Defendants had and continue to have knowledge of the '935 Patent and that third parties, including but not limited to distributors, customers, and end users, make, use, sell, and/or offer to sell the Accused Products in manners which infringe the '935 Patent with no other substantial non-infringing use.

For years, Philips has repeatedly offered to license rights to its world-wide portfolio that includes the '935 Patent to the Defendants. As a result, Quectel and Eagle had actual knowledge of the '935 Patent since at least as early as December 29, 2015. CalAmp had actual knowledge of the '935 Patent since at least as early as October 19, 2020. Xirgo had actual knowledge of the '935 Patent since at least as early as October 19, 2020. Laird had actual knowledge of the '935 Patent since at least as early as November 12, 2020.

Defendants' infringement of the '935 Patent began as early as when they started selling the Accused Products that practice the applicable standard. The start of the claimed damages period for the '935 Patent begins on the earliest date that Defendants became aware of the '935 Patent. The end of the claimed damages period for the '935 Patent ends upon the expiration of the '935 Patent.

13

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

### B. Infringement of the '271 Patent

Defendants directly infringed and continue to infringe the '271 Patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and selling within the United States the Accused Products. Defendants willfully infringed and continue to willfully infringe the '271 Patent because they knew of or should have known of the '271 Patent and their infringement of the '271 Patent. Quectel and Eagle knew or should have known of the '271 Patent and its infringement at least as early as December 2015. CalAmp knew or should have known of the '271 Patent and its infringement at least as early as October 2020. Xirgo knew or should have known of the '271 Patent and its infringement at least as early as October 2020. Laird knew or should have known of the '271 Patent and its infringement at least as early as November 2020. Moreover, each of the Defendants' willfulness is further supported by the fact that they have refused to negotiate in good faith toward a FRAND license for years since receiving notice from Philips.

Defendants indirectly infringed and continue to indirectly infringe, under 35 U.S.C. § 271(b) by actively inducing infringement of the '935 Patent. For example, Defendants instructed and continue to instruct third parties, such as distributors, customers, and/or end users on the use, sale, or offer for sale of the Accused Products in the United States in a manner that directly infringes at least one claim of the '935 Patent, despite knowing that such action results in infringement of the '935 Patent.

14

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

Defendants also marketed, promoted, and continues to market and promote the Accused Products, including, but not limited to, for example, as set forth in Quectel's catalog. *See generally* https://www.quectel.com/product-selector/; *https://www.eagleelectronics.com/products/?_network_categories=4g*. Defendants purposefully designed the Accused Products to be used by distributors, customers, and/or end users, and Defendants continue to sell the Accused Products to be used in an infringing manner.

For example, Quectel has taken the position in previous litigation that the "United States is significant to Quectel" and Quectel maintainsand Eagle maintain salespeople in the United States. Quectel uses itsand Eagle use their module data sheets to market its modules to customers, said data sheets containing information regarding the cellular carrier certifications of a module and technical specifications such as the communication standard of the module. To further facilitate use of the modules in an infringing manner, Quectel providesand Eagle provide customer support, user manuals, and "Master Classes" (a technical webinar focused on IoT devices) to its customers. These materials encourage infringement by showing customers how to integrate the modules into customer products and how to enable cellular connectivity and use the modules in an infringing manner. Furthermore, Quectel advertisesand Eagle advertise the carrier certifications of their modules to customers in the United States. Obtaining such carrier certifications is of significant

15

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

importance to Quectel and Eagle and further allows it to market these certifications to customers, which leads to Quectel and Eagle inducing infringement through its customers.

Another example of indirect infringement is Laird's public promotion of how its customers deploy Laird products in an infringing manner. Laird also advertises its products as being AT&T and Verizon certified. Obtaining such certification is not simply a regulatory requirement; it removes barriers to U.S. market adoption and gives customers in the United States assurance of immediate compatibility with domestic networks. Laird's marketing emphasizes this capability to target U.S. customers. By promoting these certifications and providing the technical know-how to enable the certified features, Laird actively induces infringement through its customers.

Another example of indirect infringement is Xirgo's active marketing of its infringing products. Xirgo advertises its products as being FCC certified as well as being AT&T, T-Mobile, Sprint, and Verizon certified. These certifications are featured prominently in Xirgo's various advertising. FCC certification is essential to legally sell such devices in the United States; carrier certifications are equally critical to ensuring the products will operate immediately on U.S. cellular networks. By actively emphasizing these certifications and marketing compatibility with major

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

carriers, Xirgo is deliberately targeting U.S.-based customers to adopt and integrate the accused products into systems and solutions that infringe the Asserted Patents.

