**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

KONINKLIJKE PHILIPS N.V.,

      Plaintiff,

      v.

QUECTEL WIRELESS SOLUTIONS
CO. LTD.,

      Defendant.

C.A. No. 20-cv-1707-CFC

## QUECTEL'S MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Dated:  December 1, 2025

Warren K. Mabey, Jr. (No. 5775)
Martina Tyreus Hufnal (No. 4771)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899
Tel: (302) 652-5070
Fax: (302) 652-0607
mabey@fr.com
hufnal@fr.com

*Attorneys for Defendant Quectel Wireless Solutions Co. Ltd.*

# TABLE OF CONTENTS

I.   NATURE AND STAGE OF PROCEEDINGS ...........................1

II.  SUMMARY OF THE ARGUMENT.............................................2

III. BACKGROUND .....................................................................3

IV.  LEGAL STANDARDS..............................................................6

    A.   Rule 12(c):  Motion for Judgment on the Pleadings ...........................6

    B.   Section 101:  Patent Eligibility.............................................7

V.   ARGUMENT .........................................................................9

    A.   *Alice* Step One:  Claim 13 of the '216 Patent Is Directed to an Abstract Idea.........................................................................9

        1.   Claim 13 Is Directed to Adjusting Power Levels Based on a Mathematical Equation .................................................9

        2.   Courts Have Held Similar Claims Ineligible ...........................13

    B.   *Alice* Step Two:  Claim 13 of the '216 Patent Lacks an Inventive Concept..........................................................................16

    C.   Claim 13 of the '216 Patent is Ripe for a Determination on Eligibility ..........................................................................18

VI.  CONCLUSION .......................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016) ............................................................16, 17, 18

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)................................................................................*passim*

*Bilski v. Kappos*,
  561 U.S. 593 (2010)...............................................................................18

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018) ..............................................................3, 13, 18

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014) ...............................................................18

*In the matter of Certain UMTS and LTE Cellular Communication
  Modules and Products Containing the Same*,
  Inv. No. 337-TA-1240 ............................................................................1, 2

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019) ................................................................9, 12, 18

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l
  Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014) ...............................................................7

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) ...............................................................2, 10, 12

*Enfish LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ...............................................................9, 13

*Gottschalk v. Benson*,
  409 U.S. 63 (1972)..................................................................................*passim*

*Intell. Ventures I LLC v. AT&T Mobility LLC*,
  235 F. Supp. 3d 577 (D. Del. 2016)..........................................................6

*Intell. Ventures I LLC v. Erie Indem. Co.*,
  850 F.3d 1315 (Fed. Cir. 2017) ...............................................................8

*Koninklijke Philips N.V. v. Quectel Wireless Sols. Co.*,
  No. 20-cv-1710 (D. Del.)............................................................................1

*Mgmt. Sci. Assocs., Inc. v. Datavant, Inc.*,
  510 F. Supp. 3d 238 (D. Del. 2020)........................................................10

*Mobile Acuity Ltd. v. Blippar Ltd.*,
  110 F.4th 1280 (Fed. Cir. 2024) .............................................................10

*Parker v. Flook*,
  437 U.S. 584 (1978).........................................................................13, 14

*PersonalWeb Techs. LLC v. Google LLC*,
  8 F.4th 1310 ..............................................................................................6

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
  696 F. App'x 1014 (Fed. Cir. 2017) ........................................................17

*Quectel Wireless Sols. Co. v. Koninklijke Philips N.V.*,
  No. IPR2021-00563, 2025 WL 978723 (P.T.A.B. Apr. 1, 2025) ........................2

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
  855 F.3d 1322 (Fed. Cir. 2017) .............................................................11

*Redwood Techs., LLC v. Netgear, Inc.*,
  738 F. Supp. 3d 511 (D. Del. 2024).......................................................11

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018) ...........................................................7, 18

*SmileDirectClub, LLC v. Candid Care Co.*,
  505 F. Supp. 3d 340 (D. Del. 2020).......................................................10

*Spruill v. Gillis*,
  372 F.3d 218 (3d Cir. 2004) ....................................................................6

