# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V., | |
| Plaintiff, | |
| vs. | C.A. No. 20-1707-CFC |
| QUECTEL WIRELESS SOLUTIONS CO. LTD., | JURY TRIAL DEMANDED |
| Defendant. | |

## PHILIPS'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

OF COUNSEL:

Eley O. Thompson (*pro hac vice*)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
(312) 832-4359
ethompson@foley.com

Kevin M. Littman (*pro hac vice*)
Lucas I. Silva (*pro hac vice*)
FOLEY & LARDNER LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199-7610
(617) 342-4000
klittman@foley.com
lsilva@foley.com

YOUNG CONWAY STARGATT & TAYLOR, LLP

Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Alexis N. Stombaugh (No. 6702)
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com
astombaugh@ycst.com

*Attorneys for Plaintiff Koninklijke Philips N.V.*

# TABLE OF CONTENTS

I.      Nature and Stage of the Proceedings................................................................1

II.     Summary of Argument .....................................................................................1

III.    Statement of Facts.............................................................................................2

IV.     Legal Standard .................................................................................................4

V.      Argument ..........................................................................................................5

   A.     Claim 13 Is Patent-Eligible Under *Alice* ....................................................5

      1.     *Alice* Step One: Claim 13 Is Directed to a Technological Improvement, Not an Abstract Idea .......................................................5

         a.   Quectel's Arguments Oversimplify Claim 13........................................5

         b.   Claim 13 is Not Directed to the Abstract Application of a Mathematical Equation...........................................................................9

         c.   Claim 13 Is Comparable to Other Patent-Eligible Claims in Other Cases ....................................................................................................14

         d.   Quectel's Cited Cases Are Inapposite ................................................17

      2.     *Alice* Step Two: Claim 13 Includes an Inventive Concept....................19

   B.     Unresolved Claim Construction Also Precludes Judgment on the Pleadings.............................................................................................21

VI.     Conclusion .......................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018) ......................................................................5, 19

*Alice Corporation Pty. Ltd. v. CLS Bank International*,
573 U.S. 208 (2014).................................................................................. 4, 5, 18

*Astrazeneca AB v. Dr. Reddy's Labs., Inc.*,
209 F. Supp. 3d 744 (D. Del. 2016)......................................................................4

*BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016) ...........................................................................20

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ...........................................................................21

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
25 F.4th 976 (Fed. Cir. 2022) .............................................................................16

*Capstan AG Sys. v. Raven Indus., Inc.*,
228 F. Supp. 3d 1235 (D. Kan. 2017)..................................................................16

*CardioNet, LLC v. InfoBionic, Inc.*,
955 F.3d 1358 (Fed. Cir. 2020) ...........................................................................16

*Cisco Systems, Inc. v. Uniloc 2017 LLC*,
813 F. App'x 495 (Fed. Cir. 2020) ............................................................... 18, 19

*Diamond v. Diehr*,
450 U.S. 175 (1981)..........................................................................................7, 17

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ................................................................. *passim*

*Evolved Wireless, LLC v. Apple Inc.*,
221 F.Supp.3d 485 (D. Del. 2016)............................................... 10, 11, 14, 17

*In re TLI Commc'ns LLC Patent Litig.*,
 823 F.3d 607 (Fed. Cir. 2016)......................................................................4

*Intell. Ventures I LLC v. T-Mobile USA, Inc.*,
 No. 13-1632-LPS, 2017 WL 3706495 (D. Del. Aug. 23, 2017) .........................16

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
 942 F.3d 1143 (Fed. Cir. 2019) ................................................................ 15, 16

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
 837 F.3d 1299 (Fed. Cir. 2016) ............................................................ 6, 14, 19

*MyMail, Ltd. v. ooVoo, LLC*,
 934 F.3d 1373 (Fed. Cir. 2019) ...................................................................21

*Parker v. Flook*,
 437 U.S. 584 (1978).......................................................................................17

*Redwood Technologies, LLC v. Netgear, Inc.*,
 738 F. Supp. 3d 511 (D. Del. 2024).............................................................8, 9

