# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KONINKLIJKE PHILIPS N.V.,

    Plaintiff,

    v.

QUECTEL WIRELESS SOLUTIONS CO. LTD. and EAGLE ELECTRONICS INC.

    Defendants.

C.A. No. 1:20-1707-CFC

**JURY TRIAL DEMANDED**

## QUECTEL'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNT V UNDER FED. R. CIV. P. 12(h)(3)

Dated:  April 10, 2026

Martina Tyreus Hufnal (No. 4771)
Warren K. Mabey, Jr. (No. 5775)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899
Tel: (302) 652-5070
Fax: (302) 652-0607
hufnal@fr.com
mabey@fr.com

*Attorneys for Defendant Quectel Wireless Solutions Co. Ltd.*

# TABLE OF CONTENTS

I.    NATURE AND STAGE OF PROCEEDINGS.................................................1

II.    SUMMARY OF ARGUMENT.....................................................................2

III.    STATEMENT OF FACTS ...........................................................................3

IV.    ARGUMENT...............................................................................................5

    A.    Legal Standard..................................................................................5

    B.    Count V Must Be Dismissed Under Rule 12(h)(3)..............................7

        1.    The Court Lacks Jurisdiction to Adjudicate the Validity, Infringement or Essentiality of Unasserted and Foreign Patents ................................................................................7

        2.    A Binding, Worldwide FRAND Rate Requires the Implementer's Affirmative Consent, Which Quectel Has Repeatedly Refused.......................................................9

    C.    Absent Consent, Any FRAND Rate This Court Might Set Would Be an Impermissible Advisory Opinion...............................................11

    D.    Philips Cannot Manufacture Jurisdiction by Recharacterizing Count V as a Pure Contract Claim ......................................................12

V.    CONCLUSION.........................................................................................13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arbaugh v. Y&H Corp.*,
  546 U.S. 500 (2006)..............................................................................................5

*Flast v. Cohen*,
  392 U.S. 83 (1968)..............................................................................................11

*Ins. Corp. of Ireland, Ltd. v. Compagnie Des Bauxites de Guinee*,
  456 U.S. 694 (1982)............................................................................................13

*InterDigital Commc'ns, Inc. v. ZTE Corp.*,
  No. 13-cv-9, 2014 WL 2206218 (D. Del. May 28, 2014)...........................*passim*

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994).........................................................................................5, 13

*Koninklijke Philips N.V. v. Quectel Wireless Sols. Co. Ltd.*,
  No. 1:20-cv-1710, D.I. 1.......................................................................................1

*Lincoln Benefit Life Co. v. AEI Life, LLC*,
  800 F.3d 99 (3d Cir. 2015) ...................................................................................5

*Optis Wireless Tech., LLC v. Apple, Inc.*,
  No. 19-cv-66, 2020 WL 999463 (E.D. Tex. Mar. 2, 2020)..............................6, 8

*Roku, Inc. v. Access Advance LLC*,
  No. 24-cv-13217, D.I. 52 (D. Mass July 22, 2025).............................3, 4, 11, 12

*Step-Saver Data Sys., Inc. v. Wyse Tech.*,
  912 F.2d 643 (3d Cir. 1990) .................................................................5, 11, 13

*Voda v. Cordis Corp.*,
  476 F.3d 887 (Fed. Cir. 2007) ....................................................................2, 6, 8

**Other Authorities**

Federal Rule of Civil Procedure 12(h)(3) ....................................................1, 2, 5, 7

ii

Quectel moves under Federal Rule of Civil Procedure 12(h)(3) to dismiss Count V of Philips's Second Amended Complaint for lack of subject matter jurisdiction. Specifically, Count V of Philips's Second Amended Complaint asks this Court to set a FRAND royalty rate covering Philips's entire "2G, 3G, and 4G SEP worldwide portfolio"—more than 1,100 patents issued in dozens of countries. D.I. 201 ¶ 170. The Court does not have the authority to grant such a request because a U.S. district court cannot adjudicate the validity, infringement, or essentiality of foreign patents under foreign law. And it cannot set a binding worldwide FRAND rate absent the implementer's—here, Quectel's—affirmative binding consent. Without Quectel's consent, any such ruling would be purely an advisory opinion— forbidden under Article III. Each of these issues compel dismissal of Count V under Federal Rule of Civil Procedure 12(h)(3) as a matter of law.

