**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V., | C.A. No. 20-1707-CFC-CJB |
| Plaintiff, | AND |
| v. | C.A. No. 20-1710-CFC-CJB |
| QUECTEL WIRELESS SOLUTIONS CO. LTD., and EAGLE ELECTRONICS INC., | ██████████████████ |
| Defendants. | **REDACTED - PUBLIC VERSION (Filed May 8, 2026)** |
| KONINKLIJKE PHILIPS N.V., | |
| Plaintiff, | |
| v. | |
| QUECTEL WIRELESS SOLUTIONS CO. LTD., CALAMP CORP., XIRGO TECHNOLOGIES, LLC, LAIRD CONNECTIVITY INC., and EAGLE ELECTRONICS INC., | |
| Defendants. | |

**PHILIPS'S ANSWERING BRIEF
IN OPPOSITION TO DEFENDANT'S MOTION TO SEVER**

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................1

II.   STATEMENT OF FACTS AND STAGE OF PROCEEDINGS ....................2

III.  LEGAL STANDARD...............................................................................3

IV.  ARGUMENT..........................................................................................4

     A.    Eagle Is a Proper Defendant in this Case Under 35 U.S.C. § 299 ........4

         1.    The Infringing Aspects of Eagle's and Quectel's Accused Products Are the Same ...............................................................4

         2.    Eagle and Quectel's Infringement Arises from the Same Transaction and/or Occurrence .................................................12

         3.    There are Common Questions of Fact Regarding Eagle's and Quectel's Accused Products .................................................14

     B.    Eagle Will Not Be Prejudiced as a Defendant in this Case.................14

V.   CONCLUSION.....................................................................................17

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Sitepro, Inc. v. WaterBridge Res., LLC*,
   No. 6:23-cv-00115-ADA-DTG, 2024 WL 1724252 (W.D. Tex. Apr. 22, 2024)11

*Amarin Pharma, Inc. v. Hikma Pharms. USA Inc.*,
   No. 20-1630-RGA-JLH, 2021 WL 3363496 (D. Del. Aug. 3, 2021)...................12

*Cozy Comfort Co. LLC v. Parties Identified on Schedule A*,
   No. 23-cv-16563, 2024 WL 2722625 (N.D. Ill., May 28, 2024)...........................9

*Digitech Image Techs., LLC v. Agfaphoto Holding GmbH*,
   No. 8:12-cv-1153-ODW, 2012 WL 4513805 (C.D. Cal. Oct. 1, 2012).................5

*In re EMC Corp.*,
   677 F.3d 1351 (Fed. Cir. 2012) ................................................................. 4, 5, 12

*MGT Gaming Inc. v. WMS Gaming, Inc.*,
   978 F. Supp. 2d 647 (S.D. Miss. 2013)................................................................5

*NFC Tech., LLC v. HTC America*,
   No. 2:13-cv-01058-JRG, 2014 WL 3834959 (E.D. Tex. Aug. 1, 2014)..............10

*Novartis Vaccines & Diagnostics, Inc. v. MedImmune, LLC*,
   No. 11-084-SLR, 2012 WL 3150524 (D. Del. Aug. 2, 2012)..............................11

*Omega Patents, LLC v. Skypatrol, LLC*,
   No. 1:11-cv-24201-KMM, 2012 WL 2339320 (S.D. Fla. June 19, 2012) ..........11

*Ravgen, Inc, v. Quest Diagnostics Inc.*,
   No. 2:21-cv-09011-RGK-GJS, 2022 WL 2047614 (C.D. Cal. Apr. 27, 2022)3, 11

*SRI Int'l., Inc. v. Internet Sec. Sys., Inc.*,
   No. Civ. 04-1199-SLR, 2005 WL 851126 (D. Del. Apr.13, 2005)......................16

*U.S. Ethernet Innovations, LLC v. Samsung Elecs. Co., Ltd.*,
    No. 6:12-cv-398-MHS-JDL, 2013 WL 12224135 (E.D. Tex. Feb. 6, 2013).......10

*Whatru Holding LLC v. Bouncing Angels Inc.*,
    No. CV 14-05187, 2014 WL 12629952 (C.D. Cal. Sept. 18, 2014)....................11

**Statutes**

35 U.S.C. § 299 ....................................................................................... passim

**Rules**

Fed. R. Civ. P. 26(f).................................................................................15

## I.     INTRODUCTION

While Plaintiff Koninklijke Philips N.V. ("Philips") does not oppose having the trial against Electronics Inc. ("Eagle") as a separate later trial from the upcoming trials against Quectel Wireless Solutions Co. Ltd. ("Quectel") in August and December 2026, which the Court has already ordered, Philips opposes Eagle's Motion to Sever ("Eagle's Motion"). (D.I. 233 (C.A. No. 20-1707-CFC ("1707 Case")), D.I. 248 (C.A. No. 20-1710-CFC ("1710 Case").

