**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br><br>vs.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD. and EAGLE ELECTRONICS INC.,<br><br>Defendants. | C.A. No. 20-cv-1707-CFC<br><br>JURY TRIAL DEMANDED |

**PHILIPS'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT QUECTEL WIRELESS SOLUTIONS CO. LTD.'S RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS**

Of Counsel:

Eley O. Thompson (*pro hac vice*)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
(312) 832-4359
ethompson@foley.com

Kevin M. Littman
Lucas I. Silva
Thomas M. Relyea
FOLEY & LARDNER LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199-7610
(617) 342-4000
klittman@foley.com
lsilva@foley.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com

*Attorneys for Plaintiff Koninklijke Philips N.V.*

tom.relyea@foley.com

Alexis K. Juergens (*pro hac vice*)
Adam R. Aquino (*pro hac vice*)
FOLEY & LARDNER LLP
95 S State Street
Suite 2500
Salt Lake City, UT
84111
(801) 401-8900
ajuergens@foley.com
aaquino@foley.com

Sarah E. Rieger (*pro hac vice*)
FOLEY & LARDNER LLP
777 E Wisconsin Ave
Milwaukee, WI 53202
(414) 271-2400
srieger@foley.com

Dated August 7, 2026

# TABLE OF CONTENTS


I. Nature and Stage of the Proceedings ....................................................1

II. Summary of Argument ....................................................1

III. Statement of Facts ....................................................1

IV. Legal Standard ....................................................4

V. Argument ....................................................5

A. Claim 13 Is Patent-Eligible Under *Alice* ....................................................5

1. *Alice* Step One: Claim 13 Is Directed to a Technological Improvement, Not an Abstract Idea ....................................................5

a. Quectel's Arguments Oversimplify Claim 13 ....................................................5

b. Claim 13 is Not Directed to the Abstract Application of a Mathematical Equation ....................................................9

c. Claim 13 Is Comparable to Other Patent-Eligible Claims in Other Cases ....................................................14

d. Quectel's Cited Cases Are Inapposite ....................................................17

2. *Alice* Step Two: Claim 13 Includes an Inventive Concept....................................................19

VI. Conclusion ....................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018)........................................................ 5, 19

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014)........................................................ 4, 18

*Astrazeneca AB v. Dr. Reddy's Labs., Inc.*,
209 F. Supp. 3d 744 (D. Del. 2016)........................................................4

*BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016)........................................................21

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018)........................................................21

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
25 F.4th 976 (Fed. Cir. 2022) ........................................................16

*Capstan AG Sys. v. Raven Indus., Inc.*,
228 F. Supp. 3d 1235 (D. Kan. 2017)........................................................16

*CardioNet, LLC v. InfoBionic, Inc.*,
955 F.3d 1358 (Fed. Cir. 2020)........................................................16

*Cisco Systems, Inc. v. Uniloc 2017 LLC*,
813 F. App'x 495 (Fed. Cir. 2020) ........................................................ 18, 19

*Diamond v. Diehr*,
450 U.S. 175 (1981)........................................................ 7, 9, 14, 17

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)........................................................ *passim*

*Evolved Wireless, LLCv. Apple Inc.*,
221 F.Supp.3d 485, 490 (D. Del. 2016)........................................................ 9, 10

*GoTV Streaming, LLC v. Netflix, Inc.*,
166 F.4th 1053 (Fed. Cir. 2026) ....................20

*In re TLI Commc'ns LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016)....................4

*Intell. Ventures I LLC v. T-Mobile USA, Inc.*,
No. 13-1632-LPS, 2017 WL 3706495 (D. Del. Aug. 23, 2017) ....................17

*Koninklijke KPN N.V. v. Gemalto M2M GmbH,*
942 F.3d 1143 (Fed. Cir. 2019).................... 15, 16

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016).................... 6, 13, 19

*Ollnova Techs. Ltd. v. ecobee Techs. ULC*,
177 F.4th 1343 (Fed. Cir. 2026) .................... 15, 16

*Parker v. Flook*,
437 U.S. 584 (1978).................... 7, 17, 18

*Redwood Techs., LLC v. Netgear, Inc.*,
738 F. Supp. 3d 511 (D. Del. 2024)....................8, 9

