**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br><br>v.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD. and EAGLE ELECTRONICS INC.,<br><br>Defendants. | C.A. No. 20-cv-1707-CFC<br><br>**JURY TRIAL DEMANDED** |

# QUECTEL'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Dated: August 14, 2026

Warren K. Mabey, Jr. (No. 5775)
Martina Tyreus Hufnal (No. 4771)
Kevin P. Seltzer (No. 7453)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899
Tel: (302) 652-5070
Fax: (302) 652-0607
mabey@fr.com
hufnal@fr.com
seltzer@fr.com

*Attorneys for Defendant Quectel Wireless Solutions Co. Ltd.*

# TABLE OF CONTENTS

**Page(s)**


I. INTRODUCTION ........................................................................ 1

II. ARGUMENT ........................................................................ 1

A. Claim 13 Is Directed to the Abstract Idea of Adjusting Power Levels Based on a Mathematical Equation ........................................................................ 1

B. Claim 13 Is Distinguishable from Claims Held to Be Directed to a Specific Technological Improvement ........................................................................ 4

C. Claim 13 Lacks an Inventive Concept ........................................................................ 7

D. Judgment on the Pleadings Is Proper ........................................................................ 9

III. CONCLUSION ........................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016) ....................9

*Automated Tracking Sols., LLC v. Coca-Cola Co.*,
723 F. App'x 989 (Fed. Cir. 2018) ....................6

*BSG Tech LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018) ....................*2,* 8, 9

*Gottschalk v. Benson*,
409 U.S. 63 (1972) ....................7

*iLife Techs., Inc. v. Nintendo of Am., Inc.*,
839 F. App'x 534 (Fed. Cir. 2021) ....................6

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
942 F.3d 1143 (Fed. Cir. 2019) ....................6, 7

*Media Content Protection LLC v. Intel Corp.*,
No. 20-cv-1243, 2025 WL 3281776 (D. Del. Nov. 25, 2025) ....................7

*Mgmt. Sci. Assocs., Inc. v. Datavant, Inc.*,
510 F. Supp. 3d 238 (D. Del. 2020) ....................6

*Southmark Prime Plus, L.P. V. Falzone*,
776 F. Supp. 888 (D. Del. 1991) ....................9

*Thales Visionix Inc. v. United States*,
850 F.3d 1343 (Fed. Cir. 2017) ....................5, 6

*XY, LLC v. Trans Ova Genetics, LC*,
968 F.3d 1323 (Fed. Cir. 2020) ....................6

**Statutes**

35 U.S.C. § 101 ....................9, 10

**Other Authorities**

Local Rule 7.1.3(a)(4) ........................................................................................ 1

# I. INTRODUCTION

Philips fails to identify any facts which, taken as true, demonstrate that claim 13 is patent-eligible. Claim 13 is directed to the abstract idea of adjusting power levels based on a mathematical equation that identifies a weighted sum—and, in other briefing to this Court, Philips proposes that weighted sum as a key component in the claim. In the end, claim 13 lacks an inventive concept that transforms the claim into significantly more.

# II. ARGUMENT

## A. Claim 13 Is Directed to the Abstract Idea of Adjusting Power Levels Based on a Mathematical Equation

Claim 13 is directed to an abstract idea at *Alice* Step One. Philips insists claim 13 is directed to a technological improvement of power control in radio communication technology, D.I. 108 at 5–14, but fails to acknowledge that the only purported technological improvement is the result of applying a mathematical formula on conventional radio communication equipment.

Philips argues claim 13, considered in its entirety, describes the interaction of concrete components to achieve improved power control. D.I. 108 at 7–9. There is no indication, however, that the claimed components, or the interaction of those components, require anything other than generic mobile radio system equipment. *See* '216 patent at 1:11–15 (explaining the claimed power control techniques are not exclusively applicable to UMTS systems but are "equally applicable to use in other

mobile radio systems"). Even if claim 13 did expressly disclose specific components, this does not save the claim from abstraction. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1286 (Fed. Cir. 2018) ("claims are not saved from abstraction merely because they recite components more specific than a generic computer").