Another example of indirect infringement is CalAmp's targeted marketing and promotion of its infringing products' cellular capabilities to U.S. customers. CalAmp advertises that its products are certified for use on the AT&T and Verizon networks and have also been certified by the FCC. CalAmp's marketing materials highlight cellular connectivity as a core feature, demonstrating how customers can connect devices to these networks in ways that infringe the Asserted Patents. By emphasizing network certifications and ensuring that customers can readily implement them, CalAmp's conduct encourages and induces infringement through its customers.

Thus, these third parties indirectly infringe the '935 Patent by making, using, offering for sale, and selling the Accused Products at the direction and encouragement of Defendants.

Defendants also contributorily infringed and continue to contributorily infringe the '935 Patent under 35 U.S.C. § 271(c) by offering to sell and/or selling within the United States the Accused Products, which constitute a material part of the inventions of the '935 Patent. Further, Defendants understand that the Accused Products are adapted for use in the infringement of the '935 Patent and are therefore not a staple article or commodity of commerce suitable for non-infringing use.

17

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

Furthermore, as described above, Defendants had and continue to have knowledge of the '935 Patent and that third parties, including but not limited to distributors, customers, and end users, make, use, sell, and/or offer to sell the Accused Products in manners which infringe the '935 Patent with no other substantial non-infringing use.

For years, Philips has repeatedly offered to license rights to its world-wide portfolio that includes the '271 Patent to the Defendants. As a result, Quectel and Eagle had actual knowledge of the '271 Patent since at least as early as December 29, 2015. CalAmp had actual knowledge of the '271 Patent since at least as early as October 19, 2020. Xirgo had actual knowledge of the '271 Patent since at least as early as October 19, 2020. Laird had actual knowledge of the '271 Patent since at least as early as November 12, 2020.

Defendants' infringement of the '271 Patent began as early as when they started selling the Accused Products that practice the applicable standard. The start of the claimed damages period for the '271 Patent begins on the earliest date that Defendants became aware of the '271 Patent. The end of the claimed damages period for the '271 Patent ends upon the expiration of the '271 Patent.

## II. Priority Date of Asserted Patents

Subject to paragraph 3(f) of the Scheduling Order (D.I. 36), Philips is to identify the priority date for which each Asserted Claim is entitled to the extent the

HIGHLY CONFIDENTIAL—ATTORNEYS EYES ONLY

Asserted Patents claim priority to an earlier application. The Asserted Claims of the '935 Patent are entitled to a priority date of September 30, 2004. The Asserted the Claims of the '271 Patent are entitled to a priority date of August 11, 2003.

## III.    Identification of Embodying Instrumentalities

The Asserted Claims of the Asserted Patents are essential to the practice of one or more mandatory portions of the 4G (LTE) and/or 3G (UMTS) standards. As such, any product or system that is compliant with and implements the relevant portions of these standards necessarily practices each and every limitation of the Asserted Claims. Accordingly, all products that implement or are compliant with the applicable portions of the applicable standards practice the Asserted Claims of the Asserted Patents.

19

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

| Summary report: Litera Compare for Word 11.7.0.54 Document comparison done on 11/4/2025 4:31:01 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Infringement Contentions Cover Pleading - 1710.docx | |
| **Modified filename:** Infringement Contentions Cover Pleading - 1710 - adding Eagle - clean.docx | |
| **Changes:** | |
| Add | 62 |
| Delete | 21 |
| Move From | 1 |
| Move To | 1 |
| Table Insert | 1 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 86 |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br>vs.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD., EAGLE ELECTRONICS INC.<br><br>Defendant. | C.A. No. 20-cv-1707-CFC<br><br><br>**JURY TRIAL DEMANDED** |

## KONINKLIJKE PHILIPS N.V.'s UPDATED INFRINGEMENT CONTENTIONS (ADDING EAGLE)

Pursuant to Paragraph 3 of the Scheduling Order (D.I. 36), Plaintiff Koninklijke Philips N.V. ("Philips") hereby provides its updated disclosure of asserted claims and infringement contentions to Defendant Quectel Wireless Solutions Co. Ltd ("Quectel") and Eagle Electronics Inc. ("Eagle") for Philip's U.S. Patent Nos. 9,635,599 ("'599 Patent"), 7,089,028 ("'028 Patent"), 8,195,216 ("'216 Patent), and 9,178,577 ("'577 Patent") (collectively, "Asserted Patents"), adding minor contentions that add Eagle's accused products that are copycat products of Quectel's products.