*Thales Visionix Inc. v. United States*,
  850 F.3d 1343 (Fed. Cir. 2017) .............................................................10

*Trading Techs. Int'l, Inc. v. IBG LLC*,
    921 F.3d 1378 (Fed. Cir. 2019) ...............................................................8

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ...............................................9, 11, 15

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring) ........................7

*WhitServe LLC v. Dropbox, Inc.*,
    No. 18-cv-665, 2019 WL 3342949 (D. Del. July 25, 2019)........................15, 16

**Statutes**

35 U.S.C. § 101 ...................................................................................*passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(c)........................................................2, 6, 7, 18

Local Rule 7.1.3(a)(4)................................................................................21

Claim 13 of U.S. Patent No. 8,195,216 recites nothing more than the abstract idea of adjusting power levels based on a mathematical equation, and nothing in the claim recites any inventive concept that otherwise removes it from the abstract. Accordingly, the claim is ineligible under 35 U.S.C. § 101, and Defendant Quectel respectfully moves the Court to grant judgment on the pleadings of invalidity as to claim 13. As claim 13 is the only claim of the '216 patent Koninklijke Philips N.V. (Philips) asserts in this case, this motion is dispositive as to Philips's allegations of infringement of the '216 patent.

## I.    NATURE AND STAGE OF PROCEEDINGS

Philips brought this action on December 17, 2020 alleging infringement of claims of the '216 patent, among other patents. D.I. 1 ¶¶ 19, 56–68. Quectel filed its Answer on May 14, 2021. *See* D.I. 8. Proceedings in this case were subsequently postponed pending parallel *inter partes* review (IPR) proceedings involving the patents at issue in this case, *see* D.I. 20 (Joint Status Report), and a parallel proceeding at the International Trade Commission, which involved other patents asserted by Philips against Quectel in another co-pending district court case.[1] With respect to the IPR proceeding for the '216 patent, the Patent Trial and Appeal Board

---

[1] *In the matter of Certain UMTS and LTE Cellular Communication Modules and Products Containing the Same*, Inv. No. 337-TA-1240 (USITC) ("the ITC Case"); *Koninklijke Philips N.V. v. Quectel Wireless Sols. Co.*, No. 20-cv-1710 (D. Del.).

1

held claim 9—the only challenged claim—unpatentable. *Quectel Wireless Sols. Co. v. Koninklijke Philips N.V.*, No. IPR2021-00563, 2025 WL 978723, at *1 (P.T.A.B. Apr. 1, 2025).[2]  This case has now resumed.  *See* D.I. 36.  Pleadings have closed, and fact discovery is ongoing.  D.I. 36 Ex. A.  Trial in this action is scheduled for December 2026.  *Id.*  Quectel moves under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings as to the '216 patent because the only asserted claim is directed to ineligible subject matter under 35 U.S.C. § 101.

## II.    SUMMARY OF THE ARGUMENT

1.    Claim 13 of the '216 patent is directed to the abstract idea of adjusting power levels based on a mathematical equation.  The focus of claim 13 is on a particular mathematical equation, and implementation of that abstract idea is recited using result-based, functional language.  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016) (explaining the distinction between improving existing apparatuses, such as computers, and using existing tools to perform an abstract idea).  Moreover, the specification frames the object of the invention as seeking to reduce the amount of time it takes to obtain the right power level, '216

---

[2] The ITC Case also concluded, finding all claims asserted by Philips unenforceable and not infringed—and many invalid (Inv. No. 337-TA-1240, Final ID (Apr. 1, 2022)).

patent at 1:46–54, which is the result of applying a fundamentally abstract idea:  a mathematical equation.  *Gottschalk v. Benson*, 409 U.S. 63, 71–72 (1972).

2.     Claim 13 lacks an inventive concept that would transform the abstract idea into patent-eligible subject matter.  The claim consists entirely of routine, conventional radio communication system components, recited at such a higher level of abstraction—using generic "means" terminology for known components—that it fails to transform the abstract idea into patentable subject matter.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 221–22 (2014).  The only plausible inventive concept is the application of a mathematical equation to guide the power loop convergence process, but the equation is itself abstract and therefore cannot supply an inventive concept.  *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018).