*Thales Visionix, Inc. v. United States*,
 850 F.3d 1343 (Fed. Cir. 2017) ................................................................ 14, 15

*Venetec Inter., Inc. v. Nexus Med., LLC*,
 541 F. Supp. 2d 612 (D. Del. 2008).................................................................4

*WhitServe LLC v. Dropbox, Inc.*,
 854 F. App'x 367 (Fed. Cir. 2021) ............................................................ 18, 19

*XY, LLC v. Trans Ova Genetics, LC*,
 968 F.3d 1323 (Fed. Cir. 2020) ...................................................................15

**Other Authorities**

Fed. R. Civ. P 12(c)...............................................................................4, 10

Plaintiff Koninklijke Philips ("Philips") opposes Quectel Wireless Solutions Co. Ltd.'s ("Quectel") Motion for Judgment on the Pleadings regarding the validity of claim 13 of U.S. Patent No. 8,195,216 ("the '216 Patent") (D.I. 83).

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Philips filed its original complaint on December 17, 2020 (D.I. 1), and its First Amended Complaint on October 3, 2025 (D.I. 45).

The parties have begun the claim construction process. The combined claim construction brief is due on January 23, 2026, and the claim construction hearing is scheduled for February 10, 2026. D.I. 36, Ex. A.

## II.     SUMMARY OF ARGUMENT

1.      *Alice* Step One: Claim 13 is not directed to the abstract idea of a mathematical equation; it describes a specific technological improvement in radio communications systems.

2.      *Alice* Step Two: Claim 13 includes an inventive concept that was not well-understood, routine, or conventional at the time of invention and does not preempt any field. Alternatively, at a minimum, there are unresolved factual disputes concerning Step Two.

3.      Judgment on the pleadings is also premature because there are unresolved factual disputes as to claim construction.

1

## III.    STATEMENT OF FACTS

Philips is a founding member of the European Telecommunications Standards Institute and has been an active participant in the 3rd Generation Partnership Project. D.I. 45 at ¶8, ¶11. Philips has made significant contributions to the development of a blueprint (standard) available worldwide for cellular communications, including 3G/UMTS and 4G/LTE. *Id*. Philips has invested heavily in research and development, resulting in innovations that are fundamental to the operation of cellular communication systems. *Id.* at ¶9, ¶14.

Claim 13 of the '216 Patent is an example of such an innovation. The invention offers a concrete technological solution to problems with prior radio communications technology, specifically as they concern improving the standard relating to power control of signals transmitted between a primary base station ("BS") and a secondary mobile station ("MS").

The '216 Patent teaches that there are "two basic types of communication required" in a radio communication system – user traffic (*i.e.* data) and control information, which enables the exchange of user traffic. '216 Patent at 1:17-23. The patent further teaches that one of the functions of control information is to enable power control, which "is required so that the [base station] receives signals from different [mobile stations] at approximately the same power level" and "so that the [mobile station] receives signals from the [base station] with a low error

2

rate while minimizing transmission power, to reduce interference with other cells and radio systems." *Id.* at 1:25-32.

Claim 13 of the '216 Patent is directed to an improvement to the manner in which such critical power control functions are performed. Prior art power control systems for cellular systems led to problems at the start of a signal transmission or after a transmission interruption, due to the amount of time it would take for the signals to converge at the correct power level. *Id.* at 1:46-53. In particular, "[u]ntil convergence is achieved data transmissions are likely to be received in a corrupted state if their power level is too low, or to generate extra interference if their power level is too high." *Id.* at 1:48-52. The inventions of the '216 Patent address these problems through an improvement to power control that achieves rapid convergence of signal powers at the start of a transmission or after an interruption in transmission without causing ripple effects to the cellular system that would create more problems than benefits. *Id.* at 1:55-67, Fig. 5. This approach, which includes claim 13's use of a weighted sum of power control commands to adjust the initial transmission power after an interruption, marked a significant departure from prior art approaches. A person skilled in the art ("POSITA") would have recognized these teachings as specific improvements to radio communications technology, not as the abstract, mathematical implementation of existing practices onto a general-purpose computer or processor. D.I. 45 ¶¶64-67. The claim does not

3

automate a practice that was previously carried out by humans, and it is directed to a technical improvement in the highly technical field of power control of cellular communication systems.