## I.    NATURE AND STAGE OF PROCEEDINGS

Philips filed two cases on December 17, 2020 including, among other claims, a claim that eventually became Count V in this case, for "Declaratory Judgment Related to FRAND and ETSI matters."[1] D.I. 1 ¶¶ 212–17. Quectel filed its Answer on May 14, 2021. *See* D.I. 8. Proceedings in this case were subsequently postponed

---

[1] Philips initially brought a substantively identical claim in a parallel case, also before this Court. *Koninklijke Philips N.V. v. Quectel Wireless Sols. Co. Ltd.*, No. 1:20-cv-1710, D.I. 1 ¶¶ 200–06 (D. Del. Dec. 17, 2020) ("1710 Case"). Philips subsequently moved to sever and consolidate certain claims. *1710 Case*, D.I. 67.

pending parallel inter partes review (IPR) proceedings involving the patents at issue in this case, *see* D.I. 20 (Joint Status Report), and a parallel proceeding at the International Trade Commission, which involved other patents asserted by Philips against Quectel in another co-pending district court case. Following resolution of those parallel proceedings, the case was reopened and trial is scheduled for December 2026. D.I. 36 at Exhibit A.

On October 14, 2025, Philips moved for leave to file its Second Amended Complaint. D.I. 54. The Court granted Philips's motion on March 5, 2026. D.I. 199 at 198:11–12. Count V of the Second Amended Complaint seeks, among other things, a judicial determination of the "FRAND royalty . . . owed by Quectel for a license to Philips' 2G, 3G, and 4G SEP worldwide portfolio." D.I. 201 ¶ 170. Quectel now moves under Rule 12(h)(3) to dismiss Count V.

## II.    SUMMARY OF ARGUMENT

1.      As initially laid out in Quectel's Letters to the Court in April and May 2025, this Court lacks subject matter jurisdiction to set a worldwide, portfolio-wide FRAND rate because such a determination would require adjudicating the validity, infringement, and essentiality of non-asserted and foreign patents, issues which are outside this Court's jurisdiction. *See Voda v. Cordis Corp.*, 476 F.3d 887, 900–02 (Fed. Cir. 2007).

2

2.      As Quectel has notified the Court and Philips, Quectel does not consent to be bound by a worldwide, portfolio-wide FRAND rate determination, and any such non-binding determination is outside the Court's subject matter jurisdiction. *InterDigital Commc'ns, Inc. v. ZTE Corp.*, No. 13-cv-9, 2014 WL 2206218, at *2–3 (D. Del. May 28, 2014). The cases on which Philips has previously relied in support of its claim—including Philips's own *Telit* and *Thales* matters in this Court—confirm that a court can determine a worldwide FRAND rate only where the implementer has affirmatively consented.

3.      Absent consent of the potential licensee to be bound by a worldwide, portfolio-wide FRAND rate determination, any such determination is an impermissible advisory opinion. *Roku, Inc. v. Access Advance LLC*, No. 24-cv-13217, D.I. 52 (D. Mass July 22, 2025).

## III.    STATEMENT OF FACTS

Philips has requested, in Count V of its Second Amended Complaint, a declaratory judgment of "the FRAND royalty . . . owed by Quectel for a license to Philips' 2G, 3G, and 4G SEP worldwide portfolio." D.I. 201 ¶ 170. Philips first urged this Court to structure the case around that worldwide-rate theory in a March 12, 2025 letter, requesting an initial "FRAND trial" in which the Court would "determine whether Quectel has demanded and exercised its third-party right to enter a FRAND license . . . and, if so, to determine the FRAND royalty owed by Quectel

3

for a license to Philips' worldwide SEP 2G, 3G, and 4G portfolio." D.I. 21 at 4–5.