The Court has already indicated that the trial against Eagle will be separate from the trials against Quectel. *See* Ex. 2, Feb. 4, 2026 Oral Order; Ex. 1, Mar. 5, 2026 Hearing Tr., at 198:17-21, 208:25-209:1. The most efficient approach at this point would simply be for Philips and Eagle to enter into a discovery schedule concerning just Eagle and Philips, moving toward the separate trial against Eagle for a date in 2027, yet not severing the case. Eagle cannot identify any prejudice that would result from such a process. The separate trial with separate discovery schedule would eliminate any assertions of prejudice by Eagle.

Philips's claims against Eagle satisfy every requirement of 35 U.S.C. § 299, and severance would only create inefficiency without avoiding any real prejudice. Philips does not seek to join Eagle merely because it is accused of infringing the same patents as Quectel; rather, Philips alleges (and Eagle's own materials confirm) that Eagle's accused modules correspond to Quectel's modules, use

1

Quectel's source code, software, and manufacturing know-how, and arise from a direct licensing and onshoring relationship between the two companies. Those allegations establish that the accused products are the same relevant to infringement, that the claims arise from the same series of transactions or occurrences, and that common factual issues will substantially overlap. Because joinder is proper and judicial economy strongly favors keeping these overlapping claims together, Eagle's Motion should be denied.

## II.    STATEMENT OF FACTS AND STAGE OF PROCEEDINGS

On October 14, 2025, Philips filed a Motion for Leave to Amend its Complaint ("Motion to Amend") to, among other things, add Eagle as a co-defendant to Quectel. D.I. 54[1]. The Motion to Amend was prompted by the discovery that Quectel had partnered with the newly created Eagle to onshore production of its cellular communication modules to the United States. D.I. 54 at 9 (citing Exhibit E (D.I. 54-5), Exhibit G (D.I. 54-7) and Exhibit H (D.I. 54-8)). After briefing and a hearing, the Court granted Philips's Motions to Amend on March 5, 2026. Philips filed its Second Amended Complaint (D.I. 201 (1707 Case)) and its Third Amended Complaint (D.I. 218 (1710 Case)) on March 6, 2026.

---

[1] All case citations from this point forward will refer to citations in the 1707 Case, unless indicated otherwise.

## III.      LEGAL STANDARD

Under the America Invents Act, an infringer may be properly joined in one action if:

1. any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process; and

2. questions of fact common to all defendants or counterclaim defendants will arise in the action.

35 U.S.C. § 299(a).

While § 299 may impose a more stringent test than the joinder standard under Rule 20, Eagle overstates the stringency of this standard. Section 299 does not create a quasi-Rule 9(b) pleading regime nor does it require Philips to prove joinder through detailed evidentiary showings at the pleading stage. What makes § 299 more restrictive than Rule 20 is not any requirement of particularized pleading, but rather that joinder cannot rest "solely on allegations that [Defendants] each have infringed the patent or patents in suit." 35 U.S.C. § 299(b); *see also Ravgen, Inc, v. Quest Diagnostics Inc.*, No. 2:21-cv-09011-RGK-GJS, 2022 WL 2047614, at *1 (C.D. Cal. Apr. 27, 2022).

Thus, the relevant question is whether Philips has alleged facts showing that its claims against Eagle and Quectel arise from the same transaction, occurrence, or series of transactions or occurrences relating to the same accused product or

process, and that common questions of fact will arise. *See* 35 U.S.C. § 299(a). That is a substantive joinder inquiry and not a demand for Rule 9(b)-style particularity.

Eagle's repeated invocation of a supposed "heightened joinder standard" improperly conflates these distinct concepts. Section 299 prevents joinder of unrelated defendants accused ***only*** of infringing the same patents. But where, as here, the complaint alleges a concrete relationship among the accused products and the Defendants' conduct, § 299 is satisfied.

## IV.     ARGUMENT

### A.     Eagle Is a Proper Defendant in this Case Under 35 U.S.C. § 299

Eagle is a proper defendant in this action under the test articulated in 35 U.S.C. § 299. Philips's claims against Eagle arise out of the same transaction, occurrence, or series of transactions or occurrences relating to infringement of the same products as Philips's claims against Quectel and there are common questions of fact regarding Eagle's and Quectel's infringement of the asserted patents. *See* 35 U.S.C. § 299(a).