*Thales Visionix, Inc.v. United States*,
850 F.3d 1343 (Fed. Cir. 2017).................... 14, 15

*Venetec Inter., Inc. v. Nexus Med., LLC*,
541 F. Supp. 2d 612 (D. Del. 2008)....................4

*WhitServe LLC v. Dropbox, Inc.*,
854 F. App'x 367 (Fed. Cir. 2021) .................... 18, 19

*XY, LLC v. Trans OvaGenetics, LC*,
968 F.3d 1323 (Fed. Cir. 2020)....................15

Plaintiff Koninklijke Philips N.V. ("Philips") opposes Defendant Quectel Wireless Solutions Co. Ltd.'s ("Quectel") Motion for Judgment on the Pleadings regarding the validity of claim 13 of U.S. Patent No. 8,195,216 ("the '216 Patent") (D.I. 288, "Motion"), which re-asserts for the operative Second Amended Complaint the same challenge Quectel previously raised against the First Amended Complaint.

## I. NATURE AND STAGE OF THE PROCEEDINGS

Philips filed its original complaint on December 17, 2020, its First Amended Complaint on October 3, 2025, and its Second Amended Complaint on March 6, 2026. D.I. 1; D.I. 45; D.I. 202. Fact discovery has closed, and trial is scheduled for December 2026. D.I. 36, Ex. A; *see also* D.I. 289.

## II. SUMMARY OF ARGUMENT

1. *Alice* Step One: Claim 13 is not directed to the abstract idea of a mathematical equation; it describes a specific technological improvement in radio communications systems.

2. *Alice* Step Two: Claim 13 includes an inventive concept that was not well-understood, routine, or conventional at the time of invention and does not preempt any field. Alternatively, there are unresolved factual disputes concerning Step Two.

## III. STATEMENT OF FACTS

Philips is a founding member of the European Telecommunications Standards Institute and has been an active participant in the 3rd Generation Partnership Project.

D.I. 202 at ¶12, ¶15. Philips has contributed significantly to the development of a worldwide blueprint (standard) for cellular communications, including 3G/UMTS and 4G/LTE. *Id*. Philips has invested heavily in research and development, resulting in innovations that are fundamental to the operation of cellular communication systems. *Id.* at ¶13, ¶18.

Claim 13 of the '216 Patent is one such innovation. The invention offers a concrete technological solution to problems with prior radio communications technology and specifically improve the standard for power control of signals transmitted between a primary base station ("BS") and a secondary mobile station ("MS").

The '216 Patent teaches there are "two basic types of communication required" in a radio communication system – user traffic (i.e. data) and control information, which enables the exchange of user traffic. '216 Patent at 1:17-23. One function of control information is to enable power control, which "is required so that the [base station] receives signals from different [mobile stations] at approximately the same power level" and "so that the [mobile station] receives signals from the [base station] with a low error rate while minimizing transmission power, to reduce interference with other cells and radio systems." *Id.* at 1:25-32.

Claim 13 of the '216 Patent is directed to an improvement to how such critical power control functions are performed. Prior art power control systems for cellular

communication led to problems at the start of a signal transmission or after a transmission interruption, due to the amount of time it took for signals to converge at the correct power level. *Id.* at 1:46-53. Particularly, "[u]ntil such convergence is achieved data transmissions are likely to be received in a corrupted state if their power level is too low, or to generate extra interference if their power level is too high." *Id.* at 1:48-52. The'216 Patent's inventions address these problems through an improvement to power control that achieves rapid convergence of signal powers at the start of a transmission or after an interruption in transmission without causing ripple effects to the cellular system that would create more problems than benefits. *Id.* at 1:55-67, Fig. 5. In particular, claim 13's use of an "offset" calculated using a weighted sum of power control commands to adjust initial transmission power after an interruption marked a significant departure from prior art approaches. A person of skill ("POSITA") would have recognized these teachings as specific improvements to radio communications technology, not the abstract, mathematical implementation of existing practices using a general purpose computer. D.I. 202 ¶¶75-78. The claim does not automate a practice previously carried out by humans; it is directed to a technical improvement in the highly technical field of power control of cellular communication systems.