Philips's argument that claim 13 discloses a non-abstract technological solution are belied by its proposed claim constructions. For example, the parties agree that the "means for determining" limitation is subject to 112 ¶ 6. *See* D.I. 90-2 at 3. Philips argues the corresponding structure for the "means for determining" limitation is the **weighted sum itself**, calculated using the claimed mathematical equation. D.I. 90-2 at 5. Philips's inability to identify a tangible structure for this limitation underscores the abstractness of claim 13 and undermines Philips's argument that the recited system components "provide important structure and demonstrate that the claim is directed to a technological improvement."[1] D.I. 108 at 8. Philips's attempt to distinguish Quectel's cited cases on this basis, *id.* at 17–19

---

[1] Philips also points to the "means . . . for quantizing" limitation as providing "important **structure**." D.I. 108 at 8 (emphasis added). But in its proposed constructions, Philips contends "means . . . for quantizing" is not a separate claim term, but merely describes a **function** of the "means for determining" limitation. D.I. 90-2 at 3–4, 6. Philips's argument that the limitations of claim 13 provide specific structure and save the claim from abstractness should be rejected.

(distinguishing cases based on the argument claim 13 is directed to a specific, "concrete" implementation), should be rejected.

Quectel's analysis does not oversimplify claim 13. Philips argues Quectel mischaracterizes the claim as "encompassing only the broad, abstract idea of applying a previously known mathematical equation on a general-purpose computer." D.I. 108 at 6. This is inaccurate; Quectel repeatedly asserted claim 13 is directed to the abstract idea of adjusting power levels based on a mathematical equation. D.I. 85 at 1, 2, 9–12, 14–16. Philips argues Quectel overlooks important structures in the claim and reduces claim 13 to nothing more than a mathematical equation. D.I. 108 at 7–9. But when tasked with identifying **any structure** in its claim construction brief, Philips points to the weighted sum itself, calculated using the claimed equation. D.I. 90-2 at 5 (Philips's proposed structure for "means for determining . . ." is "a weighted sum of power control commands in accordance with an equation ΔP(t)=K1ΔP(t-1)-K2PC(t)PS(t)…").

Nor does Quectel argue that claim 13 lacks subject matter eligibility merely because it recites a mathematical equation. Quectel's argument is that claim 13 merely recites generalized functionality and conventional communication system components—data/control channels and a power controller—and the only alleged improvement is a purely abstract mathematical equation. D.I. 85 at 10–13. Quectel's motion expressly cites and applies the standard that "it is not enough to

merely identify a patent-ineligible concept underlying the claim," and then explains that the claim as a whole is directed to an abstract idea. *Id.*

### B. Claim 13 Is Distinguishable from Claims Held to Be Directed to a Specific Technological Improvement

Claim 13 of the '216 patent is unlike the claims at issue in *Evolved Wireless LLC v. Apple Inc.*, on which Philips relies heavily. 221 F. Supp. 3d 485, 492–94 (D. Del. 2016). The claims at issue in *Evolved Wireless* disclosed a process that allowed a telecommunications system to serve more mobile phones per base station and transmit larger quantities of data. *Id.* at 493–94. Unlike the *Evolved Wireless* claims, the '216 patent discloses a technique to allegedly speed up an existing power control process (i.e., power level convergence after a transmission interruption), and claim 13 allegedly accomplishes this goal by performing a mathematical calculation. '216 patent at 1:46–54 ("A problem with these known techniques is that at the start of a transmission, or after a transmission is interrupted, the power control loops may take some time to converge satisfactorily. . . . An object of the present invention is to address the above problem."); *see* '216 patent at claim 13. Moreover, the Federal Circuit subsequently held in *RecogniCorp, LLC v. Nintendo Co., Ltd.* that claims directed to encoding and decoding image data using a mathematical formula, resulting in improvements in memory and image quality, were nonetheless abstract. 855 F.3d 1322, 1324, 1326–27 (Fed. Cir. 2017). Claim 13 is thus more like the claims at issue in *RecogniCorp* because it uses conventional components and a

mathematical equation to provide the only alleged technological benefit of speeding up power convergence time. *Id.* at 1327 (explaining the representative claim did not disclose a software method that improved the functioning of a computer, but rather a "process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool").