Philips provides these Updated Infringement Contentions, including the contentions set forth herein and in the attached exhibits, based on information

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

currently available to Philips, its present understanding, and without the benefit of full document discovery, depositions, or the claim construction process. The citations in this document and the attached exhibits are only exemplary. For example, where Philips cites a portion of a document or other information, Philips incorporates the entirety of the document or other information by reference. Philips further reserves the right to use and rely on additional information, including information that will be obtained and/or clarified during discovery in this case and any other related proceeding. Philips reserves the right to supplement or amend its Infringement Contentions based on any information obtained or clarified as this action progresses, through discovery, claim construction, or otherwise.

## I.   Summary of Infringement Contentions

Philips contends that Quectel infringes the Asserted Patents, either literally or under the doctrine of equivalents. Furthermore, Philips contends that Quectel infringes or has infringed under § 35 U.S.C. 271(a) for at least the asserted claims as identified herein by making, using, offering to sell, and selling one or more of its products to its customers. Quectel further is committing/has committed indirect infringement under 35 U.S.C. § 271(b) by actively inducing infringement of the asserted claims as identified herein. Quectel also is committing/has committed contributory infringement under 35 U.S.C. § 271(c) by making, using, offering for sale, and/or selling in the United States the products accused of infringement.

2

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

The table below provides the following information:

1.      each presently asserted claim of each patent infringed by Quectel;

2.      each product presently identified, on information and belief, to infringe each asserted claim; and

3.      a detailed infringement chart for each Asserted Patent which specifically identifies each element of each asserted claim and where such elements are found in the Accused Products based on information and belief.

In each instance , the following products of Quectel and Eagle are equivalent and equally accused of infringement:



3

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

| Asserted Patent | Asserted Claim(s) | Presently Accused Products | Corresponding Claim Chart(s) |
| --- | --- | --- | --- |

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

4

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

| '216 Patent | 13 | UC15<br>UC200T<br>UG96<br>UC20<br>UC20-G<br>EC21<br>EG21-G (and Eagle's I421-G / I421-AF)<br>EG91 (and all variants thereof including EG91-NA) (and Eagle's I491 / I491-NAX)<br>RG500Q<br>RM500Q-GL<br>EG12<br>EM12<br>EG18<br>AG550Q<br>EC20<br>AG35<br>EC25<br>EG25-G (and Eagle's I425-G / I425-AF)<br>EG95<br>SC200R<br>EG06<br>EM06<br>EP06<br>SC600T<br>SC600Y<br>SC66<br>SC20 and all its variants<br>UC200A-GL<br>EG25-GL (and Eagle's I425-GL / I425-AF) | Ex. 1[1] |

---

[1] The Quectel charts should be viewed to now also include accused Eagle products.

5

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

| Asserted Patent | Asserted Claim(s) | Presently Accused Products | Corresponding Claim Chart(s) |
|---|---|---|---|
| | | EG21-GL (and Eagle's I421-GL / I421-AF) EC200A | |

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

| '028 Patent | 11, 12, 13 | UC15<br>UC200T<br>UG96<br>UC20<br>UC20-G<br>EC21<br>EG21-G (and Eagle's I421-G / I421-AF)<br>EG91 (and all variants thereof including EG91-NA) (and Eagle's I491 / I491-NAX)<br>RG500Q<br>RM500Q-GL<br>EG12<br>EM12<br>EG18<br>AG550Q<br>EC20<br>AG35<br>EC25<br>EG25-G (and Eagle's I425-G / I425-AF)<br>EG95<br>SC200R<br>EG06<br>EM06<br>EP06<br>SC600T<br>SC600Y<br>SC66<br>SC20 and all its variants<br>UC200A-GL<br>EG25-GL (and Eagle's I425-GL / I425-AF) | Ex. 2 |

7

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

| Asserted Patent | Asserted Claim(s) | Presently Accused Products | Corresponding Claim Chart(s) |
|---|---|---|---|
| | | EG21-GL (and Eagle's I421-GL / I421-AF) EC200A | |