## III.    BACKGROUND

The '216 patent discloses a radio communication system that allegedly "improv[es] power control of a communication channel for the transmission of data after an interruption in the transmission."  '216 patent at Abstract.  As the patent explains, in a two-way radio communication system between a Base Station and Mobile Station, the power level of data transmissions must be controlled/adjusted to minimize interference.  *Id.* at 1:24–37.  A problem arises when, "at the start of a transmission, or after the transmission is interrupted, the power control loops [of the

3

Base Station and Mobile Station] may take some time to converge satisfactorily." *Id.* at 1:46–49. "Until such [power] convergence is achieved[,] data transmissions are likely to be received in a corrupted state if their power level is too low, or to generate extra interference if their power level is too high." *Id.* at 1:49–52. The claimed system purports to decrease this convergence time by setting the initial transmission power level to the power level before the interruption, adjusted by an offset calculated from a mathematical equation. *See, e.g., id.* at 1:55–67, cl. 13.

Claim 13 is the only claim of the '216 patent asserted by Philips in this case.[3] D.I. 54-1 ¶ 155. Claim 13 relates to an embodiment in the specification that determines the initial transmission power level using a weighted sum of power control commands. '216 patent at 5:27–49. Claim 13 reads:

> 13.   A secondary station for use in a radio communication system having a communication channel between the secondary station and a primary station, the channel including an uplink and a downlink control channel for transmission of control information, including power control commands, and a data channel for the transmission of data, the secondary station comprising:
>
> power control means for adjusting the power of the uplink control and data channels in response to the downlink power control commands;
>
> means for setting an initial transmission power after an interruption in transmission to that before the interruption adjusted by an offset; and

---

[3] Quectel addresses the patentability of only claim 13 because Philips does not assert any other claim of the '216 patent. Should Philips be permitted to assert other claims of the '216 patent in the future, Quectel will undertake a representativeness analysis and supplement its subject matter eligibility arguments as appropriate.

means for determining the offset from a weighted sum of power control commands in accordance with an equation $\Delta P(t) = K_1 \Delta P(t-1) - K_2 PC(t) PS(t)$, where

$\Delta P(t)$ is the offset computed at a time t of a last power control command before the interruption,

$\Delta P(t-1)$ is a previously-determined offset,

$PC(t)$ is the power control command applied at the time t,

$PS(t)$ is the size of the power control step applied at the time t,

$K_1$ and $K_2$ are constants and

$\Delta P(0)$ is set to zero at the start of a transmission or immediately after a gap,

and in that means are provided for quantizing the offset to an integer multiple of a minimum power control step size supported by the secondary station.

*Id.* at 9:5–10:13.

Importantly, the claimed system uses generic radio communication system components—claimed using generic "means" language and purely functional recitations—to perform known, abstract functions. The '216 patent states the disclosed techniques are applicable to Universal Mobile Telecommunication Systems (UMTS) as well as "other mobile radio systems." *Id.* at 1:11–15. No specialized equipment or unconventional system configuration is required or disclosed by the '216 patent. The specification explains the following techniques were known in the art: power control via control signals, *id.* at 1:24–37; use of more

5

than one power control step size, *id.* at 2:47–53; a Base Station measuring and setting the Mobile Station uplink data transmission power level to address the problem of power loop convergence, *id.* at 3:59–65; and using fixed versus varying power control step sizes, *id.* at 4:44–51. To these known processes, claim 13 adds (at most) the use of a mathematical equation to calculate an initial transmission power level.

## IV. LEGAL STANDARDS

### A. Rule 12(c): Motion for Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. To prevail on a Rule 12(c) motion, the movant must clearly establish no issue of material fact remains to be resolved and it is entitled to judgment as a matter of law. *Intell. Ventures I LLC v. AT&T Mobility LLC*, 235 F. Supp. 3d 577, 584 (D. Del. 2016). The legal standard for a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is the same as the standard for a motion to dismiss under Rule 12(b)(6). *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004) ("There is no material difference in the applicable legal standards . . . .").