## IV.   LEGAL STANDARD

When deciding a Rule 12(c) motion, the court "must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party." *Astrazeneca AB v. Dr. Reddy's Labs., Inc.*, 209 F. Supp. 3d 744, 754 (D. Del. 2016). All facts and inferences must be drawn from the pleadings themselves. *Venetec Inter., Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 617 (D. Del. 2008). "The motion can be granted only if no relief could be afforded ***under any set of facts*** that could be provided." *Astrazeneca*, 209 F. Supp. 3d at 754 (emphasis added).

Patent eligibility under §101 is assessed under the two-step test articulated in *Alice Corporation Pty. Ltd. v. CLS Bank International*, 573 U.S. 208, 217 (2014). Under Step One, the court must determine whether the claim is directed to patent-ineligible subject matter, such as an abstract idea, as opposed to a technical advance. *Id.* However, the Federal Circuit has warned that "we must be careful to avoid oversimplifying the claims." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016). If the claim is so broad as to be directed to a patent-ineligible abstract idea, the court considers whether any elements of the

4

claim, either individually or in combination, "transform the nature of the claim into a patent-eligible application," under Step Two. *Alice*, 573 U.S. at 217 (internal quotation omitted).

Under both steps, "there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).

## V.    ARGUMENT

### A.    Claim 13 Is Patent-Eligible Under *Alice*

The facts, when read (as they must be) in the light most favorable to Philips, demonstrate that claim 13 is patent-eligible at both Step One and Step Two.

#### 1.    *Alice* Step One: Claim 13 Is Directed to a Technological Improvement, Not an Abstract Idea

##### a.    Quectel's Arguments Oversimplify Claim 13

Claim 13 of the '216 Patent, which relates to an electronics-based invention that involves application of a mathematical formula to improve electronic circuitry functionality and operation of a radio transmitter system for cellular communication, is not directed merely to "the abstract idea of adjusting power levels based on a mathematical equation," as Quectel asserts. D.I. 85 at 9. Quectel oversimplifies claim 13, which is improper.

When considering a computer-based invention under *Alice* Step One, the Court must consider whether the claim focuses "on the specific asserted

5

improvement in computer capabilities… or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016). The mere fact that a claimed invention partly relies on or involves modified electronics, a modified general-purpose microprocessor, or mathematical formulae does not render a claim patent-ineligible where the invention itself improves functionality of the component. *Id.* at 1338; *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016) ("We do not assume that [claims involving a mathematical formula] are directed to patent ineligible subject matter because 'all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'") (internal quotation omitted). Thus, the Court must be careful not to oversimplify the claimed invention or describe it at too high a level of abstraction. *See Enfish*, 822 F.3d at 1337-38 ("[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to §101 swallow the rule.").

Quectel's Motion improperly frames and applies the *Alice* analysis by oversimplifying claim 13 to mischaracterize it as encompassing only the broad, abstract idea of applying a previously known mathematical equation on a general-purpose computer. D.I. 85 at 9-10. Indeed, Quectel's Motion explicitly (and improperly) asserts that that "claim 13 is invalid as a matter of law" merely

6

because, by "recit[ing] calculating a weight sum of power controls using a mathematical equation," it "*involves* an abstract idea." *Id.* (emphasis added). In reality, claim 13's description of part of the circuit operation in relation to a mathematical equation does not render it invalid. Under longstanding Supreme Court precedent, "a process is not unpatentable simply because it contains a law of nature or a mathematical algorithm." *Diamond v. Diehr*, 450 U.S. 175, 187 (1981) (quoting *Parker v. Flook*, 437 U.S. 584, 590 (1978)). Quectel's arguments ignore this key precedent and should be rejected.

The flaws in Quectel's Motion do not stop there. Quectel also improperly bases its analysis on isolated, out-of-context elements of claim 13 rather than the claim as a whole. D.I. 85 at 10-13. This approach is also contrary to controlling law. It is claim 13 as a whole – not its general field of invention or its individual elements – that matter. *See Enfish*, 822 F.3d at 1335-36. When considered in its entirety, claim 13 is plainly directed to technological improvements to power control in radio communication systems, which constitutes patent-eligible subject matter.