Philips represented to the Court that "[t]he heart of the dispute between the parties

is the determination of what a FRAND license and royalty would be for Quectel to

license **and use Philips' technology covered by the over 1100 patents in Philips'**

**worldwide SEP portfolio."** *Id.* (emphasis added).

In its April 7, 2025 response letter, Quectel made clear that "Quectel does not

consent . . . to a binding global worldwide FRAND rate being set in either the 1707

or 1710 litigations." D.I. 22 at 4.  Quectel expanded on these jurisdictional barriers

in its May 14, 2025 letter, explaining that

> Philips's proposal contravenes the law.  Philips asks this Court to
> establish a global FRAND rate for Philips's worldwide portfolio of
> standard essential patents (SEPs) from dozens of countries, and to force
> Quectel to accept this license.  No jurisdiction exists here to determine
> whether or not Philips' foreign patents are standard essential, and
> jurisdiction to set a global FRAND rate could exist only if Defendants
> consent to a global rate determination.  Defendants do not so consent.

D.I. 27 at 1–2.  In the same letter, Quectel reiterated: "Quectel does not consent . . .

to a binding global worldwide FRAND rate being set in either the 1707 or 1710

cases, especially before any asserted Philips patent has been found to be essential,

valid, and enforceable." *Id.* at 3.  Quectel has never changed its position.

4

## IV.    ARGUMENT

### A. Legal Standard

Federal Rule of Civil Procedure 12(h)(3) requires "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Subject matter jurisdiction cannot be waived, forfeited, or conferred by consent of the parties, and "[t]he objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). Philips, as the party invoking federal jurisdiction, bears the burden of establishing that its claim falls within the Court's Article III power. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015).

For declaratory judgment claims, like Count V here, the Third Circuit evaluates jurisdiction under three factors: (1) "adversity in the interest of the parties," (2) "conclusiveness of the judicial judgment," and (3) "the practical help, or utility, of that judgment." *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990). As confirmed by this Court, a U.S. district court only has jurisdiction to set a portfolio-wide FRAND rate if the potential licensee agrees to be bound by the court's determination. *See InterDigital*, 2014 WL 2206218, at * 2–3. Indeed, this Court ruled that without consent

> it is evident to the Court that even if the Court were able to determine the FRAND rate in an efficient manner, which the Court finds highly dubious considering that there are 500 or so possibly relevant patents, the Court's FRAND finding would have little utility and serve little to no useful purpose.

*Id.* at *3. As such, where a potential licensee does not consent to a portfolio-wide FRAND rate determination, any determination of that scope is advisory, lacks utility, and is therefore outside the court's jurisdiction.

U.S. courts also lack jurisdiction to determine the validity, infringement, and essentiality of foreign patents under the governing foreign law. *See, e.g.*, *Voda*, 476 F.3d at 900–02 (refusing to "exercise jurisdiction over infringement claims based on foreign patents" because it "would require us to define the legal boundaries of a property right granted by another sovereign and then determine whether there has been a trespass to that right"); *Optis Wireless Tech., LLC v. Apple, Inc.*, No. 19-cv-66, 2020 WL 999463, at *1–3 (E.D. Tex. Mar. 2, 2020) (explaining "it is almost always an abuse of discretion to assume jurisdiction over a foreign patent infringement claim and that this reasoning should apply equally to the hypothetical breach of a FRAND contract").