#### 1.     The Infringing Aspects of Eagle's and Quectel's Accused Products Are the Same

Contrary to Eagle's assertions, § 299 does not require accused products to share the same product name, model number, regulatory certification, or manufacturer. *See* Eagle's Motion (D.I. 233) at 3–6. Courts applying § 299 have looked to *In re EMC Corp.*, 677 F.3d 1351 (Fed. Cir. 2012) for guidance. *See MGT*

4

*Gaming Inc. v. WMS Gaming, Inc.*, 978 F. Supp. 2d 647, 658 (S.D. Miss. 2013) ("Courts have … used *In re EMC* for guidance on how the Federal Circuit might address [Section 299]") (citing *Digitech Image Techs., LLC v. Agfaphoto Holding GmbH*, No. 8:12-cv-1153-ODW, 2012 WL 4513805, at *2 (C.D. Cal. Oct. 1, 2012)). There, the Federal Circuit instructed that "[j]oinder of independent defendants is only appropriate where the accused products or processes are the same in **respects relevant to the patent**." *EMC Corp.*, 677 F.3d at 1359 (emphasis added).

When applying that approach here, it is clear that Eagle's and Quectel's Accused Products are the same. Philips has alleged, and Eagle's own materials confirm, that Eagle's accused products correspond directly to Quectel's accused products and are the same in all material respects relevant to infringement. Eagle has an agreement and relationship with Quectel whereby it uses Quectel's source code and manufacturing technology to manufacture IoT modules that can be interchanged with specific Quectel modules. D.I. 201 (1707 Case), ¶ 36; D.I. 218 (1710 Case), ¶ 63; *see also* D.I. 54 (1707 Case) at 4; *id.* at Ex. E. They are manufactured using the same processes (D.I. 201 (1707 Case), ¶ 36; D.I. 218 (1710 Case), ¶ 63), with each Eagle product containing the same underlying chipset as contained in the corresponding Quectel product that performs the same functions (D.I. 201 (1707 Case), ¶ 37; D.I. 218 (1710 Case), ¶ 64). They perform the same

5

functions. D.I. 201 (1707 Case), ¶¶ 36–37, 86–93; D.I. 218 (1710 Case), ¶¶ 64, 90–94.  Philips's complaints even refer to Eagle's modules as "Eagle's Quectel copycat modules," for example.  D.I. 201 (1707 Case), ¶¶ 82, 109, 135, 152; D.I. 218 (1710 Case), ¶¶ 86, 121 (same)). These are precisely the kind of shared features that matter for joinder.

Eagle's own product information demonstrates that its assertion that its accused products are "***completely different***" than Quectel's products is demonstrably false. Eagle's Motion (D.I. 233) at 3 (emphasis in original). Eagle specifically advertises its products as ████████████████████ and, thus, the products can be used interchangeably:



██████████████████████████████████████████████████████

█████████████████████████████████████

Even third parties acknowledge that Eagle's modules are "[d]rop-in replacement[s]" for Quetel modules, such as Eagle's I4915Q for Quectel's EG915Q. *See* D.I. 63, Ex. J (https://techship.com/product/eagle-i4915-qaflg-n03-sgnsa-lte-cat-1-bis-lga/?variant=001).

██████████████████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████████████████

As alleged in the complaints, publicly available information likewise shows that Eagle and Quectel share a close relationship:

7

> Eagle is Quectel's ***"onshoring" "partner"***. Companies in the U.S that do not want to buy IoT modules from a Chinese company ***can buy them from Eagle, which manufactures the IoT modules in Ohio ….***

D.I. 201 (1707 Case), ¶ 30; D.I. 218 (1710 Case), ¶ 52.

> … ***Eagle provides onshored products to customers that desire onshored products, and Quectel provides products if onshoring is not necessary for the customer.***

D.I. 201 (1707 Case), ¶ 31; D.I. 218 (1710 Case), ¶ 53.

> ***Eagle uses Quectel's source code and software and manufacturing knowledge to manufacture modules corresponding to Quectel modules, and equally infringing. Eagle recently licensed "tech and source code" from Quectel.***

D.I. 201 (1707 Case), ¶ 36; D.I. 218 (1710 Case), ¶ 63.

Furthermore, Eagle employees were trained by Quectel employees. D.I. 54 (1707 Case), Ex. E. And, public statements confirm that, "[b]acked by a licensing agreement with Quectel," Eagle would "leverage Quectel's cellular IoT module reference designs and manufacturing technology, generating license revenue for Quectel." D.I. 54, Ex. H; *see also* D.I. 201, ¶ 36.