## IV. LEGAL STANDARD

When deciding a Rule 12(c) motion, the court "must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party." *Astrazeneca AB v. Dr. Reddy's Labs., Inc.*, 209 F. Supp. 3d 744, 754 (D. Del. 2016). All facts and inferences must be drawn from the pleadings. *Venetec Inter., Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 617 (D. Del. 2008). "The motion can be granted only if no relief could be afforded under any set of facts that could be provided." *Astrazeneca*, 209 F. Supp. 3d at 754.

Patent eligibility under §101 is assessed under the two-step test articulated in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). At Step One, the court must determine whether the claim is directed to patent-ineligible subject matter (e.g., an abstract idea) rather than a technical advance. *Id.* However, the Federal Circuit has warned that "we must be careful to avoid oversimplifying the claims." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016). If the claim is so broad as to be directed to a patent-ineligible abstract idea, the court considers whether any elements of the claim, either individually or in combination, "transform the nature of the claim into a patent-eligible application," at Step Two. *Alice*, 573 U.S. at 217 (internal quotation omitted).

Under both steps, "there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).

# V. ARGUMENT

## A. Claim 13 Is Patent-Eligible Under *Alice*

The facts, when read (as they must be) in the light most favorable to Philips, demonstrate claim 13 is patent-eligible at both Step One and Step Two.

### 1. *Alice* Step One: Claim 13 Is Directed to a Technological Improvement, Not an Abstract Idea

#### a. Quectel's Arguments Oversimplify Claim 13

Claim 13 relates to an electronics-based invention involving application of a mathematical formula to improve the operation of a radio transmitter system for cellular communication and is not directed merely to "the abstract idea of adjusting power levels based on a mathematical equation," as Quectel asserts. D.I. 288 at 9-10. Quectel improperly oversimplifies claim 13.

When considering a computer-based invention under *Alice* Step One, the Court must consider whether the claim focuses "on the specific asserted improvement in computer capabilities… or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016). That a claimed invention relies on or involves modified electronics, a modified general-purpose

microprocessor, or mathematical formulae does not render a claim patent-ineligible where the invention itself improves functionality. *Id.* at 1338; *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016) ("We do not assume that [claims involving mathematical formulae] are directed to patent ineligible subject matter because 'all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'") (internal quotation omitted). Thus, the Court must be careful not to oversimplify the claimed invention or describe it at too high a level of abstraction. *See Enfish*, 822 F.3d at 1337-38 ("[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to §101 swallow the rule.").

Quectel's Motion improperly frames and applies the *Alice* analysis by oversimplifying claim 13 to mischaracterize it as encompassing only the broad, abstract idea of applying a previously known mathematical equation on a general purpose computer. D.I. 288 at 9-10. Indeed, Quectel's Motion explicitly (and improperly) asserts that that claim 13 is invalid merely because, by "recit[ing] calculating a weighted sum of power control commands using a mathematical equation," it "***involves*** an abstract idea." *Id.* (emphasis added). Claim 13's description of part of the operation in relation to a mathematical equation does not render it invalid. Under longstanding Supreme Court precedent, "a process is not

unpatentable simply because it contains a law of nature or a mathematical algorithm." *Diamond v. Diehr*, 450 U.S. 175, 187 (1981) (quoting *Parker v. Flook*, 437 U.S. 584, 590 (1978)). Quectel's arguments ignore this key precedent and should be rejected.

The flaws in Quectel's Motion do not stop there. Quectel also improperly bases its analysis on isolated, out-of-context elements rather than the claim as a whole. D.I. 288 at 11-14. This is also contrary to controlling law. It is the claim as a whole – not its general field of invention or its individual elements – that matter. *See Enfish*, 822 F.3d at 1335-36. When considered in its entirety, claim 13 is directed to technological improvements to power control in radio communication systems, which is patent-eligible.

For example, far from claiming a mathematical formula in the abstract, claim 13 describes in detail how the claimed power control circuitry works, including through a specific combination and arrangement of various radio communication system components:

- "a communication channel between the secondary station and a primary station, the channel including an uplink and a downlink control channel for transmission of control information, including power control commands, and a data channel for the transmission of data;"

- "power control means for adjusting the power of the uplink control and data channels in response to the downlink power control commands;"

- "means for setting an initial transmission power after an interruption in transmission to that before the interruption adjusted by an offset;"

- "means for determining the offset from a weighted sum of power control commands…;" and
- "in that means [for determining] are provided for quantizing the offset to an integer multiple of a minimum power control step size supported by the secondary station."