Claim 13 is also distinguishable from those at issue in *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1346–49 (Fed. Cir. 2017). The *Thales* claims disclosed an inertial tracking system for tracking a moving object relative to a moving reference frame. *Id.* at 1344–45. The claims specified a particular configuration of inertial sensors and a particular method of using raw data to eliminate inconsistencies present in prior art solutions. *Id.* Importantly, the specification in *Thales* disclosed an assertedly unconventional arrangement of sensors. *Id.* at 1345. In contrast, the '216 patent does not purport to disclose a novel hardware arrangement. Rather, the specification makes clear that the disclosed power control technique can be implemented in a conventional mobile radio system. '216 patent at 1:11–15 ("While the present specification describes a system with particular reference to the emerging [UMTS system], it is to be understood that such techniques are equally applicable to use in other mobile radio systems.").

Philips's claim construction position further demonstrates the '216 patent does not disclose a novel hardware arrangement as Philips only identifies as structure

the weighted sum itself, calculated using the claimed mathematical equation. D.I. 90-2 at 5. In cases such as this, courts have declined to apply *Thales*. *E.g.*, *iLife Techs., Inc. v. Nintendo of Am., Inc.*, 839 F. App'x 534, 537 (Fed. Cir. 2021) (distinguishing *Thales* where the claim at issue "is not focused on a specific means or method to improve motion sensor systems, nor is it directed to a specific physical configuration of sensors"); *Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 F. App'x 989, 994 (Fed. Cir. 2018) (distinguishing *Thales* because the representative claims "do not require a particular configuration or arrangement of RFID system components"); *Mgmt. Sci. Assocs., Inc. v. Datavant, Inc.*, 510 F. Supp. 3d 238, 248 n.1 (D. Del. 2020) (distinguishing *Thales* because the claims "involve no physical components other than generic computers").

Philips's other cited cases, *XY, LLC v. Trans Ova Genetics, LC*, 968 F.3d 1323, 1329–33 (Fed. Cir. 2020), and *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1149–53 (Fed. Cir. 2019), are also inapposite. In *XY*, the Federal Circuit held the claims at issue, which related to an improved method of operating a flow cytometry apparatus, were non-abstract because they included "specific detectors and other flow cytometry limitations." 968 F.3d at 1332. In *KPN*, the court upheld the claims because they required a specific implementation of permutation variation in data checking. 942 F.3d at 1150–53. Here, the only analogous "specific" method disclosed in claim 13 to achieve rapid power control

convergence is the mathematical equation, which is itself abstract. *Gottschalk v. Benson*, 409 U.S. 63, 71–72 (1972). This court has held *KPN* inapplicable where the patent at issue did not disclose a specific improvement to computer functionality. *Media Content Protection LLC v. Intel Corp.*, No. 20-cv-1243, 2025 WL 3281776, at *4 (D. Del. Nov. 25, 2025).

### C. Claim 13 Lacks an Inventive Concept

Philips fails to identify an inventive concept that transforms claim 13 into patent-eligible subject matter. All claim 13 recites, per Philips's own positions advanced in claim construction, is: (i) data/control channels for transmitting signals; (ii) a power controller for setting an initial transmission power and adjusting the power of those channels; and (iii) a weighted sum calculated using an equation. *See* D.I. 90-2 at 1–6. Data and control channels and a power controller are conventional radio system components. *See* '216 patent, 1:16–45. The weighted sum calculation is purely abstract.

At *Alice* Step Two, Philips does not dispute Quectel's argument that a mathematical equation alone cannot supply an inventive concept. Rather, Philips points to operations performed by the claimed secondary (mobile) station as purportedly unconventional. D.I. 108 at 19–20. Specifically, Philips argues: (i) the '216 patent discloses a mobile station that, after a pause in transmission, sets initial transmission power based on an offset determined from a weighted sum of

previously applied power control commands; and (ii) this is unconventional because prior art systems used a primary (base) station to detect inappropriate power levels and instruct the mobile station to use a different power level. Put another way, Philips argues it was unconventional to achieve power control convergence by having the mobile station set transmission power based on a calculation rather than based on a command from the base station. But this alleged unconventionality relies entirely on the mobile station's performance of a calculation to supply an inventive concept. Philips's argument points to the mobile station's performance of an abstract idea (adjusting power levels based on a mathematical equation) and should be rejected.

Philips's emphasis on mobile station operations is also at odds with its proposed claim constructions. For the "power control means" and "means for setting an initial transmission power" limitations, which are subject to 112 ¶ 6, Philips disputes Quectel's proposed structure of specific mobile station components, instead identifying a standalone power controller. D.I. 90-2 at 1–3.