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

| Asserted Patent | Asserted Claim(s) | Presently Accused Products | Corresponding Claim Chart(s) |
|---|---|---|---|
| '599 Patent | 33, 34, 35, 36, 38, 39, 40, 41 | EC21<br>EG21-G (and Eagle's I421-G / I421-AF)<br>EG12<br>EG18<br>EC25<br>EG25-G (and Eagle's I425-G / I425-AF)<br>EG06<br>EM06<br>EP06<br>EM12-G<br>EM05<br>EG25-GL (and Eagle's I425-GL / I425-AF)<br>EC200A<br>EG950A<br>EM061k-GL<br>EG060W-EA<br>EG065K<br>EG120K<br>EM121R-GL<br>AG550Q<br>EC20<br>AG35<br>SC200R<br>SC600T<br>SC600Y<br>SC66<br>AG520R<br>AG15<br>SC20 and all its variants<br>V2X<br>EG95 | Ex. 3 |

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

| Asserted Patent | Asserted Claim(s) | Presently Accused Products | Corresponding Claim Chart(s) |
|---|---|---|---|
| '577 Patent | 17, 18, 19, 20 | EC21<br>EG21-G (and Eagle's I421-G / I421-AF)<br>EG12<br>EG18<br>EC25<br>EG25-G (and Eagle's I425-G / I425-AF)<br>EG06<br>EM06<br>EP06<br>EM12-G<br>EM05<br>EG25-GL (and Eagle's I425-GL / I425-AF)<br>EC200A<br>EG950A<br>EM061k-GL<br>EG060W-EA<br>EG065K<br>EG120K<br>EM121R-GL<br>AG550Q<br>EC20<br>AG35<br>SC200R<br>SC600T<br>SC600Y<br>SC66<br>AG520R<br>AG15<br>SC20 and all its variants<br>V2X<br>EG95 | Ex. 4 |

10

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

Quectel and Eagle directly and indirectly infringed, and continues to directly and indirectly infringe, the asserted claims of the Asserted Patents, either literally or under the doctrine of equivalents. Based on discovery responses, Philips may amend the list of accused products for the '028 and '216 Patents to include any additional modules that support 3G and the list of accused products for the '577 and '599 Patents to include any additional modules that support 4G.

## A. Infringement of the '599 Patent

Quectel and Eagle directly infringed and continues to infringe the '599 Patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and selling within the United States the Accused Products. Quectel and Eagle willfully infringed and continues to willfully infringe the '599 Patent. Quectel and Eagle had actual knowledge of the application leading to the '599 Patent since at least as early as December 29, 2015. Quectel and Eagle had knowledge of the '599 Patent upon its issuance. Moreover, Quectel'sQuectel and Eagle's willfulness is further supported by the fact that it has refused to negotiate in good faith toward a FRAND license for years since receiving notice from Philips.

Quectel and Eagle indirectly infringed and continuescontinue to indirectly infringe, under 35 U.S.C. § 271(b) by actively inducing infringement of the '599 Patent. For example, Quectel and Eagle instructed and continues to instruct third parties, such as distributors, customers, and/or end users on the use, sale, or offer for

11

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

sale of the Accused Products in the United States in a manner that directly infringes at least one claim of the '599 Patent, despite knowing that such action results in infringement of the '599 Patent. Quectel and Eagle also marketed, promoted, and continues to market and promote the Accused Products on its website. *See generally* https://www.quectel.com/product-selector/;

*https://www.eagleelectronics.com/products/?_network_categories=4g*. Quectel and Eagle purposefully designed the Accused Products to be used by distributors, customers, and/or end users, and Quectel continuesand Eagle continue to sell the Accused Products to be used in an infringing manner. Thus, these third parties directly infringe the '599 Patent by making, using, offering for sale, and selling the Accused Products at the direction and encouragement of Quectel and Eagle.