The ultimate question of patent eligibility is an issue of law that may involve underlying factual findings, but "not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1314 (quoting *Berkheimer v. HP Inc.*, 881

F.3d 1360, 1368 (Fed. Cir. 2018)) (rejecting patentee's argument that questions of fact underlying the eligibility determination made judgment on the pleadings improper).  Courts routinely resolve patent eligibility issues under 35 U.S.C. § 101 at the Rule 12 stage, "where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (collecting cases).  The Federal Circuit has repeatedly affirmed determinations of patent eligibility at the pleadings stage, before commencement of claim construction or any significant discovery.  *E.g.*, *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) ("[C]laim construction is not an inviolable prerequisite to a validity determination under § 101."); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014) (Mayer, J., concurring) (explaining the district court properly dismissed on the pleadings because no reasonable construction would bring claims within patentable subject matter).

## B.    Section 101:  Patent Eligibility

Section 101 of the Patent Act defines patent-eligible subject matter.  35 U.S.C. § 101.  In interpreting this statutory provision, the Supreme Court has interpreted this language to exclude "[l]aws of nature, natural phenomena, and abstract ideas"

from patent eligibility. *Alice*, 573 U.S. at 216. Abstract ideas include mathematical formulas and calculations. *Gottschalk*, 409 U.S. at 71–72.

Under *Alice*, courts perform a two-step analysis to determine patent eligibility under § 101. At *Alice*'s Step One, the court must assess whether the claims at issue are directed to a patent ineligible concept by "evaluat[ing] the focus of the claimed advance over the prior art to determine if the character of the claim as a whole, considered in light of the specification, is directed to excluded subject matter." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1384 (Fed. Cir. 2019) (internal quotation marks omitted).

At *Alice*'s Step Two, if the patent covers an abstract idea, the court must examine "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 78–79 (2012)). At Step Two, the court must determine whether an "inventive concept" elevates the claim to patent-eligible subject matter, which requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 221 (quoting *Mayo*, 566 U.S. at 72). Any "additional features" in the claim related to the inventive concept "must be more than 'well-understood, routine, conventional activity.'" *Intell. Ventures I*

8

*LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1328 (Fed. Cir. 2017) (quoting *Mayo*, 566 U.S. at 79).

## V.   ARGUMENT

### A.   *Alice* Step One:   Claim 13 of the '216 Patent Is Directed to an Abstract Idea

#### 1.   Claim 13 Is Directed to Adjusting Power Levels Based on a Mathematical Equation

At its core, claim 13 of the '216 patent fails *Alice* Step One because it is directed to nothing more than the abstract idea of adjusting power levels based on a mathematical equation. The Step One inquiry asks whether patent claims "focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). "The Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea'" under the Step One inquiry, *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016), but has recognized that mathematical formulas are unpatentable abstract ideas, *Gottschalk*, 409 U.S. at 71–72. "[W]hile the specification may help illuminate the true focus of a claim, when analyzing patent eligibility, reliance on the specification must always yield to the claim language in identifying that focus." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019). By its plain language, claim 13 necessarily involves an abstract idea. Specifically, claim 13 recites calculating a weighted sum of power

control commands using a mathematical equation. '216 patent at cl. 13 ("means for determining the offset from a weighted sum of power control commands in accordance with an equation $\Delta P(t)=K_1\Delta P(t-1)-K_2PC(t)PS(t)$"). As such, claim 13 is invalid as a matter of law. *See Gottschalk*, 409 U.S. at 71–72 (holding mathematical formulas are unpatentable abstract ideas); *see also SmileDirectClub, LLC v. Candid Care Co.*, 505 F. Supp. 3d 340, 346 (D. Del. 2020) (same); *Mgmt. Sci. Assocs., Inc. v. Datavant, Inc.*, 510 F. Supp. 3d 238, 244 (D. Del. 2020) (same).