For example, far from claiming a mathematical formula in the abstract, claim 13 describes in detail how the claimed power control circuitry works, including through a specific combination and arrangement of the following radio communication system components:

7

- "a communication channel between the secondary station and a primary station, the channel including an uplink and a downlink control channel for transmission of control information, including power control commands, and a data channel for the transmission of data;"

- "power control means for adjusting the power of the uplink control and data channels in response to the downlink power control commands;"

- "means for setting an initial transmission power after an interruption in transmission to that before the interruption adjusted by an offset;"

- "means for determining the offset from a weighted sum of power control commands…;" and

- "in that means [for determining] are provided for quantizing the offset to an integer multiple of a minimum power control step size supported by the secondary station."

'216 Patent at claim 13. Such features provide important structure and demonstrate that the claim is directed to a technological improvement that may be described in relation to a mathematical equation to achieve improvements in the accuracy of signal transmissions while reducing interference in radio communication systems, not to the equation itself or the implementation of an equation on a general-purpose programmable computer.

Quectel attempts to hand-wave these elements away as irrelevant because they are "directed to the function itself" (D.I. 85 at 11), but Quectel fails to provide any meaningful authority or analysis in support. Quectel includes a "*cf.*" citation to *Redwood Technologies, LLC v. Netgear, Inc.*, 738 F. Supp. 3d 511, 524-26 (D. Del. 2024) (D.I. 85 at 11), but the functional language of the *Redwood* claims was

8

not itself problematic; rather, the claims were patent-ineligible because they did not incorporate any technical explanation of *how* that functionality was achieved, *i.e.*, they did not relate to improved electronics. *Redwood*, 738 F. Supp. 3d at 526. In contrast, claim 13 expressly discloses concrete components like a primary station, a secondary station, a communication channel, and a power controller, and the claim further describes how those components interact to achieve innovative improvements to power control technology actually claimed. '216 Patent at claim 13. This is distinguishable from the vague, high-level claim at issue in *Redwood* that merely suggested programming a general-purpose computer in a manner previously practiced. *See* 738 F. Supp. 3d at 524-25.

Accordingly, Quectel's Motion should be denied. It improperly asks this Court to ignore claim elements and describes what remains at such a high level of abstraction that it bears little resemblance to the actual claim. When claim 13 is properly analyzed as a whole, it is patent-eligible.

### b. Claim 13 is Not Directed to the Abstract Application of a Mathematical Equation

Claim 13 as a whole cannot reasonably be understood to be directed to application of a mathematical equation. Rather, it is comparable to claims that this Court and the Federal Circuit have previously found to be patent-eligible under *Alice* Step One.

9

For example, in *Evolved Wireless, LLC v. Apple Inc.*, the court denied a Rule 12(c) motion where the accused infringer argued—similar to Quectel here—that the asserted claims were patent-ineligible because they were "directed to a mathematical algorithm for generating a code sequence." 221 F.Supp.3d 485, 490 (D. Del. 2016). However, "[a] claim containing a mathematical formula can satisfy the requirements of §101 if it 'implements or applies that formula in a structure or process which, when considered as a whole, is performing a function which the patent laws were designed to protect.'" *Id.* (quoting *Diehr*, 450 U.S. at 192). Thus, "[c]laims 'improving the functioning of a computer' or 'improving an existing technological process' are patent-eligible even if they rely on a mathematical algorithm." *Id.* at 491 (quoting *Enfish*, 822 F.3d at 1336).

The *Evolved Wireless* claims met these criteria. The asserted patents "describe[d] problems and solutions firmly rooted in technology used for wireless communications," including: (1) that prior art "telecommunication systems either had a higher level of interference or were only able to serve a limited number of mobile phones for a particular base station" due to a "limited" number of available code sequences; and (2) that "prior art systems used a preamble of fixed length, limiting flexibility under different cell sizes." *Id.* at 493-94. The patents then provided techniques for optimizing existing telecommunications infrastructure that remedied or alleviated the identified problems, which were reflected in the claims.