6

## B. Count V Must Be Dismissed Under Rule 12(h)(3)

This Court lacks jurisdiction to determine FRAND (royalty) rates related to unasserted patents.[2]  Count V of Philips's Second Amended Complaint requests that the Court determine a FRAND rate for "Philips' 2G, 3G, and 4G SEP worldwide portfolio," D.I. 201 ¶ 170, relief that is not properly within the Court's jurisdiction. *See also* D.I. 21 at 4–5 (requesting determination of a royalty "for Quectel to license and **use Philips' technology covered by over 1100 patents in Philips' worldwide SEP portfolio**" (emphasis added)).  In other words, Philips is trying to use this Court to force Quectel to pay royalties for foreign (and unasserted U.S.) patents without any finding of infringement by millions of Quectel products sold over the past fifteen years.

### 1. The Court Lacks Jurisdiction to Adjudicate the Validity, Infringement or Essentiality of Unasserted and Foreign Patents

Determining a portfolio-wide FRAND royalty rate presupposes that all patents in the worldwide portfolio are valid, infringed, and essential.  But the portfolio includes more than 1,000 patents that have **never** been asserted or adjudicated against Quectel anywhere in the world, and the issues of validity, infringement, and essentiality of those other patents are not now before the Court.

---

[2] To the extent that Count V is limited to only the four asserted patents that will be adjudicated, then Quectel agrees that subject matter exists.

Indeed, many of the unasserted patents are foreign patents, for which the Court lacks jurisdiction to make these determinations.

In *Voda v. Cordis Corp.*, the Federal Circuit held that a U.S. district court abused its discretion in exercising supplemental jurisdiction over foreign patent infringement claims, because doing so "would require [the court] to define the legal boundaries of a property right granted by another sovereign and then determine whether there has been a trespass to that right." 476 F.3d at 900. The Federal Circuit grounded its holding in comity, the act-of-state doctrine, and judicial economy. *Id.* at 900–04. Those same concerns apply with full force here: setting a FRAND rate for, say, a Philips patent issued in Germany or China requires this Court to assess the scope and validity of that foreign property right under foreign law.

Courts applying *Voda* in the FRAND context have reached the same conclusion. In *Optis Wireless Technology, LLC v. Apple, Inc.*, the Eastern District of Texas dismissed the portion of a declaratory judgment claim that sought a worldwide FRAND determination, holding that *Voda*'s reasoning "should apply equally to the hypothetical breach of a FRAND contract" and that "it is almost always an abuse of discretion to assume jurisdiction over a foreign patent infringement claim." 2020 WL 999463, at *1–3. The court maintained jurisdiction over the claims tied to U.S. patents but refused to extend its reach to the foreign patents in the same declared portfolio.

**2. A Binding, Worldwide FRAND Rate Requires the Implementer's Affirmative Consent, Which Quectel Has Repeatedly Refused**

Every reported U.S. decision in which a court has set a binding worldwide FRAND rate is predicated on one common factor: the implementer agreed to be bound. In *TCL Communication Technology Holdings Ltd. v. Telefonaktiebolaget LM Ericsson*, the Federal Circuit emphasized that "the parties agreed to engage in a binding court adjudication of terms for a worldwide portfolio license." 943 F.3d 1360, 1365 (Fed. Cir. 2019). In *Microsoft Corp. v. Motorola, Inc.*, the Ninth Circuit grounded jurisdiction in the fact that "Motorola expressed its consent to a bench trial on the RAND rate." 795 F.3d 1024, 1038 (9th Cir. 2015). In both of those cases, consent was the jurisdictional predicate required to proceed with a rate-setting trial. Quectel has repeatedly not consented to such a determination. Indeed, Quectel unequivocally stated in its April 7, 2025 and May 14, 2025 letters to the Court that it "**does not consent** . . . to a binding global worldwide FRAND rate being set in either the 1707 or 1710 litigations, especially before any asserted Philips patent has been found to be essential, valid, and enforceable." D.I. 22 at 4 (emphasis added); *see* D.I. 27 at 3.