Eagle does not dispute that its accused products use the same Qualcomm chips as Quectel's accused products. *See, e.g.*, Eagle's Motion at 5 ("Eagle and Quectel both use widely available and widely used chipsets supplied by a common manufacturer."). Eagle does not dispute that it uses Quectel's source code.

All the above allegations and facts demonstrate that the Eagle and Quectel accused products share the same relevant software, source code, design lineage,

8

manufacturing know-how, component architecture, and accused functionality. Under § 299, that is more than sufficient.

The differences that Eagle highlights—such as different product names, separate FCC certifications, or Eagle's domestic manufacturing—have no impact on any of this analysis. Those distinctions say nothing about whether the products are the same in the respects relevant to infringement. If Eagle's products are Quectel-corresponding modules built using Quectel source code, software, reference designs, and manufacturing know-how, then different branding or certification paperwork does not render them different accused products for purposes of § 299.

Eagle's citation to *Cozy Comfort Co. LLC v. Parties Identified on Schedule A*, No. 23-cv-16563, 2024 WL 2722625 (N.D. Ill., May 28, 2024), is insufficient to overcome the similarities between the accused products. *See* Eagle's Motion (D.I. 233) at 4. In *Cozy Comfort*, the plaintiff only offered conclusory allegations that the accused products "bear similarities and indicia of being related to one another, suggesting that the [products] were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated." 2024 WL 2722625, at *9. The court found those allegations inadequate, particularly where the accused designs "vary significantly." *Id.* at *4, 9. But here, Philips's Complaint has far more than "conclusory allegations" and it does not rely on bare

9

assertions of similarity.  Philips alleges, and Eagle's own documents corroborate, interchangeability, shared source code and software, licensing of Quectel's manufacturing technology, and a coordinated technical relationship between the companies.

In similar cases, and in cases with much less coordination between defendants than here, courts have found that joinder was permissible.  In *NFC Tech., LLC v. HTC America*, the court held that diverse products using identical component parts (just as Eagle uses identical component parts as Quectel) met the joinder standard. No. 2:13-cv-01058-JRG, 2014 WL 3834959, at *2 (E.D. Tex. Aug. 1, 2014); *see also U.S. Ethernet Innovations, LLC v. Samsung Elecs. Co., Ltd.*, No. 6:12-cv-398-MHS-JDL, 2013 WL 12224135, at *2 (E.D. Tex. Feb. 6, 2013), *report and recommendation adopted*, No. 6:12-cv-398-MHS-JDL, 2013 WL 12224134 (E.D. Tex. Mar. 20, 2013) (finding that joinder was proper because the accused products of second defendant functionally integrate the same accused component).

Other courts have also found the "same accused product or process" requirement satisfied where defendant's products shared a common technical origin, development process, or coordinated production. In *Sitepro, Inc. v. WaterBridge Res., LLC*, the court found that where defendants allegedly used plaintiff's trade secrets to create the accused products, the products were

10

sufficiently the same and joinder was proper. No. 6:23-cv-00115-ADA-DTG, 2024 WL 1724252, at *4 (W.D. Tex. Apr. 22, 2024). In *Ravgen*, joinder was proper where defendants worked "in concert … to process and develop" the accused product. 2022 WL 2047614 at *2. Similarly, in *Novartis Vaccines & Diagnostics, Inc. v. MedImmune, LLC*, the court found that joinder was proper where there was an "overlap in the development and manufacture of the product" for defendants' separate products. No. 11-084-SLR, 2012 WL 3150524, at *3 (D. Del. Aug. 2, 2012).

Courts have likewise permitted joinder where the relationship between defendants and their accused products was less substantial than it is here. In *Omega Patents, LLC v. Skypatrol, LLC*, the court permitted joinder where one defendant manufactured an accused product and the plaintiff asserted the other defendant reconfigured, modified, and rebranded the product for distribution under its own name. No. 1:11-cv-24201-KMM, 2012 WL 2339320, at *2 (S.D. Fla. June 19, 2012). Similarly, in *Whatru Holding LLC v. Bouncing Angels Inc.*, the court held that plaintiff's allegation that both defendants had the same address was sufficient for joinder, with the court finding that defendants failed to prove futility of amendment where they only made a "bare assertion" that they "act independently."  No. CV 14-05187, 2014 WL 12629952, at *5 (C.D. Cal. Sept. 18, 2014).

11

The facts here show far more than mere similarity. They demonstrate that Eagle and Quectel are selling the same accused products that were originally designed by Quectel using the manufacturing know-how supplied by Quectel. Because the accused products are the same in all respects relevant to infringement, § 299 is satisfied.