'216 Patent at claim 13. Such features provide important structure and demonstrate the claim is directed to technological improvements that increase the accuracy of signal transmissions while reducing interference in radio communication systems, not to an equation itself or the implementation of an equation on a general purpose computer.

Quectel attempts to hand-wave these elements away as irrelevant because they are "directed to the function itself" (D.I. 288 at 12), but Quectel fails to provide any meaningful supporting authority or analysis. Quectel includes a "*cf.*" citation to *Redwood Techs., LLC v. Netgear, Inc.*, 738 F. Supp. 3d 511, 524-26 (D. Del. 2024) (D.I. 288 at 12), but the functional language of the *Redwood* claims was not itself problematic; rather, the claims were patent-ineligible because they did not incorporate any technical explanation of ***how*** that functionality was achieved, i.e., they did not relate to improved electronics. *Redwood*, 738 F. Supp. 3d at 526. Conversely, claim 13 expressly discloses concrete components like a primary station, a secondary station, a communication channel, and a power controller, and further describes **<u>how</u>** those components interact to achieve innovative improvements to power control technology. '216 Patent at claim 13. This is

distinguishable from the vague, high-level claim in *Redwood* that merely suggested programming a general purpose computer in a manner previously practiced. *See* 738 F. Supp. 3d at 524-25.

Accordingly, Quectel's Motion improperly asks this Court to ignore claim elements, and describes what remains at such a high level of abstraction that it bears little resemblance to the actual claim. When properly analyzed as a whole, claim 13 is patent-eligible.

**b. Claim 13 is Not Directed to the Abstract Application of a Mathematical Equation**

Claim 13 as a whole cannot reasonably be understood to be directed merely to application of a mathematical equation. Rather, it is comparable to claims that have previously found to be patent-eligible under Step One.

For example, in *Evolved Wireless, LLC v. Apple Inc.*, the court denied a Rule 12(c) motion where the accused infringer argued—similar to Quectel—that the asserted claims were patent-ineligible because they were "directed to a mathematical algorithm for generating a code sequence." 221 F.Supp.3d 485, 490 (D. Del. 2016). However, "[a] claim containing a mathematical formula can satisfy the requirements of §101 if it 'implements or applies that formula in a structure or process which, when considered as a whole, is performing a function which the patent laws were designed to protect.'" *Id.* (quoting *Diehr*, 450 U.S. at 192). Thus, "[c]laims 'improv[ing] the functioning of [a] computer' or 'improving an existing

technological process' are patent-eligible even if they rely on a mathematical algorithm." *Id.* at 491 (quoting *Enfish*, 822 F.3d at 1336).

The *Evolved Wireless* claims met these criteria. The patents "describe[d] problems and solutions firmly rooted in technology used for wireless communications," including: (1) that prior art "telecommunication systems either had a higher level of interference or were only able to serve a limited number of mobile phones for a particular base station" due to a "limited" number of available code sequences; and (2) that "prior art systems used a preamble of fixed length, limiting flexibility under different cell sizes." *Id.* at 493-94. The patents then provided techniques for optimizing existing telecommunications infrastructure that remedied or alleviated the identified problems, as reflected in the claims. *Id.* Accordingly, the claims as a whole were "directed to technological improvements resolving specific problems in a wireless communications system" and "claim[ed] patent-eligible subject matter" even if they used mathematical algorithms and allegedly well-known components to do so. *Id.* at 494.

The same result should follow here. As in *Evolved Wireless*, the '216 Patent describes concrete problems with prior art telecommunications technology and techniques, specifically as it relates to novel power control circuitry, with the signals transmitted between a base station ("BS") and a mobile station ("MS"). *See* '216 Patent at 1:24-52. Power control of signals in two-way radio communication systems

"normally operate[] in a closed loop manner, whereby the MS determines the required changes in the power of transmissions from the BS and signals these changes to the BS, and vice versa." *Id.* at 1:33-37. However, prior art techniques for such power control loops faced certain technical problems:

> A problem with these known techniques is that[,] at the start of a transmission, or after the transmission is interrupted, the power control loops may take some time to converge satisfactorily. Until such convergence is achieved[,] data transmissions are likely to be received in a corrupted state if their power level is too low, or to general extra interference if their power level is too high.