Philips's lack-of-preemption argument "misunderstands the step two inquiry." *BSG Tech*, 899 F.3d at 1291. Even crediting Philips's conclusory statement that there are no preemption issues, D.I. 108 at 20–21, this does not save claim 13. "While preemption concerns are 'the basis for the judicial exceptions to patentability . . . , the absence of complete preemption does not demonstrate patent

eligibility.'" *BSG Tech*, 899 F.3d at 1291 (quoting *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015)). Absent an inventive concept that transforms claim 13 into significantly more than the abstract idea itself, claim 13 fails *Alice* Step Two.

There is no factual dispute that precludes judgment on the pleadings. Philips argues the parties dispute the conventional nature of claim 13. Even drawing all inferences in favor of Philips, however, Philips's purported inventive concept is nothing more than the abstract idea to which claim 13 is directed. This argument is insufficient to preclude judgment on the pleadings. *E.g.*, *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (affirming grant of motion to dismiss and holding claim lacked an inventive concept because it "simply recites the use of generic features . . . as well as routine functions . . . to implement the underlying idea"). Moreover, while the court must draw all reasonable factual inferences in favor of the nonmoving party, it is not required to adopt unsupported, conclusory allegations or statements of law. *Southmark Prime Plus, L.P. V. Falzone*, 776 F. Supp. 888, 891 (D. Del. 1991).

**D. Judgment on the Pleadings Is Proper**

Claim construction is not required to resolve the issue of patent eligibility. Philips argues its claim construction positions support its § 101 argument that limitations of claim 13 are structural. D.I. 108 at 21–22. However, for the "means

for determining" limitation that recites the mathematical formula, Philips's proposed structure is "a weighted sum" calculated using the claimed mathematical formula. D.I. 90-2 at 5. If anything, this underscores the abstractness of the claim. Even applying Philips's proposed constructions for all disputed terms, the result is the same – claim 13 is directed to an abstract idea and lacks an inventive concept.

## III. CONCLUSION

Claim 13 of the '216 patent is invalid under 35 U.S.C. § 101.

Dated: August 14, 2026

**FISH & RICHARDSON P.C.**

By: */s/ Warren K. Mabey, Jr.*
Warren K. Mabey, Jr. (No. 5775)
Martina Tyreus Hufnal (No. 4771)
Kevin P. Seltzer (No. 7453)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899
Tel: (302) 652-5070
Fax: (302) 652-0607
mabey@fr.com
hufnal@fr.com
seltzer@fr.com

Thomas H. Reger II (*pro hac vice*)
**Fish & Richardson P.C.**
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
reger@fr.com

Lawrence T. Jarvis (*pro hac vice*)
Katherine Reardon (*pro hac vice*)
Peter "Tae" Hong (*pro hac vice*)
**Fish & Richardson P.C.**
1180 Peachtree Street NE
21st floor
Atlanta, GA 30309
(404) 892-5005
jarvis@fr.com
reardon@fr.com
hong@fr.com

Elizabeth G.H. Ranks (*pro hac vice*)
Grier A. Conville (*pro hac vice*)
**Fish & Richardson P.C.**
One Marina Park Drive
Suite 1700
Boston, MA 02210
617-368-2175
ranks@fr.com
conville@fr.com

Bryan J. Cannon (*pro hac vice*)
Matthew P. Mosteller (*pro hac vice*)
**Fish & Richardson P.C.**
1000 Maine Avenue SW
Suite 1000
Washington, DC 20024
(202) 220-6859
cannon@fr.com
mosteller@fr.com

Mohammad Reza Kameli (*pro hac vice*)
**Fish & Richardson P.C.**
7 Times Square
20th Floor
New York, NY 10036
(212) 765-5070
kameli@fr.com

*Attorneys for Defendant Quectel Wireless Solutions Co. Ltd.*

**WORD COUNT CERTIFICATION**

Pursuant to the Court's Standing Order Regarding Briefing in All Cases (Nov. 10, 2022) and Local Rule 7.1.3(a)(4), the undersigned counsel hereby certifies that the foregoing document contains 2,242, words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the foregoing document. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Warren K. Mabey Jr.*
Warren K. Mabey, Jr. (No. 5775)