Furthermore, Quectel has taken the position in previous litigation that the "United States is significant to Quectel" and Quectel maintainsand Eagle maintain salespeople in the United States. Quectel uses itsand Eagle use their module data sheets to market its modules to customers, said data sheets containing information regarding the cellular carrier certifications of a module and technical specifications such as the communication standard of the module. To further facilitate use of the modules in an infringing manner, Quectel providesand Eagle provide customer support, user manuals, and "Master Classes" (a technical webinar focused on IoT devices) to its customers. These materials encourage infringement by showing

12

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

customers how to integrate the modules into customer products and how to enable cellular connectivity and use the modules in an infringing manner. Furthermore, Quectel ~~advertises~~and Eagle advertise the carrier certifications of their modules to customers in the United States. Obtaining such carrier certifications is of significant importance to Quectel and Eagle and further allows it to market these certifications to customers, which leads to Quectel and Eagle inducing infringement through its customers.

Quectel and Eagle also contributorily infringed and ~~continues~~continue to contributorily infringe the '599 Patent under 35 U.S.C. § 271(c) by offering to sell and/or selling within the United States the Accused Products, which constitute a material part of the inventions of the '599 Patent. Further, Quectel and Eagle understands that the Accused Products are adapted for use in the infringement of the '599 Patent and are therefore not a staple article or commodity of commerce suitable for non-infringing use. Furthermore, as described above, Quectel and Eagle had and continues to have knowledge of the '599 Patent and that third parties, including but not limited to distributors, customers, and end users, make, use, sell, and/or offer to sell the Accused Products in manners which infringe the '599 Patent with no other substantial non-infringing use.

For years, Philips has repeatedly offered to license rights to its world-wide portfolio that includes the '599 Patent. As a result, Quectel and Eagle had actual

13

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

knowledge of the application leading to the '599 Patent since at least as early as December 29, 2015. Quectel and Eagle had knowledge of the '599 Patent upon its issuance.

Quectel'sQuectel and Eagle's infringement began as early as when they started selling the Accused Products that practice the applicable standard. The start of the claimed damages period for the '599 Patent begins on the earliest date that Quectel and Eagle became aware of the '599 Patent. The end of the claimed damages period for the '599 Patent ends upon the expiration of the '599 Patent.

## B. Infringement of the '028 Patent

Quectel and Eagle directly infringed and continues to infringe the '028 Patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and selling within the United States the Accused Products. Quectel and Eagle willfully infringed and continuescontinue to willfully infringe the '028 Patent because itthey knew of or should have known of the '028 Patent and its infringement of the '028 Patent at least as early as December 29, 2015. Moreover, Quectel'sQuectel and Eagle's willfulness is further supported by the fact that it has refused to negotiate in good faith toward a FRAND license for years since receiving notice from Philips.

Quectel and Eagle indirectly infringed and continues to indirectly infringe, under 35 U.S.C. § 271(b) by actively inducing infringement of the '028 Patent. For example, Quectel and Eagle instructed and continuescontinue to instruct third

14

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

parties, such as distributors, customers, and/or end users on the use, sale, or offer for sale of the Accused Products in the United States in a manner that directly infringes at least one claim of the '028 Patent, despite knowing that such action results in infringement of the '028 Patent. Quectel and Eagle also marketed, promoted, and continues to market and promote the Accused Products on its website. *See generally* https://www.quectel.com/product-selector/;

*https://www.eagleelectronics.com/products/?_network_categories=4g*. Quectel and Eagle purposefully designed the Accused Products to be used by distributors, customers, and/or end users, and Quectel continuesand Eagle continue to sell the Accused Products to be used in an infringing manner. Thus, these third parties directly infringe the '028 Patent by making, using, offering for sale, and selling the Accused Products at the direction and encouragement of Quectel and Eagle.

Furthermore, Quectel has taken the position in previous litigation that the "United States is significant to Quectel" and Quectel maintainsand Eagle maintain salespeople in the United States. Quectel uses itsand Eagle use their module data sheets to market its modules to customers, said data sheets containing information regarding the cellular carrier certifications of a module and technical specifications such as the communication standard of the module. To further facilitate use of the modules in an infringing manner, Quectel providesand Eagle provide customer support, user manuals, and "Master Classes" (a technical webinar focused on IoT

15

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

devices) to its customers. These materials encourage infringement by showing customers how to integrate the modules into customer products and how to enable cellular connectivity and use the modules in an infringing manner. Furthermore, Quectel advertisesand Eagle advertise the carrier certifications of their modules to customers in the United States. Obtaining such carrier certifications is of significant importance to Quectel and Eagle and further allows it to market these certifications to customers, which leads to Quectel and Eagle inducing infringement through its customers.