The limitations of claim 13 use result-focused, functional language directed to the abstract idea of adjusting power levels based on a mathematical equation. '216 patent at cl. 13. At Step One, "it is not enough to merely identify a patent-ineligible concept underlying the claim"; instead, the issue is whether the claim is **directed to** a patent-ineligible concept. *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1349 (Fed. Cir. 2017) (internal quotation marks omitted) (quoting *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016)); *Elec. Power Grp.*, 830 F.3d at 1353–54 (explaining claims focused on abstract idea processes and did not purport to advance "any particular assertedly inventive technology for performing those functions"). Claims reciting generalized functionality, using only results-based language using generic components, are directed to abstract ideas. *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1292–93 (Fed. Cir. 2024) (holding claims consisting "solely of result-orientated, functional language" and

lacking "any specific requirements as to how the[] steps of information manipulation [were] performed" were directed to an abstract idea); *Two-Way Media*, 874 F.3d at 1337–38 (holding claims reciting conventional computer components and functional results, without sufficiently describing how to achieve those results in a non-abstract way, were directed to an abstract idea).

Notably, claim 13 lacks any specific recitations or requirements as to **how** the claimed technique is performed beyond a mathematical equation. Claim 13 recites four components: (1) power control means for adjusting the power of an uplink control and data channels, (2) means for setting an initial transmission power after an interruption, (3) means for determining an offset based on a mathematical formula, and (4) means for quantizing the offset to an integer multiple of a minimum power control step size. '216 patent at cl. 13. The language is directed to the function itself—adjusting power levels based on a mathematical equation—which is an abstract idea. *Cf. Redwood Techs., LLC v. Netgear, Inc.*, 738 F. Supp. 3d 511, 524–26 (D. Del. 2024) (holding claim directed to configuring data transmission settings was directed to an abstract idea). The fact that claim 13 computes the power level adjustment using a mathematical formula does not direct the claim to a specific method; combining an abstract idea (math) with generalized, conventional functionality (adjusting power levels) does not render the claim non-abstract. *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326–27 (Fed. Cir. 2017).

11

The specification underscores the abstract nature of the claims. It does not explain that the claimed "means" for "adjusting," "setting," "determining," or "quantizing" are directed to any particular technological solution. *Elec. Power Grp.*, 830 F.3d at 1354 ("The advance [the claims] purport to make is a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions. They are therefore directed to an abstract idea."). It also makes clear that the claimed technique requires only generic, conventional mobile radio equipment. '216 patent at 1:11–15 ("While the present specification describes a system with particular reference to the emerging Universal Mobile Telecommunication System (UMTS), it is to be understood that such techniques are equally applicable to use in other mobile radio systems.").

The specification demonstrates that the claimed invention is directed to nothing more than the very idea of adjusting power levels based on a mathematical calculation. At *Alice* Step One, the specification can be useful to understand the problem facing the inventor and "what the patent describes as the invention." *ChargePoint*, 920 F.3d at 767. Here, the specification explains "[a]n object of the present invention is to address" the problem of delayed power convergence. '216 patent at 1:46–54. "This is done by adjusting the transmission power immediately after the interruption by an offset from the power used before the interruption." *Id.*

12

at Abstract. This reduced convergence time allegedly helps minimize corrupted transmissions and interference. *Id.* at Abstract, 1:46–54, 3:54–57. But these alleged benefits are merely the direct result of applying the claimed mathematical equation. While an "improve[ment] [to] an existing technological process" can be patent eligible, *Alice*, 573 U.S. at 223, claiming the improved speed or efficiency inherent with applying an abstract idea is insufficient to render the claims patent eligible as a technological improvement, *see BSG Tech*, 899 F.3d at 1287–88 (holding claims were directed to an abstract idea because the alleged improvement simply involved "benefits that flow from performing an abstract idea in conjunction with a well-known database structure"). Any alleged improvement resulting from the claimed mathematical calculation therefore fails to render claim 13 non-abstract.

### 2. Courts Have Held Similar Claims Ineligible

Both the Supreme Court and the Federal Circuit have found claims just like those in the '216 patent to be abstract. *See Enfish*, 822 F.3d at 1334 ("[B]oth this court and the Supreme Court have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases.").