10

*Id.* Accordingly, the court found that the claims as a whole were "directed to technological improvements resolving specific problems in a wireless communications system" and "claim[ed] patent-eligible subject matter" even if they used mathematical algorithms and allegedly well-known components to do so. *Id.* at 494.

The same result should follow here. As in *Evolved Wireless*, the '216 Patent describes concrete problems with prior art telecommunications technology and techniques, specifically as it relates to novel power control circuitry, with the signals transmitted between a base station ("BS") and a mobile station ("MS"). *See* '216 Patent at 1:24-52. Power control of signals in two-way radio communication systems "normally operate[] in a closed loop manner, whereby the MS determines the required changes in the power of transmissions from the BS and signals these changes to the BS, and vice versa." *Id.* at 1:33-37. However, prior art techniques for such power control loops faced certain technical problems:

> A known problem with these techniques is that[,] at the start of a transmission, or after the transmission is interrupted, the power control loops may take some time to converge satisfactorily. Until such convergence is achieved[,] data transmissions are likely to be received in a corrupted state if their power level is too low, or to general extra interference if their power level is too high.

*Id.* at 1:46-52; *see also id.* at 3:47-58. Moreover, prior art power control circuits did "not address the problem of obtaining rapid convergence of power control at the start of, or after an interruption in, a transmission." *Id.* at 2:51-53.

The '216 Patent identifies technology-based solutions for these problems based on a novel system that includes a novel power control. For example:

> According to a first aspect of the present invention there is provided a radio communication system comprising a primary station and a plurality of secondary stations, the system having a communication channel between the primary station and a secondary station, the channel comprising an uplink and a downlink control channel for transmission of control information, including power control commands, and a data channel for the transmission of data, wherein power control means are provided for adjusting the power of the control and data channels in response to the power control commands and means are provided for setting the initial transmission power after a pause in transmission to that before the pause adjusted by an offset.

*Id.* at 1:55-67; *see also id.* at 3:12-41; claim 13 (at 9:5-10:1).

When establishing the initial transmission power to be used after a pause in transmission, the patent explains that the mobile unit should include power control that sets the power to what it was before the interruption with an adjustment to that power by offset "determined from a weighted sum of the power control commands applied before the pause in transmission" (*id.* at 2:39-45; *see also id.* at claim 13 (at 10:1-2)), in which case, "the offset should be quantized to an available power step size before it is applied" (*id.* at 2:39-46; *see also id.* at claim 13 (at 10:11-13)).

This represents a departure from prior art methods for power control convergence. As Philips's Complaint explains, a POSITA would have understood that, at the time of the invention, "radio communications systems had not addressed power control problems in the manner specified in … the '216 Patent, including, … the problem of improving power control at the resumption of a pause and determining the first value for the transmission power after a transmission gap…." D.I. 45, ¶66. Thus, a POSITA would have recognized the teachings of the '216 Patent (and its claims) to represent specific improvements to radio communications technology, including power control, not simply a mathematical implementation of pre-existing practices. *Id.*

It is in this technical context that the '216 Patent also discloses the claimed mathematical equation. Notably, Quectel does not contend using weighted sum of power control commands, as a way to adjust the power after an interruption, was conventional. On top of that solution of using a weighted sum of power control commands, the patent further describes a more specific and narrow manner in which the mobile unit's power circuitry operates to establish an offset to the transmission power, *i.e.*, weighted sum of power control commands, using the specific equation and then quantizing the result to an available power step size. *Id.* at 5:27-49, claim 13 (at 9:15-10:13). That specificity does not generate ineligibility, but rather further demonstrates the non-abstractness of the claim. *See,*

13

*e.g.*, *McRo*, 837 F.3d at 1314 ("We … look to whether the claims in these patents focus on a specific means or method that improves the relevant technology …."); *Enfish*, 822 F.3d at 1337-38 (technological solution was not merely any form of storing tabular data, but rather the specific self-referential table described in the claim). Moreover, that is not all that claim 13 requires. In order to solve the power change problem previously recognized but unsolved by the prior art, the mathematical formula characterizes a novel particular arrangement of concrete infrastructure. Claim 13 therefore claims more than just the equation; it claims a specific technical solution and circuitry that uses an equation (but with the solution not being limited to that equation) to improve radio communication technology.