When consent is absent, courts uniformly decline to set a FRAND rate. Critically, this Court reached that decision in *InterDigital Communications, Inc. v. ZTE Corp.*, No. 13-cv-9, 2014 WL 2206218 (D. Del. May 28, 2014), holding that

absent a sworn commitment from the implementer, a FRAND rate determination would amount to nothing more than "a data point from which the parties could continue to negotiate." *Id.* at *3. Judge Andrews explained: "even if the Court were to determine a FRAND rate, I am unclear as to how [the Court] could actually enforce such a ruling." *Id.* And in *Apple Inc. v. Telefonaktiebolaget LM Ericsson, Inc.*, the Northern District of California held that "there exists no legal basis upon which Apple may be compelled to take a license for Ericsson's patents on a portfolio-wide basis, as much as Ericsson may be able to point to business realities that make such an outcome unlikely, imprudent or uneconomical on Apple's part." No. 15-cv-154, 2015 WL 1802467, at *2 (N.D. Cal. Apr. 20, 2015).

Philips's own litigation against other module manufacturers demonstrates this principle. In *Koninklijke Philips N.V. v. Telit Wireless Solutions, Inc.*, Telit expressly agreed that it "does not oppose the Court determining the appropriate FRAND rate (for Philips' worldwide portfolio) in the event liability is established." No. 20-cv-1708, D.I. 9 at 2 (D. Del. Feb. 15, 2021). In *Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*, Thales "submitted a sworn declaration . . . confirming that Thales is a willing licensee and that it will enter into a license to Philips' worldwide patent portfolio under FRAND and ETSI terms determined by this Court." No. 20-cv-1709, D.I. 9 ¶ 221 (D. Del. Apr. 5, 2021). Those are the sworn commitments that conferred jurisdiction in *Telit* and *Thales*. Quectel has made no

10

such commitment—indeed, it has affirmatively done the opposite, previously reporting to the Court twice in writing that Quectel does not consent.  D.I. 22 at 4; D.I. 27 at 3.

### C. Absent Consent, Any FRAND Rate This Court Might Set Would Be an Impermissible Advisory Opinion.

The ban on advisory opinions is "the oldest and most consistent thread in the federal law of justiciability."  *Flast v. Cohen*, 392 U.S. 83, 96 (1968).  Article III confines federal courts to resolving concrete disputes that will be "conclusive" and binding between the parties.  *Step-Saver*, 912 F.2d at 647.  Where, as here, the implementer has refused to be bound, a FRAND rate determination fails both the conclusiveness and the practical-utility prongs of the Third Circuit's *Step-Saver* test.  This Court already reached that conclusion in *InterDigital*, explaining:

> [I]t is evident to the Court that even if the Court were able to determine the FRAND rate in an efficient manner, which the Court finds highly dubious considering that there are 500 or so possibly relevant patents, the Court's FRAND finding would have little utility and serve little to no useful purpose.

*InterDigital*, 2014 WL 2206218, at *3.  *See also Roku, Inc. v. Access Advance LLC*, No. 24-cv-13217, D.I. 52 (D. Mass July 22, 2025) (finding "[t]he court lacks jurisdiction to determine the FRAND rate as requested . . . .  The U.S. patents constitute only a fraction of the larger portfolio which includes hundreds of foreign patents[,] and the court's opinion on the appropriate royalty rate would merely be advisory."

The *Roku* case is telling because there, the **implementer** was the one affirmatively seeking a court-set rate and commitment to be bound.  Even there, the Court refused, because the foreign patents in the portfolio rendered the exercise advisory regardless of the implementer's willingness.  If a willing implementer cannot force a district court to conduct worldwide rate setting, then an unwilling implementer like Quectel cannot be subjected to such a trial.

Because Philips's Count V requests determination of a FRAND rate for many patents not asserted in this case, the Court lacks jurisdiction to adjudicate Count V of the Second Amended Complaint.  Count V of Philips's Second Amended Complaint should be dismissed.