### 2.    Eagle and Quectel's Infringement Arises from the Same Transaction and/or Occurrence

Again, Eagle reads § 299 too narrowly when it argues that Philips's claims against Eagle do not arise out of the same transaction, occurrence, or series of transactions or occurrences as its claims against Quectel. The Federal Circuit has explained that this test merely requires a "logical relationship" between the claims and that the "test is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant." *EMC Corp.*, 677 F.3d at 1357–58. Courts should also consider "whether the alleged acts of infringement occurred during the same time period, the existence of some relationship among the defendants, the use of identically sourced components, licensing or technology agreements between the defendants, overlap of the products' or processes' development and manufacture, and whether the case involves a claim for lost profits." *Id.* at 1359–60; *see also Amarin Pharma, Inc. v. Hikma Pharms. USA Inc.*, No. 20-1630-RGA-JLH, 2021 WL 3363496, at *2 (D. Del. Aug. 3, 2021) (finding the same transaction/occurrence test was satisfied when defendants were

12

alleged to induce the same act of direct infringement but had different inducing conduct).

Those considerations favor joinder here. As noted above, Philips has alleged substantial overlap between Eagle's and Quectel's accused products, including shared source code and software, shared manufacturing technology and know-how, corresponding and interchangeable module designs, and the use of the same Qualcomm chipsets. Philips has also alleged a direct commercial and technical relationship between the parties: Eagle acts as Quectel's "onshoring partner" and operates pursuant to a licensing arrangement that gives it access to Quectel's technology, reference designs, source code, and manufacturing know-how.

Eagle's emphasis on separate customers or distinct sales channels does not change the analysis. Section 299 does not require that defendants sell through the same stream of commerce or to the same customers, and Quectel fails to cite a case for that incorrect proposition. Section 299 requires a sufficient relationship between the claims. Here, the claims against Eagle and Quectel arise from overlapping facts concerning the design, development, manufacture, software, and operation of corresponding accused modules. Because proof of those facts will substantially overlap as to both defendants, Philips's claims arise out of the same transaction, occurrence, or series of transactions or occurrences within the meaning of § 299.

13

### 3.    There are Common Questions of Fact Regarding Eagle's and Quectel's Accused Products

Tellingly, Eagle makes no attempt to argue there is no common question of fact regarding Eagle's and Quectel's infringement. Rather, the evidence amply demonstrates that resolution of Philips's infringement claims against each party will overlap significantly. Indeed, as Eagle is licensing technology and manufacturing processes from Quectel, analysis of Quectel's infringement is necessarily coextensive of any analysis of Eagle's infringement.

Thus, for the reasons above, joinder of Eagle satisfies every element of the § 299 test and there is no statutory bar to these claims.

### B.    Eagle Will Not Be Prejudiced as a Defendant in this Case

Eagle claims prejudice, but its argument fails. The only argument Eagle offers in support of the alleged prejudice is that fact discovery has closed and claim construction has occurred. D.I. 233 at 8. Eagle's assertion ignores both judicial economy and Philips's efforts to address any case-management concerns. As discussed at the hearing on the Motion to Amend and in the Court's prior order, the Court never intended to consolidate the trials for Eagle and Quectel. Ex. 1, Mar. 5, 2026 Hearing Tr. at 198:17-21, 208:25-209:1; Ex. 2, Feb. 4, 2026 Oral Order ("The Court is inclined to grant the motion by, assuming it did, the Court would not compel Eagle to participate in the upcoming trials[.]"). There will be a separate trial against Eagle. Consistent with that understanding, Philips has already

14

proposed a separate schedule to Eagle that would permit limited discovery by both parties to go forward – which the Court would presumably agree to, having granted the motion to add Eagle to the case just a day before the close of fact discovery – and a trial in June 2027. Eagle has not accepted that proposal, and to date has not even responded to it, even though the Advisory Committee Notes to Rule 26(f) of the Federal Rules of Civil Procedure explicitly suggests that although not required, "[i]f more parties are joined or appear after the Rule 26(f) initial meeting, an additional meeting may be desirable." Fed. R. Civ. P. 26(f), Advisory Committee Notes, 1993 Amendment. Under these circumstances, Eagle cannot show that joinder itself is prejudicial.