*Id.* at 1:46-52; *see also id.* at 3:47-58. Moreover, prior art power control circuits did "not address the problem of obtaining rapid convergence of power control at the start of, or after an interruption in, a transmission." *Id.* at 2:51-53.

The '216 Patent identifies technology-based solutions to these problems based on a novel system that fundamentally changes how power control is carried out. For example:

> According to a first aspect of the present invention there is provided a radio communication system comprising a primary station and a plurality of secondary stations, the system having a communication channel between the primary station and a secondary station, the channel comprising an uplink and a downlink control channel for transmission of control information, including power control commands, and a data channel for the transmission of data, wherein power control means are provided for adjusting the power of the control and data channels in response to the power control commands and means are provided for setting the initial transmission power

> after a pause in transmission to that before the pause adjusted by an offset.

*Id.* at 1:55-67; *see also id.* at 3:12-; claim 13 (at 9:5-10:1).

When establishing the initial transmission power to be used after a pause in transmission, the patent explains the mobile unit should include power control that sets the power to what it was before the interruption with an adjustment to that power by offset "determined from a weighted sum of the power control commands applied before the pause in transmission" (*id.* at 2:39-45; *see also id.* at claim 13 (at 10:1-2)), in which case, "the offset should be quantized to an available power step size before it is applied" (*id.* at 2:39-46; *see also id.* at claim 13 (at 10:11-13)). This represents a fundamental departure from prior art methods for power control convergence, which relied only on "power control loops" that changed the power levels in very small increments and led to delays in converging at the correct power level. As Philips's Second Amended Complaint explains, a POSITA would have understood that, at the time of the invention, "radio communications systems had not addressed power control problems in the manner specified in… the '216 Patent, including,… the problem of improving power control at the resumption of a pause and determining the first value for the transmission power after a transmission gap…." D.I. 202, ¶77. Thus, a POSITA would have recognized the teachings and claims of the '216 Patent to represent specific improvements to radio

communications technology, including power control, not simply a mathematical implementation of pre-existing practices. *Id.*

It is in this technical context that the '216 Patent discloses the claimed mathematical equation. Notably, Quectel does not contend using a weighted sum of power control commands to adjust the power after an interruption was conventional. On top of that solution of using a weighted sum of power control commands, the patent further describes a more specific and narrow manner in which the mobile unit's power circuitry operates to establish an offset to the transmission power, i.e., a weighted sum of power control commands, using the specific equation and then quantizing the result to an available power step size. *Id.* at 5:27-49; claim 13 (at 9:15-10:13). That specificity does not lead to subject matter ineligibility, but further demonstrates the non-abstractness of the claim. *See, e.g.*, *McRo*, 837 F.3d at 1314 ("We… look to whether the claims in these patents focus on a specific means or method that improves the relevant technology…."); *Enfish*, 822 F.3d at 1337-38 (technological solution the specific self-referential table described in the claim, was not merely any form of storing tabular data).

Moreover, that is not all claim 13 requires. In order to solve the power change problem previously recognized but unsolved by the prior art, the mathematical formula characterizes a novel arrangement of concrete infrastructure. Claim 13 therefore claims more than just the equation; it claims a specific technical solution

and circuitry that uses an equation (but with the solution not being limited to that equation) to improve radio communication technology.

Thus, claim 13 is "directed to real-world applications in the field of radio communications, including, for example, physical devices such as a primary station and secondary station, which are used in ways that are concrete systems that improved radio communications," not an abstract idea. D.I. 202, ¶75. This is patentable subject matter.

#### c. Claim 13 Is Comparable to Other Patent-Eligible Claims in Other Cases

*Evolved Wireless* is far from an outlier. Many other cases have found claims similar to claim 13 patent-eligible under Step One.

For example, in *Diehr*, the Supreme Court found claims reciting a rubber molding process patent-eligible. *Diehr*, 450 U.S. at 184. The claims employed a computer-implemented process and relied on the well-known Arrhenius equation to monitor the temperature of the mold and to calculate when the optimal time to open the press was reached. *Id.* at 177-79. Although the invention used a mathematical equation, it did so to improve how the molding process was carried out and was therefore patent-eligible. *Id.* at 187.