Quectel and Eagle also contributorily infringed and continuescontinue to contributorily infringe the '028 Patent under 35 U.S.C. § 271(c) by offering to sell and/or selling within the United States the Accused Products, which constitute a material part of the inventions of the '028 Patent. Further, Quectel and Eagle understands that the Accused Products are adapted for use in the infringement of the '028 Patent and are therefore not a staple article or commodity of commerce suitable for non-infringing use. Furthermore, as described above, Quectel and Eagle had and continuescontinue to have knowledge of the '028 Patent and that third parties, including but not limited to distributors, customers, and end users, make, use, sell, and/or offer to sell the Accused Products in manners which infringe the '028 Patent with no other substantial non-infringing use.

16

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

For years, Philips has repeatedly offered to license rights to its world-wide portfolio that includes the '028 Patent. As a result, Quectel and Eagle had actual knowledge of the '028 Patent since at least as early as December 29, 2015.

Quectel'sQuectel and Eagle's infringement began as early as when they started selling the Accused Products that practice the applicable standard. The start of the claimed damages period for the '028 Patent begins on the earliest date that Quectel and Eagle became aware of the '028 Patent. The end of the claimed damages period for the '028 Patent ends upon the expiration of the '028 Patent.

## C. Infringement of the '216 Patent

Quectel and Eagle directly infringed and continuescontinue to infringe the '216 Patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and selling within the United States the Accused Products. Quectel and Eagle willfully infringed and continuescontinue to willfully infringe the '216 Patent because it knew of or should have known of the '216 Patent and its infringement of the '216 Patent at least as early as December 29, 2015. Moreover, Quectel'sQuectel and Eagle's willfulness is further supported by the fact that it has refused to negotiate in good faith toward a FRAND license for years since receiving notice from Philips.

Quectel and Eagle indirectly infringed and continuescontinue to indirectly infringe, under 35 U.S.C. § 271(b) by actively inducing infringement of the '216 Patent. For example, Quectel and Eagle instructed and continuescontinue to instruct

17

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

third parties, such as distributors, customers, and/or end users on the use, sale, or offer for sale of the Accused Products in the United States in a manner that directly infringes at least one claim of the '216 Patent, despite knowing that such action results in infringement of the '216 Patent. Quectel and Eagle also marketed, promoted, and continues to market and promote the Accused Products on its website. *See generally* https://www.quectel.com/product-selector/; *https://www.eagleelectronics.com/products/?_network_categories=4g*. Quectel and Eagle purposefully designed the Accused Products to be used by distributors, customers, and/or end users, and Quectel continuesand Eagle continue to sell the Accused Products to be used in an infringing manner. Thus, these third parties directly infringe the '216 Patent by making, using, offering for sale, and selling the Accused Products at the direction and encouragement of Quectel and Eagle.

Furthermore, Quectel has taken the position in previous litigation that the "United States is significant to Quectel" and Quectel maintainsand Eagle maintain salespeople in the United States. Quectel uses itsand Eagle use their module data sheets to market its modules to customers, said data sheets containing information regarding the cellular carrier certifications of a module and technical specifications such as the communication standard of the module. To further facilitate use of the modules in an infringing manner, Quectel providesand Eagle provide customer support, user manuals, and "Master Classes" (a technical webinar focused on IoT

18

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

devices) to its customers. These materials encourage infringement by showing customers how to integrate the modules into customer products and how to enable cellular connectivity and use the modules in an infringing manner. Furthermore, Quectel advertisesand Eagle advertise the carrier certifications of their modules to customers in the United States. Obtaining such carrier certifications is of significant importance to Quectel and Eagle and further allows it to market these certifications to customers, which leads to Quectel and Eagle inducing infringement through its customers.

Quectel and Eagle also contributorily infringed and continuescontinue to contributorily infringe the '216 Patent under 35 U.S.C. § 271(c) by offering to sell and/or selling within the United States the Accused Products, which constitute a material part of the inventions of the '216 Patent. Further, Quectel and Eagle understands that the Accused Products are adapted for use in the infringement of the '216 Patent and are therefore not a staple article or commodity of commerce suitable for non-infringing use. Furthermore, as described above, Quectel and Eagle had and continuescontinue to have knowledge of the '216 Patent and that third parties, including but not limited to distributors, customers, and end users, make, use, sell, and/or offer to sell the Accused Products in manners which infringe the '216 Patent with no other substantial non-infringing use.