Claim 13 is analogous to the claims at issue in *Parker v. Flook*, 437 U.S. 584, 585–86 (1978). In *Parker*, the patent at issue was directed to monitoring operating conditions (such as temperature, pressure, and flow rates) during catalytic conversion processes and signaling (via an alarm) when a condition exceeded its

limit. *Id.* at 585. The method claims for updating alarm limits consisted of three steps: (1) measuring the value of a process variable (e.g., temperature); (2) using an algorithm to calculate an updated alarm-limit value; and (3) adjusting the alarm limit to the updated value. *Id.* at 585–86. The Supreme Court found the claims subject matter-ineligible because they consisted only of well-known processes involving application of an algorithm. *Id.* at 594–95 ("Respondent's application simply provides a new and presumably better method for calculating alarm limit values. . . . [T]he respondent's claim is, in effect, comparable to a claim that the formula 2 r can be usefully applied in determining the circumference of a wheel."). So too here: claim 13 is merely directed to the use of a mathematical formula within a known process (i.e., adjusting power levels for power loop convergence).

In *Cisco Systems, Inc. v. Uniloc 2017 LLC*, the Federal Circuit held patent-ineligible claims directed to the abstract idea of "ranking stations based on antenna performance characteristics and selecting the station with the highest rank to act as master in a network." 813 F. App'x 495, 497–99 (Fed. Cir. 2020) (affirming grant of motion for judgment on the pleadings). The court reasoned the claim recited only generic concepts of "ranking" and "selecting" without providing any "concrete way of implementing it." *Id.* at 497. Here, claim 13 similarly discloses adjusting the operation of a radio communication system based on the output of processing certain system data. *Compare id.* at 496, *with* '216 patent at cl. 13. Similar to the claim at

14

issue in *Cisco*, claim 13 describes only generic concepts such as "adjusting" power levels and "setting" initial transmission power without explaining *how* these functions are implemented. *See also Two-Way Media*, 874 F.3d at 1337–38 (explaining claims related to a method for transmitting data packets over a communications network required only functional results and therefore "manipulate[d] data but fail[ed] to do so in a non-abstract way").

Finally, in *WhitServe LLC v. Dropbox, Inc.*, the Federal Circuit held similar claims were directed to an abstract idea at *Alice* Step One. 854 F. App'x 367, 371–72 (Fed. Cir. 2021) (affirming grant of motion to dismiss). The claims at issue in *WhitServe* were recited a system for onsite backup for internet-based data processing systems comprising a "computer," a "database," "data processing software," and communication via the Internet. *Id.* at 368–69. The court rejected the patentee's argument that the claimed advance demonstrated a patent-eligible improvement of a technological process because the claims "rel[ied] on the ordinary storage and transmission capabilities of computers within a network" applied within the context of onsite backup. *Id.* at 372 (internal quotations omitted) (quoting *WhitServe LLC v. Dropbox, Inc.*, No. 18-cv-665, 2019 WL 3342949, at *5 (D. Del. July 25, 2019)). Here, claim 13 similarly relies on ordinary capabilities of radio communication systems, applied in the context of power convergence. *See* '216 patent at 1:11–15 (explaining the claimed technique is applicable to mobile radio systems generally).

15

To these ordinary system functions, claim 13 adds a mathematical equation, which is itself an abstract idea. *Gottschalk*, 409 U.S. at 71–72. Like the claims at issue in *WhitServe*, claim 13 is not directed to a patent-eligible improvement of a technological process but is instead directed to an abstract idea.

**B.     *Alice* Step Two:  Claim 13 of the '216 Patent Lacks an Inventive Concept**

Claim 13 also fails at *Alice* Step Two because it lacks any inventive concept. At *Alice* Step Two, the court must determine whether the claims do significantly more than simply describe the abstract method and thus transform the abstract idea into patentable subject matter. *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016). The court looks to see whether any "additional features" in the claims constitute an "inventive concept," thereby rendering the claims patent-eligible even though they are directed to an abstract idea. *Id.* (quoting *Alice*, 573 U.S. at 221). These additional features cannot simply be "'well-understood, routine, conventional activit[ies]' previously known to the industry." *Alice*, 573 U.S. at 225 (quoting *Mayo*, 566 U.S. at 79).