Thus, claim 13 is "directed to real-world applications in the field of radio communications, including, for example, physical devices such as a primary station and secondary station, which are used in ways that are concrete systems that improved radio communications," not to an abstract idea. D.I. 45, ¶64. This is patentable subject matter.

### c.    Claim 13 Is Comparable to Other Patent-Eligible Claims in Other Cases

*Evolved Wireless* is far from an outlier. Many other cases have found claims similar to claim 13 to be patent-eligible under *Alice* Step One.

For example, in *Thales Visionix, Inc. v. United States*, the Federal Circuit reversed a finding of ineligibility for claims that used mathematical equations to

improve navigation. 850 F.3d 1343, 1348-49 (Fed. Cir. 2017). Whereas prior art solutions "had difficulty accurately calculating inertial data, the claimed invention "mitigate[d] errors by eliminating inertial calculations with respect to the earth" such that the "claims provide[d] a method that eliminates many 'complications' inherent in previous solutions." *Id.* at 1348. Given the "unconventional choice of reference frame in order to calculate position and orientation," the lower court erred in finding that the claims were abstract. *Id.* at 1349.

Likewise, in *XY, LLC v. Trans Ova Genetics, LC*, the Federal Circuit upheld the patentability of claims that required the use of mathematical equations. 968 F.3d 1323, 1330-32 (Fed. Cir. 2020). As the court explained, "[t]hough the asserted claims employ formulas to improve classification and separation of individual particles, the formulas operate to achieve the improved result of the claimed method only when combined with the specific detectors and other flow cytometry limitations in the claims." *Id.* at 1332.

And while it did not involve a mathematical formula, the Federal Circuit's decision in *Koninklijke KPN N.V. v. Gemalto M2M GmbH* is also instructive. 942 F.3d 1143 (Fed. Cir. 2019). There, the claims were found patent eligible because they were directed to a non-abstract improvement to an existing technological process that is, like here, a part of transmitting data over the air, *i.e.*, error checking in data transmissions. Although the claims related to a known check data-matching

15

process, they improved the way such data was generated by varying the permutation applied to different data blocks. *Id.* at 1146. Because the claims required that "original data be varied by permutation before being supplied to the generating device" rather than "the mere desired result of catching previously undetectable systematic errors," they were patent-eligible. *Id.* at 1151-52.

Other cases have reached similar findings where the claims recited a mathematical equation or algorithm but did so in a way that improved the circuitry or operation of devices over the prior art. *Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 988 (Fed. Cir. 2022) ("Claim 13… claims more than a mathematical formula because it is directed to an efficient, improved method of encoding data that relies in part on irregular repetition. This alleged improvement is not patent ineligible simply because it employs a mathematical formula."); *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1371 (Fed. Cir. 2020) (finding claims not abstract because the application of the claimed algorithm improved how computers and other technology functioned); *Capstan AG Sys. v. Raven Indus., Inc.*, 228 F. Supp. 3d 1235, 1245 (D. Kan. 2017) (finding claim patent-eligible where "[t]he claimed invention uses a mathematical formula to create individual nozzle control and so applies this formula to improve the existing system and method for agrochemical spraying"); *Intell. Ventures I LLC v. T-Mobile USA, Inc.*, No. 13-1632-LPS, 2017 WL 3706495, at *7-8 (D. Del. Aug. 23, 2017) (finding claim patent-eligible where,

16

"[i]nstead of simply reciting a mathematical relationship, [the patent] employs that relationship to aid in the high-speed transmission of data without compromising bandwidth efficiency"); *see also Diehr*, 450 U.S. at 185-88 (process of curing synthetic rubber, using a mathematical equation as part of the process, found patent-eligible).

Like the claims in *Evolved Wireless*, *Thales*, *XY*, *KPN*, and the various other cases discussed above, claim 13 is also directed to an innovative solution to a real-world problem, not merely a desired outcome or a mathematical equation in the abstract. Claim 13 should be found valid under *Alice* Step One.