### D. Philips Cannot Manufacture Jurisdiction by Recharacterizing Count V as a Pure Contract Claim

Philips has suggested a novel theory in prior filings that Count V is essentially just a French law contract claim based on Quectel's alleged "use" of Philips's patents, and therefore French third-party beneficiary principles impose an obligation to take a license without any finding of validity, infringement, or essentiality.  *See, e.g.*, D.I. 26 at 9.  Setting aside the (failed) merits of that theory as a matter of French law, that theory does not cure the fundamental jurisdictional defects identified, *supra*.  Namely, there has never been any adjudication by any court in the world that Quectel uses any Philips patent.  As such, Philips is asking this Court to use French law to force Quectel to pay royalties on foreign patents that Quectel may not use.

Subject matter jurisdiction is a function of Article III and U.S. federal statute; it cannot be created or expanded by foreign law.  *See Ins. Corp. of Ireland, Ltd. v. Compagnie Des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (explaining subject matter jurisdiction is a function of the judicial power of the federal courts under Article III of the Constitution and the authorizing legislation of Congress); *Kokkonen*, 511 U.S. at 377 ("Federal courts are courts of limited jurisdiction."). Even if French law imposed a duty to take a worldwide license, that would need to be enforced in a tribunal with the constitutional power to issue a binding judgment. The *Step-Saver* inquiry does not ask "what law governs"; it asks whether the Court's judgment will be "conclusive" and whether it will serve a "useful purpose."  912 F.2d at 647, 649.  Recharacterizing the claim as contractual does nothing to answer those questions, because the conclusiveness and utility problems stem from Quectel's refusal to consent, not from the source of the underlying rule of decision.

## V.    CONCLUSION

For the foregoing reasons, Quectel requests that the Court dismiss Count V of Philips's Second Amended Complaint under Federal Rule of Civil Procedure 12(h)(3).

13

Dated:  April 10, 2026

**FISH & RICHARDSON P.C.**

By:  */s/  Warren K. Mabey, Jr.*
     Martina Tyreus Hufnal (No. 4771)
     Warren K. Mabey, Jr. (No. 5775)
     222 Delaware Avenue, Suite 1700
     Wilmington, DE 19801
     Tel: (302) 652-5070
     Fax: (302) 652-0607
     hufnal@fr.com
     mabey@fr.com

     Thomas H. Reger II (pro hac vice)
     Fish & Richardson P.C.
     1717 Main Street, Suite 5000
     Dallas, Texas 75201
     Tel: (214) 747-5070
     Fax: (214) 747-2091
     reger@fr.com

     Lawrence R. Jarvis (pro hac vice)
     Katherine Reardon (pro hac vice)
     Peter Hong (pro hac vice)
     Fish & Richardson P.C.
     1180 Peachtree Street NE, 21st floor
     Atlanta, GA 30309
     Tel: (404) 892-5005
     jarvis@fr.com
     reardon@fr.com
     hong@fr.com

     Elizabeth G.H. Ranks (pro hac vice)
     Fish & Richardson P.C.
     One Marina Park Drive, Suite 1700
     Boston, MA 02210
     Tel: 617-368-2175
     ranks@fr.com

14

Bryan J. Cannon (pro hac vice)
Fish & Richardson P.C.
1000 Maine Avenue SW, Suite 1000
Washington, DC 20024
Tel: (202) 220-6859
cannon@fr.com

Mohammad Reza Kameli (pro hac vice)
Fish & Richardson P.C.
7 Times Square, 20th Floor
New York, NY 10036
(212) 765-5070
kameli@fr.com

*Attorneys for Defendant Quectel Wireless
Solutions Co. Ltd.*

15

## <u>WORD COUNT CERTIFICATION</u>

Pursuant to the Court's Standing Order Regarding Briefing in All Cases (Nov. 10, 2022) and Local Rule 7.1.3(a)(4), the undersigned counsel hereby certifies that the foregoing document contains 3,096 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the foregoing document. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)