Instead, since Philips's claims against Eagle and Quectel involve the same products and have many common questions of fact, severing the claims against Eagle would be a waste of judicial resources. That is especially true because Philips's claims are not limited to parallel infringement allegations against separate defendants. Philips also alleges that Quectel induced Eagle's infringement. *See, e.g.*, D.I. 201 (1707 Case), ¶¶82-83, 109-10, 135-36, 152-53; D.I. 218 (1710 Case), ¶¶86-87, 121-22. Severing Eagle would therefore prejudice Philips by divorcing discovery relevant to that inducement theory that Philips has already been pursuing in this case. Further, were the claims severed, Philips may be faced with a situation where the same facts and legal situation result in disparate outcomes. The

15

Court and parties would benefit from resolving overlapping factual (e.g., the license between Quectel and Eagle) or legal issues (e.g. claim construction) together. *See SRI Int'l., Inc. v. Internet Sec. Sys., Inc.*, No. Civ. 04-1199-SLR, 2005 WL 851126, at *4 (D. Del. Apr.13, 2005) (permitting joinder to avoid duplicitous claim construction and validity issues).

Finally, Eagle provides no case to support its assertion that a separate case against Eagle was the "proper vehicle" for these claims. Eagle's Motion (D.I. 233) at 9. The same argument was presented by Quectel's attorneys and rejected at the hearing on the Motion to Amend. Ex. 1, Mar. 5, 2026 Hearing Tr. at 207:11-208:11. Just because Eagle prefers to have its claims severed does not make a separate case "proper."

Since Eagle cannot identify any prejudice, and the other discretionary factors weigh in favor of joining the claims, there is no discretionary bar to these claims. Moreover, in short, the most judicially efficient and procedurally correct manner to proceed would be for the Court to deny Eagle's motion to sever, set a specific date for a separate trial against Eagle in 2027, and allow discovery between Eagle and Philips to proceed toward that 2027 trial. Doing so would eliminate any possible prejudice Eagle could suffer, while conforming with the joinder rules, for the reasons set forth above.

16

## V.    CONCLUSION

For the foregoing reasons, Philips respectfully requests that the Court deny

Eagle's Motion.

Of Counsel:

Eley O. Thompson (*pro hac vice*)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
(312) 832-4359
ethompson@foley.com

Kevin M. Littman
Lucas I. Silva
Thomas M. Relyea
FOLEY & LARDNER LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199-7610
(617) 342-4000
klittman@foley.com
lsilva@foley.com
tom.relyea@foley.com

Alexis K. Juergens (*pro hac vice*)
Adam R. Aquino (*pro hac vice*)
FOLEY & LARDNER LLP
95 S State Street
Suite 2500
Salt Lake City, UT
84111
(801) 401-8900
ajuergens@foley.com
aaquino@foley.com

Sarah E. Rieger (*pro hac vice*)
FOLEY & LARDNER LLP
777 E Wisconsin Ave
Milwaukee, WI 53202
(414) 271-2400
srieger@foley.com

Dated May 1, 2026

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

/s/ Adam W. Poff
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com

*Attorneys for Plaintiff Koninklijke Philips N.V*

18

## WORD COUNT CERTIFICATION

Pursuant to the Court's Standing Order Regarding Briefing in All Cases (Nov. 10, 2022) and Local Rule 7.1.3(a)(4), the undersigned counsel hereby certifies that the foregoing document contains 3456 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the foregoing document. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Adam W. Poff*
Adam W. Poff (No. 3990)

19

**CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2026, I caused the foregoing document to be served via electronic mail upon the following counsel:

| | |
|---|---|
| Warren K. Mabey, Jr.<br>Martina Tyreus Hufnal<br>FISH & RICHARDSON PC<br>222 Delaware Avenue, 17th Floor<br>Wilmington, DE 19801<br>mabey@fr.com<br>hufnal@fr.com | Cortlan S. Hitch<br>Kenneth L. Dorsney<br>MORRIS JAMES LLP<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>chitch@morrisjames.com<br>kdorsney@morrisjames.com |
| Thomas H. Reger II<br>FISH & RICHARDSON P.C.<br>1717 Main Street, Suite 5000<br>Dallas, TX 75201<br>reger@fr.com | Kirk T. Bradley<br>Lauren N. Griffin<br>ALSTON & BIRD LLP<br>Vantage South End<br>1120 South Tryon Street, Suite 300<br>Charlotte, NC 28203 |
| Elizabeth G.H. Ranks<br>FISH & RICHARDSON P.C.<br>One Marina Park Drive, Suite 1700<br>Boston, MA 02210<br>ranks@fr.com | lauren.griffin@alston.com<br>kirk.bradley@alston.com<br><br>John C. Phillips, Jr.<br>Megan C. Haney<br>David A. Bilson |
| Lawrence R. Jarvis<br>Katherine Reardon<br>Peter Hong<br>FISH & RICHARDSON P.C.<br>1180 Peachtree Street NE, 21st floor<br>Atlanta, GA 30309<br>jarvis@fr.com<br>reardon@fr.com<br>hong@fr.com | PHILLIPS, MCLAUGHLIN<br>& HALL, P.A.<br>1200 North Broom Street<br>Wilmington, DE 19806<br>jcp@pmhdelaw.com<br>mch@pmhdelaw.com<br>dab@pmhdelaw.com |
| Mohammad Reza Kameli<br>FISH & RICHARDSON P.C.<br>7 Times Square, 20th Floor | J. Aron Carnahan<br>HUSCH BLACKWELL LLP<br>120 South Riverside Plaza, Suite 2200<br>Chicago, IL 60606<br>aron.carnahan@huschblackwell.com |