In *Thales Visionix, Inc. v. United States*, the Federal Circuit reversed a finding of ineligibility for claims that used mathematical equations to improve navigation. 850 F.3d 1343, 1348-49 (Fed. Cir. 2017). Whereas prior art solutions "had difficulty

accurately calculating inertial data," the claimed invention "mitigate[d] errors by eliminating inertial calculations with respect to the earth" such that the "claims provide[d] a method that eliminates many 'complications' inherent in previous solutions." *Id.* at 1348. Given the "unconventional choice of reference frame in order to calculate position and orientation," the lower court erred in finding the claims abstract. *Id.* at 1349.

Likewise, in *XY, LLC v. Trans Ova Genetics, LC*, the Federal Circuit upheld the patentability of claims that required the use of mathematical equations. 968 F.3d 1323, 1330-32 (Fed. Cir. 2020). The court explained: "[t]hough the asserted claims [in *XY*] employ formulas to improve classification and separation of individual particles, the formulas operate to achieve the improved result of the claimed method only when combined with the specific detectors and other flow cytometry limitations in the claims." *Id.* at 1332.

And while neither involved a mathematical formula, the Federal Circuit's decisions in *Koninklijke KPN N.V. v. Gemalto M2M GmbH,* 942 F.3d 1143 (Fed. Cir. 2019), and more recently in *Ollnova Techs. Ltd. v. ecobee Techs. ULC*, 177 F.4th 1343 (Fed. Cir. 2026), are also instructive. In *KPN*, the claims were directed to a non-abstract improvement to an existing technological process related to transmitting data over the air, *i.e.*, error checking in data transmissions. Although the claims involved a known check data-matching process, they improved the way

such data was generated by varying the permutation applied to different data blocks. 942 F.3d at 1146. Because the claims required that "original data be varied by permutation before being supplied to the generating device" rather than "the mere desired result of catching previously undetectable systematic errors," they were patent-eligible. *Id.* at 1151-52. Similarly, in *Ollnova*, the claims "recite[d] a particular technique governing *when* and *how* information is transmitted within a network using a wireless automation device," and thus did not "merely describe collecting and communicating data in the abstract." 177 F.4th at 1361 (original emphasis).

Other cases reached similar findings where the claims recited a mathematical equation or algorithm in a way that improved the circuitry or operation of devices over the prior art. *Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 988 (Fed. Cir. 2022) ("Claim 13… claims more than a mathematical formula because it is directed to an efficient, improved method of encoding data that relies in part on irregular repetition. This alleged improvement is not patent ineligible simply because it employs a mathematical formula."); *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1371 (Fed. Cir. 2020) (finding claims not abstract because the application of the claimed algorithm improved how computers and other technology functioned); *Capstan AG Sys. v. Raven Indus., Inc.*, 228 F. Supp. 3d 1235, 1245 (D. Kan. 2017) (finding claim patent-eligible where "[t]he claimed invention uses a mathematical

formula to create individual nozzle control and so applies this formula to improve the existing system and method for agrochemical spraying"); *Intell. Ventures I LLC v. T-Mobile USA, Inc.*, No. 13-1632-LPS, 2017 WL 3706495, at *7-8 (D. Del. Aug. 23, 2017) (finding claim patent-eligible where, "[i]nstead of simply reciting a mathematical relationship, [the patent] employs that relationship to aid in the high-speed transmission of data without compromising bandwidth efficiency"); *see also Diehr*, 450 U.S. at 185-88 (process of curing synthetic rubber, using a mathematical equation as part of the process, found patent-eligible).

Like the claims in *Diehr, Evolved Wireless*, *Thales*, *XY*, *KPN*, *Ollnova*, and other cases discussed above, claim 13 is directed to an innovative solution to a real-world problem which fundamentally changes how power control is carried out by abandoning prior inferior techniques relying only on closed-loop power adjustments. Claim 13 is not merely a desired outcome or a mathematical equation in the abstract. It therefore is valid under *Alice* Step One.

**d. Quectel's Cited Cases Are Inapposite**

In contrast, the cases Quectel cites—one decades-old Supreme Court case and two unpublished Federal Circuit decisions—are inapposite.