19

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

For years, Philips has repeatedly offered to license rights to its world-wide portfolio that includes the '216 Patent. As a result, Quectel and Eagle had actual knowledge of the '216 Patent since at least as early as December 29, 2015.

Quectel'sQuectel and Eagle's infringement began as early as when they started selling the Accused Products that practice the applicable standard. The start of the claimed damages period for the '216 Patent begins on the earliest date that Quectel and Eagle became aware of the '216 Patent. The end of the claimed damages period for the '216 Patent ends upon the expiration of the '216 Patent.

### D. Infringement of the '577 Patent

Quectel and Eagle directly infringed and continuescontinue to infringe the '577 Patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and selling within the United States the Accused Products. Quectel and Eagle willfully infringed and continuescontinue to willfully infringe the '577 Patent because itthey knew of or should have known of the '577 Patent and its infringement of the '577 Patent at least as early as December 29, 2015. Moreover, Quectel'sQuectel and Eagle's willfulness is further supported by the fact that it hasthey have refused to negotiate in good faith toward a FRAND license for years since receiving notice from Philips.

Quectel and Eagle indirectly infringed and continuescontinue to indirectly infringe, under 35 U.S.C. § 271(b) by actively inducing infringement of the '577 Patent. For example, Quectel and Eagle instructed and continuescontinue to instruct

20

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

third parties, such as distributors, customers, and/or end users on the use, sale, or offer for sale of the Accused Products in the United States in a manner that directly infringes at least one claim of the '577 Patent, despite knowing that such action results in infringement of the '577 Patent. Quectel and Eagle also marketed, promoted, and continues to market and promote the Accused Products on its website. *See generally* https://www.quectel.com/product-selector/; *https://www.eagleelectronics.com/products/?_network_categories=4g*. Quectel and Eagle purposefully designed the Accused Products to be used by distributors, customers, and/or end users, and Quectel continuesand Eagle continue to sell the Accused Products to be used in an infringing manner. Thus, these third parties directly infringe the '577 Patent by making, using, offering for sale, and selling the Accused Products at the direction and encouragement of Quectel and Eagle.

Furthermore, Quectel has taken the position in previous litigation that the "United States is significant to Quectel" and Quectel maintainsand Eagle maintain salespeople in the United States. Quectel uses itsand Eagle use their module data sheets to market its modules to customers, said data sheets containing information regarding the cellular carrier certifications of a module and technical specifications such as the communication standard of the module. To further facilitate use of the modules in an infringing manner, Quectel providesand Eagle provide customer support, user manuals, and "Master Classes" (a technical webinar focused on IoT

21

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

devices) to its customers. These materials encourage infringement by showing customers how to integrate the modules into customer products and how to enable cellular connectivity and use the modules in an infringing manner. Furthermore, Quectel ~~advertises~~and Eagle advertise the carrier certifications of their modules to customers in the United States. Obtaining such carrier certifications is of significant importance to Quectel and Eagle and further allows it to market these certifications to customers, which leads to Quectel and Eagle inducing infringement through its customers.

Quectel and Eagle also contributorily infringed and ~~continues~~continue to contributorily infringe the '577 Patent under 35 U.S.C. § 271(c) by offering to sell and/or selling within the United States the Accused Products, which constitute a material part of the inventions of the '577 Patent. Further, Quectel ~~understands~~and Eagle understand that the Accused Products are adapted for use in the infringement of the '577 Patent and are therefore not a staple article or commodity of commerce suitable for non-infringing use. Furthermore, as described above, Quectel and Eagle had and ~~continues~~continue to have knowledge of the '577 Patent and that third parties, including but not limited to distributors, customers, and end users, make, use, sell, and/or offer to sell the Accused Products in manners which infringe the '577 Patent with no other substantial non-infringing use.

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

For years, Philips has repeatedly offered to license rights to its world-wide portfolio that includes the '577 Patent. As a result, Quectel and Eagle had actual knowledge of the '577 Patent since at least as early as December 29, 2015.

Quectel'sQuectel and Eagle's infringement began as early as when they started selling the Accused Products that practice the applicable standard. The start of the claimed damages period for the '577 Patent begins on the earliest date that Quectel and Eagle became aware of the '577 Patent. The end of the claimed damages period for the '577 Patent ends upon the expiration of the '577 Patent.