The elements of claim 13, viewed both individually and as an ordered combination, contain no inventive concept sufficient to render the claim patent eligible. Rather, the claim merely describes adjusting power levels based on a mathematical equation in a conventional radio communication system, *see* '216 patent at cl. 13, 1:11–15, and fails to recite a particular technological implementation

16

of the claimed power control technique. *Affinity Labs*, 838 F.3d at 1263 (determining claims lacked an inventive concept where they "simply recite[d] that the abstract idea of remote delivery [would] be implemented using the conventional components and functions generic to cellular telephones"). Indeed, claim 13 consists entirely of generically-described "means for" performing functional steps: "adjusting," "setting," "determining," and "quantizing." *Id.* ("'simply appending conventional steps specified at a high level of generality' to an abstract idea does not make that idea patentable" (quoting *Mayo*, 566 U.S. at 82)). Nor does claim 13 contain an inventive concept when viewed as an ordered combination. The claim merely requires "determining" and "quantizing" an offset and "setting" an initial transmission power based on the offset. '216 patent at cl. 13. This is no more than the sort of "perfectly conventional" components "employed in a customary manner" that has been held insufficient to transform an abstract idea into a patent-eligible invention. *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1017–18 (Fed. Cir. 2017).

The only possible allegedly inventive concept in claim 13 is the mathematical equation itself—proof the claim is fundamentally abstract. The specification explains the process of power loop convergence was known, '216 patent at 1:46–52, as well as power control via control signals, *id.* at 1:24–37. To the extent Philips alleges the claim is inventive because it speeds up the convergence process, it does

17

so by adjusting power control levels based on a mathematical equation. But a mathematical equation is abstract, and "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *BSG Tech*, 899 F.3d at 1290.

Limiting the claim to the context of radio communication systems does not save claim 13. Courts have repeatedly held that "merely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract." *Affinity Labs*, 838 F.3d at 1259; *Alice*, 573 U.S. at 223; *Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014).

## C.    Claim 13 of the '216 Patent is Ripe for a Determination on Eligibility

The Court should not defer an eligibility determination of claim 13 to a later stage. In cases such as this, where the only possible allegedly inventive concept is the abstract idea itself, courts have held claims ineligible under § 101 at the 12(c) stage. *E.g.*, *SAP Am.*, 898 F.3d at 1170. "[T]here are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law," and claim 13 should therefore be held ineligible at the Rule 12 stage. *ChargePoint*, 920 F.3d at 765 (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121,

18

1125 (Fed. Cir. 2018)).  There are no factual disputes that would prevent the Court from deciding this Motion now.

## VI.   CONCLUSION

For the foregoing reasons, Quectel respectfully requests that the Court grant judgment on the pleadings holding claim 13 of the '216 patent ineligible under 35 U.S.C. § 101.

Dated:  December 1, 2025

**FISH & RICHARDSON P.C.**

By: */s/ Warren K. Mabey Jr.*
Warren K. Mabey, Jr. (No. 5775)
Martina Tyreus Hufnal (No. 4771)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899
Tel: (302) 652-5070
Fax: (302) 652-0607
mabey@fr.com
hufnal@fr.com

Thomas H. Reger II (pro hac vice)
Fish & Richardson P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
reger@fr.com

Lawrence T. Jarvis (pro hac vice)

19

Katherine Reardon (pro hac vice)
Fish & Richardson P.C.
1180 Peachtree Street NE
21st floor
Atlanta, GA 30309
(404) 892-5005
jarvis@fr.com
reardon@fr.com

Elizabeth G.H. Ranks (pro hac vice)
Fish & Richardson P.C.
One Marina Park Drive
Suite 1700
Boston, MA 02210
617-368-2175
ranks@fr.com

Bryan J. Cannon (pro hac vice)
Fish & Richardson P.C.
1000 Maine Avenue SW
Suite 1000
Washington, DC 20024
(202) 220-6859
cannon@fr.com

*Attorneys for Defendant Quectel Wireless Solutions Co. Ltd.*

20

## <u>WORD COUNT CERTIFICATION</u>

Pursuant to the Court's Standing Order Regarding Briefing in All Cases (Nov. 10, 2022) and Local Rule 7.1.3(a)(4), the undersigned counsel hereby certifies that the foregoing document contains 4,431 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the foregoing document. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Warren K. Mabey Jr.*
Warren K. Mabey, Jr. (No. 5775)