### d. Quectel's Cited Cases Are Inapposite

In contrast, the cases Quectel cites—one decades-old Supreme Court case and two unpublished Federal Circuit decisions—are inapposite.

For example, Quectel cites to *Parker v. Flook*, 437 U.S. 584, 585-86 (1978), as an "analogous" case. D.I. 85 at 13-14. The patent in *Flook*, however, was markedly different from claim 13 of the '216 Patent, at least because its claims recited ***no steps*** other than calculating and storing data on a general-purpose computer, such that they effectively claimed nothing but the mathematical formula itself. *See Flook*, 437 U.S. at 596-97 (providing claim language). The *Flook* claims therefore would have covered ***any*** iteration of performing the calculation and storing the result even if done only as a "basic tool[] of scientific and technological

17

work." *Alice*, 573 U.S. at 216. Claim 13, on the other hand, requires specific circuitry arrangements and interactions of radio components for the claimed invention to function, such that it is directed to a distinct technological improvement.

Quectel's reliance on the unpublished cases *Cisco Systems, Inc. v. Uniloc 2017 LLC*, 813 F. App'x 495, 497-99 (Fed. Cir. 2020), and *WhitServe LLC v. Dropbox, Inc.*, 854 F. App'x 367, 371-72 (Fed. Cir. 2021), fares no better. In its entirety, the claim in *Cisco* recited:

> 6. A method of operating an ad-hoc radio communication system having a plurality of stations formed into at least one network, the method comprising the step of:
>
> > determining a master/slave rank of each station in the network representative of the station's suitability for acting as master in the network using antenna performance characteristics of each station in view of the antenna's local environment; and enabling a station with the highest rank to be master.

813 F. App'x at 496. Thus, this claim effectively covered *any* method of selecting a master station based on antenna performance without regard to any specific implementation or novel use of circuitry. *See id.* at 497. Similarly, the claim in *WhitServe* simply recited executing nonspecific "software" to carry out fundamental business functions that predated the use of computers and the internet using generic computer components and applying previously used methods. 854 F. App'x at 368-69, 371. The same cannot be said of claim 13, which is directed to a

specific technological improvement to radio communication technology, not to generic business activities, and is implemented in a specific, concrete way. On the whole, the claims in *Cisco* and *WhitServe* are far broader and more abstract than claim 13, and neither case is relevant here.

## 2.   *Alice* Step Two: Claim 13 Includes an Inventive Concept

Because claim 13 survives *Alice* Step One, there is no need to address Step Two. *McRO*, 837 F.3d at 1312. However, should the Court consider Step Two, the record demonstrates that claim 13 is further directed to an inventive concept and is therefore patent-eligible.

Under *Alice* Step Two, a claim is not patent-ineligible "when the claim limitations involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry." *Aatrix Software,* 882 F.3d at 1128 (quotation omitted). As discussed, claim 13 teaches and claims a technological improvement to radio communications systems and power control circuitry that was not known in the art. *See* § V.A.1, *supra*. More specifically, having a secondary (mobile) station set the initial transmission power following a pause in transmission using an offset to the power that is determined from a weighted sum of the power control commands applied before the pause was not well-understood, routine, or conventional at the time of invention. '216 Patent at 2:39-46; D.I. 45, ¶¶60-62. Instead, prior art systems included a primary (base)

19

station that recognized the secondary station was using an inappropriate power level when transmitting a request, measured that power level, and then instructed the secondary station to repeat the request using an appropriate power level that allowed for uplink data transmission, which resulted in the introduction of errors due to how long the process took to complete. '216 Patent at 3:59-65. Thus, claim 13, which on the whole is directed to one implementation of the '216 Patent's weighted-sum technological solution, includes an inventive concept that was not well-understood, routine, or conventional at the time of invention. This renders the claim patent-eligible under *Alice* Step Two.