New York, NY 10036
kameli@fr.com

Chad S.C. Stover
BARNES & THORNBURG LLP
222 Delaware Avenue, Suite 1200
Wilmington, DE 19801
chad.stover@btlaw.com

Eric J. Beste
655 W. Broadway, Suite 1300
San Diego, CA 92101
eric.beste@btlaw.com

Craig D. Leavell
One N. Wacker Drive, Suite 4400
Chicago, IL 60606
craig.leavell@btlaw.com

Glennon P. Fogarty
HUSCH BLACKWELL LLP
8001 Forsyth Boulevard, Suite 1500
St. Louis, MO 63105
glennon.fogarty@huschblackwell.com

Karen E. Keller
Virginia K. Lynch
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
kkeller@shawkeller.com
glynch@shawkeller.com

YOUNG CONAWAY STARGATT
   & TAYLOR, LLP

/s/ Adam W. Poff
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Parks L. Kingery (No. 7416)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com
pkingery@ycst.com

*Attorneys for Plaintiff*

2

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

KONINKLIJKE PHILIPS N.V.,          )
                                   )
          Plaintiff,               )
                                   )  C.A. No. 20-1707-CFC
   v.                              )
                                   )
QUECTEL WIRELESS SOLUTIONS         )
CO. LTD.,                          )
                                   )
          Defendant.               )
                                   )
KONINKLIJKE PHILIPS N.V.,          )
                                   )
          Plaintiff,               )
                                   )  C.A. No. 20-1710-CFC
   v.                              )
                                   )
QUECTEL WIRELESS SOLUTIONS         )
CO. LTD., CALAMP CORP.,            )
XIRGO TECHNOLOGIES, LLC,           )
LAIRD CONNECTIVITY, INC.,          )
                                   )
          Defendants.              )

Thursday, March 5, 2026
10:09 a.m.
Discovery Conference

844 King Street
Wilmington, Delaware

BEFORE: THE HONORABLE COLM F. CONNOLLY
United States District Court Judge

APPEARANCES:

                    YOUNG CONAWAY STARGATT & TAYLOR
                    BY:  ADAM W. POFF, ESQ.
                    BY:  ALEXIS STOMBAUGH, ESQ.


                    -and-


                    FOLEY & LARDNER LLP
                    BY:  ELEY O. THOMPSON, ESQ.
                    BY:  LUCAS L. SILVA, ESQ.



                         Counsel for the Plaintiff




                    FISH & RICHARDSON, P.C.
                    BY:  WARREN K. MABEY, JR, ESQ.
                    BY:  THOMAS H. REGER II, ESQ.
                    BY:  ELIZABETH G.H. RANKS, ESQ.


                         Counsel for the Defendants




                         - - - - - - - - - -



                    P R O C E E D I N G S


     (Proceedings commenced in the courtroom beginning at 10:09 a.m.)

               **THE COURT:**  Good morning.  Please be seated.
All right.  Mr. Mabey, I guess.  Oh, no.  You want to

address at length, but I wanted to give you a sense of how connected they are because I'm not sure it's absolutely clear from the exhibits that we attached.

THE COURT: Really, what you're pushing for here is because you want one trial. That's what you're doing.

MR. THOMPSON: No, no. No, no. We provided our position. That's not true, Your Honor.

THE COURT: Okay. Well, then what's the point of the argument?

In other words, I'm going to grant the motion, let you add Eagle. You won. So what else? What else do you need to talk about?

MR. THOMPSON: This goes to -- in that situation, if that's where we are, then I don't think that I really need to speak to it.

We said in our submission, I will just note, 171, we expressed Philips's position, which is that we believe that they should be added to the case, but -- and that they should join those trials. But if they don't, they can have a trial in June 2027. That was --

THE COURT: Right. Keep in mind, I mean, Eagle is not prejudiced by this. Eagle could come in, and Eagle could argue, I need to be dismissed, at least I should be severed. But, you know, I mean --

MR. REGER:  Your Honor, as a practical matter, Eagle has not been a part of this case at all. I do not represent Eagle.  I signed no engagement letter with Eagle.