For example, Quectel cites *Parker v. Flook*, 437 U.S. 584, 585-86 (1978), as an "analogous" case. D.I. 288 at 15. The patent in *Flook*, however, was markedly different from claim 13 of the '216 Patent, at least because its claims recited ***no steps***

other than calculating and storing data on a general purpose computer, such that they effectively claimed nothing but the mathematical formula itself. *See Flook*, 437 U.S. at 596-97 (providing claim language). The *Flook* claims therefore would have covered ***any*** iteration of performing the calculation and storing the result even if done only as a "basic tool[] of scientific and technological work." *Alice*, 573 U.S. at 216. Claim 13, in contrast, requires specific circuitry arrangements and interactions of radio components in order for the claimed invention to function, such that it is directed to a distinct technological improvement.

Quectel's reliance on the unpublished cases *Cisco Systems, Inc. v. Uniloc 2017 LLC*, 813 F. App'x 495, 497-99 (Fed. Cir. 2020), and *WhitServe LLC v. Dropbox, Inc.*, 854 F. App'x 367, 371-72 (Fed. Cir. 2021), fares no better. In its entirety, the claim in *Cisco* recited:

> 6. A method of operating an ad-hoc radio communication system having a plurality of stations formed into at least one network, the method comprising the step of:
>
> > determining a master/slave rank of each station in the network representative of the station's suitability for acting as master in the network using antenna performance characteristics of each station in view of the antenna's local environment; and enabling a station with the highest rank to be master.

813 F. App'x at 496. This effectively covered ***any*** method of selecting a master station based on antenna performance without regard to specific implementation or novel use of circuitry. *See id.* at 497. Similarly, the claim in *WhitServe* simply recited

executing nonspecific "software" to carry out fundamental business functions that predated the use of computers and the internet using generic computer components and applying previously used methods. 854 F. App'x at 368-69, 371. The same cannot be said of claim 13, which is directed to a specific technological improvement to radio communication technology, not to generic business activities, and is implemented in a specific, concrete way. On the whole, the claims in *Cisco* and *WhitServe* are far broader and more abstract than claim 13; neither case is relevant here.

#### 2. *Alice* Step Two: Claim 13 Includes an Inventive Concept

Because claim 13 survives *Alice* Step One, there is no need to address Step Two. *McRO*, 837 F.3d at 1312. However, should the Court consider Step Two, the facts of record demonstrate that claim 13 is further directed to an inventive concept and is therefore patent-eligible.

Under *Alice* Step Two, a claim is not patent-ineligible "when the claim limitations involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018) (quotation omitted). As discussed, claim 13 teaches and claims a technological improvement to radio communications systems that was not known in the art. *See* §V.A.1, *supra*. More specifically, having a secondary (mobile) station set the initial transmission

power following a pause in transmission using an offset to the power that is determined from a weighted sum of the power control commands applied before the pause was not well-understood, routine, or conventional at the time of invention. ’216 Patent at 2:39-46; D.I. 202, ¶¶71-73. Instead, prior art systems included a primary (base) station that recognized the secondary station was using an inappropriate power level when transmitting a request, measured that power level, and then instructed the secondary station to repeat the request using a step-by-step increased power level, which resulted in errors due to how long the process took to complete. ’216 Patent at 3:59-65. Thus, claim 13, which on the whole is directed to one implementation of the ’216 Patent’s weighted-sum technological solution, includes an inventive concept that was not well-understood, routine, or conventional at the time of invention. This renders the claim patent-eligible under Step Two.

As such, Quectel’s reliance on the Federal Circuit’s decision in *GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053 (Fed. Cir. 2026), is misplaced. In *GoTV*, the court found the relevant claim invalid under Step Two because it did not “call[] for anything but ordinary computers and networks ***to amass and combine information previously amassed and combined outside a server (according to the patent)***….” *Id.* at 1068 (emphasis added). In contrast here, the claimed offset and weighted sum elements each represents information that was never previously “amassed and combined” anywhere before the claimed invention and that, when

implemented as claimed in the ’216 Patent, dictates how the improvements to which claim 13 is directed are achieved. Unlike the *GoTV* claim, claim 13 passes muster under Step Two.