## II.    Priority Date of Asserted Patents

Subject to paragraph 3(f) of the Scheduling Order (D.I. 36), Philips is to identify the priority date for which each Asserted Claim is entitled to the extent the Asserted Patents claim priority to an earlier application. Accordingly, all Asserted Claims of the '028 Patent and '216 Patent are entitled to a priority date at least as early as January 16, 1999. All asserted claims of the '599 Patent and '577 Patent are entitled to a priority date at least as early as April 25, 2001.

## III.    Identification of Embodying Instrumentalities

The Asserted Claims of the Asserted Patents are essential to the practice of one or more mandatory portions of the 4G (LTE) and/or 3G (UMTS) standards. As such, any product or system that is compliant with and implements the relevant portions of these standards necessarily practices each and every limitation of the

23

HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY

Asserted Claims. Accordingly, all products that implement or are compliant with the applicable portions of the applicable standards practice the Asserted Claims of the Asserted Patents.

| Summary report: Litera Compare for Word 11.7.0.54 Document comparison done on 11/4/2025 4:52:49 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Infringement Contentions Cover Pleading - 1707.docx | |
| **Modified filename:** Infringement Contentions Cover Pleading - 1707 - adding Eagle - clean.docx | |
| **Changes:** | |
| Add | 140 |
| Delete | 51 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 1 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 192 |

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2025, I caused the foregoing document

to be served via electronic mail upon the following counsel:

Warren K. Mabey, Jr.
Martina Tyreus Hufnal
Fish & Richardson PC
222 Delaware Avenue, 17th Floor
Wilmington, DE  19801
*mabey@fr.com*
*hufnal@fr.com*

Thomas H. Reger II
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
*reger@fr.com*

Elizabeth G.H. Ranks
FISH & RICHARDSON P.C.
One Marina Park Drive, Suite 1700
Boston, MA 02210
*ranks@fr.com*

Lawrence R. Jarvis
Katherine Reardon
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st floor
Atlanta, GA 30309
*jarvis@fr.com*
*reardon@fr.com*

*Attorney for Quectel Wireless Solutions Co. Ltd.*

Chad S.C. Stover
Barnes & Thornburg LLP
1000 N. West Street, Suite 1500
Wilmington, DE  19801
*chad.stover@btlaw.com*

Eric J. Beste
Barnes & Thornburg LLP
655 W. Broadway Suite 1300
San Diego, CA 92101
*eric.beste@btlaw.com*

Craig D. Leavell
Barnes & Thornburg LLP
One N. Wacker Drive
Suite 4400
Chicago, IL 60606-2833
*craig.leavell@btlaw.com*

*Attorney for CalAmp Corp.*

Kenneth L. Dorsney
Cortlan S. Hitch
MORRISS JAMES LLP
3205 Avenue North Boulevard
Suite 100
Wilmington, DE 19803
(302) 888-6800
*kdorsney@morrisjames.com*
*chitch@morrisjames.com*

Kirk T. Bradley
Lauren Griffin

ALSTON & BIRD LLP
One South at The Plaza
101 S. Tryon St., Suite 4000
Charlotte, NC 28280
(704) 444-1000
*kirk.bradley@alston.com*
*lauren.griffin@alston.com*
Nicolette Nunez
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
(404) 881-7851
*nicolette.nunez@alston.com*

*Attorney for Xirgo Technologies, LLP*


John C. Phillips, Jr.
Megan C. Haney
Phillips, McLaughlin & Hall, P.A.
1200 North Broom Street
Wilmington, DE 19806
*jcp@pmhdelaw.com*
*mch@pmhdelaw.com*

J. Aron Carnahan, Esquire
Husch Blackwell LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606-3912
*Aron.carnahan@huschblackwell.com*

Glennon P. Fogarty, Esquire
Husch Blackwell LLP
8001 Forsyth Boulevard, Suite 1500
St. Louis, MO 63105
*glennon.fogarty@huschblackwell.com*

*Attorneys for Defendant Laird
Connectivity, Inc.*

2

Dated:  November 4, 2025

YOUNG CONAWAY STARGATT
   & TAYLOR, LLP

*/s/ Adam W. Poff*
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Alexis N. Stombaugh (No. 6702)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
*apoff@ycst.com*
*rvrana@ycst.com*
*astombaugh@ycst.com*

*Attorneys for Plaintiff*

3