Quectel asserts that claim 13's element "viewed both individually and as an ordered combination, contain no inventive concept" (D.I. 85 at 16), but Quectel cites no evidence for that proposition. Quectel also does not claim that using a weighted sum of power control commands, in general, was conventional. At a minimum, Quectel's allegations are contrary to the factual assertions in the complaint. D.I. 45, ¶¶64-67.

Also, there are notably no preemption issues (*see, e.g.*, D.I. 45, ¶65), which Quectel appears to recognize given its failure to even argue the point. A claim is less likely to be patent-ineligible when its elements "do not preempt the use of the abstract idea." *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016). Claim 13 describes one way of using the

20

mathematical equation to implement specific technological improvements in radio communications; it does not preempt all ways of using the recited equation.

Alternatively, at a minimum, Quectel's Motion should be denied because there are disputed factual issues. Apart from the '216 Patent itself, the record is devoid of facts, such as expert and inventor testimony, that would bear on what was or was not conventional in the field at the time of invention and how the claims contain transformative inventive concepts. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018) ("Whether something is well-understood, routine and conventional to a skilled artisan at the time of the patent is a factual determination."). To the extent the parties disagree on the unconventional nature of the invention of claim 13, this is a factual dispute that prevents judgment on the pleadings.

### B.    Unresolved Claim Construction Also Precludes Judgment on the Pleadings

Quectel's Motion should also be denied as premature because claim construction has not yet occurred.  Courts have recognized that claim construction may be required before patent eligibility can be decided. *See, e.g., MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1375, 1379-80 (Fed. Cir. 2019).

Quectel asserts that claim 13 is purely functional. D.I. 85 at 10-11. These arguments mirror Quectel's assertion in claim construction that various terms and phrases of claim 13 must be construed as means-plus-function limitations and lack

structure, including the phrase "power control means …." D.I. 92, Ex. B at 1-6.

Philips asserts that it is structural, relating specifically to a "power controller" (*id.* at 1), which undermines Quectel's assertion that claim 13 is patent-ineligible because it is purely functional.

## VI. CONCLUSION

For the foregoing reasons, Philips respectfully requests that the Court deny Quectel's Motion.

Of Counsel:

Eley O. Thompson (pro hac vice)
Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
(312) 832-4359
ethompson@foley.com

Kevin M. Littman (pro hac vice)
Lucas I. Silva (pro hac vice)
Foley & Lardner LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199-7610
(617) 342-4000
klittman@foley.com
lsilva@foley.com

*Attorneys for Plaintiff Koninklijke
Philips N.V*


Dated: December 23, 2025

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

/s/*Adam W. Poff*
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Alexis N. Stombaugh (No. 6702)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com
astombaugh@ycst.com

23

## <u>WORD COUNT CERTIFICATION</u>

Pursuant to the Court's Standing Order Regarding Briefing in All Cases (Nov. 10, 2022) and Local Rule 7.1.3(a)(4), the undersigned counsel hereby certifies that the foregoing document contains 4,974 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the foregoing document. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

/s/ *Adam W. Poff*

Adam W. Poff (No. 3990)

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2025, I caused the foregoing document to be served via electronic mail upon the following counsel:

Warren K. Mabey, Jr.
Martina Tyreus Hufnal
Fish & Richardson PC
222 Delaware Avenue, 17th Floor
Wilmington, DE  19801
*mabey@fr.com*
*hufnal@fr.com*

Thomas H. Reger II
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
*reger@fr.com*

Bryan J. Cannon
FISH & RICHARDSON P.C.
100 Maine Avenue SW, Suite 1000
Washington, DC 20024
*cannon@fr.com*

*Attorney for Quectel Wireless Solutions Co. Ltd.*

Elizabeth G.H. Ranks
FISH & RICHARDSON P.C.
One Marina Park Drive, Suite 1700
Boston, MA 02210
*ranks@fr.com*

Lawrence R. Jarvis
Katherine Reardon
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st floor
Atlanta, GA 30309
*jarvis@fr.com*
*reardon@fr.com*

Dated:  December 23, 2025

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Adam W. Poff*
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Alexis N. Stombaugh (No. 6702)

Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
*apoff@ycst.com*
*rvrana@ycst.com*
*astombaugh@ycst.com*

*Attorneys for Plaintiff*