THE COURT:  That's fine.

MR. REGER:  So I just want to be -- they are two very different companies.

THE COURT:  Gotcha.

MR. REGER:  They are not legally joined.

THE COURT:  Of course not.  Agreed.

MR. REGER:  So, Your Honor, you can deny their motion for leave to amend.  And that's the easiest offramp and then they can file a new case tomorrow, then everyone can follow the normal process, they can do a normal --

THE COURT:  No, no.  Here's why.  Because when you say "follow the normal process," if they did that, then typically what I would do is, because they would check "related case," right?

MR. REGER:  Sure.

THE COURT:  Then I'd bring the parties in --

MR. REGER:  Oh, I'm sorry.  Would Eagle check "related case"?

THE COURT:  No, but Philips is going to check "related case," right?

MR. REGER: I don't know because they're different parties.

THE COURT: Actually, you should know. You practice in this court a lot. We have a local rule. They better check related case, right? Mr. Poff will lose his license if they don't check "related case."

So they're checking "related case." And then what do I do typically? Right? I tell everybody get together, we're going to have a joint hearing and decide how to consolidate and, at least through discovery, these cases.

MR. REGER: That's my exact point, Your Honor, is the issue with that is you've now introduced -- if you allow them -- if you allow them to amend their complaint then you're already adding additional briefing and burden for the Court. If they're going to have to sever or move to dismiss, that would not necessarily be at issue if they had a separate case.

They have not even answered the complaint and fact discovery is disclosing. We're doing our final motions to compel. Claim construction has happened. There is nothing -- you cannot -- you can, obviously -- but consolidating them for purposes of pretrial fact discovery makes no sense. Consolidating them for trial

Your Honor said you're already not going to do.  So there's nothing to be accomplished by actually adding them to our case and then severing them.

The proper vehicle is deny their motion for leave to amend and they can file tomorrow.

THE COURT:  Okay.  Want to address the prejudice issue about dismissal of the other claims or the patents, rather?

MR. REGER:  Your Honor, just at the end of the day, the prejudice issue is we've already beaten these patents once at the ITC.  Philips raised them again in their original complaint and in their amended complaint.  But then when they served infringement contentions, they failed to include infringement contentions for those two patents.

At the end of the day, they should have dropped these patents a long time ago and we should be done with these patents.  They've now had two bites at the apple.

THE COURT:  So if they dropped them a long time ago, how would it be any different in terms of the situation I'm in?

MR. REGER:  Because they can sue us on these tomorrow, the way this is set up.

THE COURT:  If they had dropped them a long

**THE COURT:**  Oh, Burke has that one?

Okay.

**MR. THOMPSON:**  Obviously, I'm sure you appreciate this without me even saying it, we are working with them.  There are still disputes that the parties have been working on for quite some time.  Obviously, trying to resolve them without taking up the Court's time.  And I'm not -- I don't think it's appropriate right now to bring up any of those.

**THE COURT:**  No, it's not.

**MR. THOMPSON:**  Other than just to let you know we're working on it.

**THE COURT:**  Okay.  Then anything else?

**MR. THOMPSON:**  No, Your Honor.  Thank you.

**THE COURT:**  Anything from the other side?

**MR. REGER:**  No, Your Honor.

**THE COURT:**  Okay.  Thank you very much.

(The proceedings concluded at 3:27 p.m.)


CERTIFICATE OF COURT REPORTER


I hereby certify that the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.

/s/ Bonnie R. Archer
  Bonnie R. Archer, RPR, FCRR
  Official Court Reporter
  U.S. District Court

# EXHIBIT 2

ORAL ORDER: The Court will hear oral argument on Philips' motion for leave to amend its complaints (No. 20-1707, D.I. 54; No. 20-1710, D.I. 78) at next week's claim construction hearing. The Court is inclined to grant the motion but, assuming it did, the Court would not compel Eagle to participate in the upcoming trials, which the Court does not intend to postpone or reschedule. In other words, Philips should expect that if its motion is granted, unless Eagle consents to participate in the two currently scheduled trials, Philips will try its claims against Eagle in a separate trial or trials to be conducted after the December trial in the 1707 action. Ordered by Judge Colm F. Connolly on 2/4/2026. Associated Cases: 1:20-cv-01707-CFC-CJB, 1:20-cv-01710-CFC-CJB (mws) (Entered: 02/04/2026)

As of February 5, 2026, PACER did not contain a publicly available document associated with this docket entry. The text of the docket entry is shown above.

*Koninklijke Philips NV v. Quectel Wireless Solutions Co. Ltd.*
1-20-cv-01707 (DDE), 2/4/2026, docket entry