Quectel asserts that claim 13’s elements “viewed both individually and as an ordered combination, contain no inventive concept” (D.I. 288 at 18), but cites no supporting evidence. Quectel also does not claim that using a weighted sum of power control commands, in general, was conventional. At minimum, Quectel’s allegations are contrary to the complaint’s factual assertions. D.I. 202 ¶¶75-78.

Also, there are notably no preemption issues (*see, e.g.*, D.I. 202 ¶76), which Quectel appears to recognize given its failure to argue the point. A claim is less likely to be patent-ineligible when it “do[es] not preempt the use of the abstract idea.” *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016). Claim 13 describes one way of using the mathematical equation to implement specific technological improvements in radio communications; it does not preempt all ways of using the recited equation.

Alternatively, Quectel’s motion should be denied at least because there are factual issues. Apart from the ’216 Patent itself, the record on this Motion is devoid of facts, such as expert and inventor testimony, that would bear on what was conventional or unconventional in the field at the time of invention and how the claims contain transformative inventive concepts. *See Berkheimer v. HP Inc.*, 881

F.3d 1360, 1369 (Fed. Cir. 2018) ("Whether something is well-understood, routine and conventional to a skilled artisan at the time of the patent is a factual determination."). To the extent the parties disagree on the unconventional nature of the invention of claim 13, this factual dispute prevents judgment on the pleadings.

## VI. CONCLUSION

Philips respectfully requests that the Court deny Quectel's Motion.


YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Adam W. Poff*
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com

*Attorneys for Plaintiff Koninklijke Philips N.V.*

Of Counsel:

Eley O. Thompson (*pro hac vice*)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
(312) 832-4359
ethompson@foley.com

Kevin M. Littman
Lucas I. Silva
Thomas M. Relyea
FOLEY & LARDNER LLP
111 Huntington Avenue
Suite 2500
Boston, MA 02199-7610
(617) 342-4000
klittman@foley.com
lsilva@foley.com
tom.relyea@foley.com

Alexis K. Juergens (*pro hac vice*)
Adam R. Aquino (*pro hac vice*)
FOLEY & LARDNER LLP
95 S State Street
Suite 2500
Salt Lake City, UT
84111
(801) 401-8900
ajuergens@foley.com
aaquino@foley.com

Sarah E. Rieger (*pro hac vice*)
FOLEY & LARDNER LLP
777 E Wisconsin Ave
Milwaukee, WI 53202
(414) 271-2400
srieger@foley.com

Dated August 7, 2026

## WORD COUNT CERTIFICATION

Pursuant to the Court's Standing Order Regarding Briefing in All Cases (Nov. 10, 2022) and Local Rule 7.1.3(a)(4), the undersigned counsel hereby certifies that the foregoing document contains 4,993 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the foregoing document. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/Adam W. Poff*
Adam W. Poff (No. 3990)

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2026, true and correct copies of the foregoing document were served by e-mail on the following:

***Counsel for Eagle Electronics, Inc.***

Karen E. Keller
Virginia K. Lynch
SHAW KELLER LLP
1105 North Market St., 12th Floor
Wilmington, DE 19801
302-298-0702
kkeller@shawkeller.com
glynch@shawkeller.com

***Counsel for Quectel Wireless Solutions. Co. Ltd.***

Elizabeth G.H. Ranks
FISH & RICHARDSON
One Marina Park Drive, Suite 1700
Boston, MA 02210
617-542-5070
ranks@fr.com

Katherine Reardon
FISH & RICHARDSON
7 Times Square, 20th Floor
New York, NY 10036
212-765-5070
kreardon@fr.com

Lawrence R. Jarvis
FISH & RICHARDSON
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
404-892-5005
jarvis@fr.com

Martina Tyreus Hufnal
Warren K. Mabey Jr.
FISH & RICHARDSON
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
302-652-5070
hufnal@fr.com
mabey@fr.com

Thomas H. Reger, II
FISH & RICHARDSON
1717 Main Street, Suite 5000
Dallas, TX 75201
214-747-5070
reger@fr.com

Bryan J. Cannon
FISH & RICHARDSON
1000 Main Avenue SW, Suite 1000
Washington, D.C. 20024

202-783-5070
cannon@fr.com

*/s/ Adam W. Poff*
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Parks L. Kingery (No. 7416)
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com
pkingery@ycst.com

*Attorneys for Plaintiff Koninklijke Philips N.V.*