IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br><br>v.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD. and EAGLE ELECTRONICS INC.,<br><br>Defendants. | Civil Action No. 20-1707-CFC |

## MEMORANDUM ORDER

Defendant Quectel Wireless Solutions Co. Ltd. (Quectel) has moved pursuant to Federal Rule of Civil Procedure 12(h)(3) to dismiss Count V of the operative Second Amended Complaint (the Complaint). D.I. 232. Although I am not persuaded by the arguments Quectel makes in support of its motion, I "have an independent obligation to determine whether subject matter jurisdiction exists," *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006), and I have concluded that I lack subject matter jurisdiction over Count V. I will therefore dismiss Count V and deny Quectel's motion as moot.

I.

Quectel manufactures cellular Internet of Things (IoT) modules that enable IoT devices to collect and share data over the internet and through wireless communication networks. Three wireless networks—the second, third, and fourth generations of mobile cellular communication networks—are relevant here: the Global System for Mobile (GSM or 2G), the Universal Mobile Telecommunications Service (UMTS or 3G), and the Long-Term Evolution (LTE or 4G).

Cellular networks rely on technological interoperability standards that set protocols and design parameters. Such standards enable products made by different manufacturers to work together. The standards for 3G and 4G were developed by the 3rd Generation Partnership Project (3GPP) sponsored by seven telecommunication standards organizations. Plaintiff Koninklijke Philips N.V. (Philips) is a member of one of those standards organizations—the European Telecommunications Standards Institute (ETSI). Quectel is not a member of ETSI.

It is undisputed that Quectel makes modules that practice 3GPP standards for 3G and 4G adopted by ETSI. Philips does not allege that Quectel has ever manufactured modules that practice the 2G standard. (Philips alleges in the Complaint that *Philips* manufactured cellular phones in the early 2000s that practiced the 2G standard. D.I. 201 ¶ 14.)

II.

In each of the first four counts of the Complaint, Philips accuses Quectel of infringing a patent owned by Philips. According to Philips, "[t]he devices claimed in the [four] Asserted Patents have proved to be of great importance to the field of digital cellular communications including 3G UMTS and/or 4G LTE cellular standards established by ETSI and 3GPP." D.I. 201 ¶ 18.

In Count V of the Complaint, Philips seeks a "declaratory judgment related to FRAND license and royalties." D.I. 201 at 53. "FRAND" stands for fair, reasonable, and non-discriminatory.

Count V is set forth in paragraphs 166 through 170 of the Complaint:

> 166. Philips repeats and realleges the foregoing paragraphs [of the Complaint].
>
> 167. As discussed above, Quectel has demanded and exercised its third-party beneficiary rights against Philips to obtain a FRAND license, all the while delaying and avoiding paying a FRAND royalty for continuing use of Philips' technology. Consistent with the third-party beneficiary right asserted and accepted by Quectel, Philips has repeatedly offered to license rights to its world-wide portfolio including the Asserted Patents (and others) to Quectel, but Quectel has not accepted Philips' offers to license the world-wide portfolio. Rather than terminating its use of Philips' technology, Quectel has proceeded to continue to take Philips technology and use it to its great advantage all the while asserting its third-party beneficiary rights. Philips' offers to license the patents have been on fair, reasonable and non-discriminatory ("FRAND") terms, pursuant to ETSI policy and Philips' declarations.

168. Despite notice in 2015 of the Asserted Patents and others in Philips' world-wide portfolio, followed by years of additional communications between the parties in which Philips offered and demonstrated its willingness to provide a worldwide license in those patents to Quectel, Quectel has steadfastly refused to accept Philips' FRAND licensing offers and acted as a "hold out" while infringing Philips' patents in a manner consistent with an "efficient infringement" tactical approach.

169. Even though Quectel has steadfastly refused to accept Philips' multiple FRAND offers, Quectel has asserted and accepted its third-party beneficiary rights from Philips to obtain a FRAND license, effectively promising that it will enter a FRAND license once the FRAND royalty can be determined. Over the course of its conduct, Quectel's statements and behavior have made an enforceable promise and commitment by Quectel that it will enter into license with Philips on FRAND terms and royalties, which are capable of being determined, including by a jury. In asserting and accepting its third-party beneficiary rights, Quectel must [ac]cept the obligations that come with asserting and accepting the rights including paying a FRAND royalty awarded by a jury.

170. An actual controversy has arisen and now exists between Philips and Quectel, which have adverse legal interests regarding whether Quectel has demanded and exercised its third-party beneficiary rights, including the obligation to pay a FRAND royalty (i.e., promised to enter a license on terms that can be determined – i.e., the FRAND royalty), and if so, what FRAND royalty, including interest, is owed by Quectel for a license to Philips' 2G, 3G, and 4G SEP worldwide portfolio. There is a case or controversy of sufficient immediacy, reality, and ripeness to warrant the issuance of declaratory judgment on the FRAND royalty due for such a license, for both Quectel's past sales and future sales.

D.I. 201 ¶¶ 166–170.

The Complaint specifically requests the issuance of a declaratory judgment "that Quectel asserted and accepted its third[-]party beneficiary rights to a FRAND license, promising to enter a license on FRAND terms, which can be determined, and a declaration of the FRAND royalties and terms, including interest, for Quectel to license Philips' 2G, 3G, and 4G worldwide SEP portfolio." D.I. 201 at 62. The Complaint does not define "SEP," but in other settings the parties have used that term as an acronym for "Standard Essential Patents," and I assume Philips meant "SEP worldwide portfolio" to refer to its patents that it has publicly declared practice the standards for 2G, 3G, and 4G adopted by ETSI.

III.

Under Rule 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A Rule 12(h)(3) motion "may be asserted at any time and need not be responsive to any pleading of the other party." *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 879 n.3 (3d Cir. 1992). "[T]he party asserting federal jurisdiction when it is challenged has the burden of establishing it." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [a federal court's] limited jurisdiction and the burden of

establishing the contrary rests upon the party asserting jurisdiction.") (citation omitted).

Federal courts are courts of limited jurisdiction and thus may adjudicate cases and controversies only as permitted under Article III of the Constitution. U.S. Const. art. III, § 2; *see also Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319, 323 (3d Cir. 1998). "The existence of a case and controversy [under Article III] is a prerequisite to all federal actions, including those for declaratory or injunctive relief." *Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994).

IV.

Philips alleges that I have jurisdiction over Count V pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. D.I. 201 ¶ 19; D.I. 244 at 4. The Act, however, "does not itself create an independent basis for federal jurisdiction but instead provides a remedy for controversies otherwise properly within the court's subject matter jurisdiction." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 394 (3d Cir. 2016) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950)). And Philips has failed to show that the controversy for which it seeks declaratory relief lies within this Court's subject matter jurisdiction.

Count V's deficiencies are apparent from the get-go. In the first substantive clause of the count, Philips alleges that "[a]s discussed above, Quectel has demanded and exercised its third-party beneficiary rights against Philips to obtain a FRAND license[.]" D.I. 201 ¶ 167. In point of fact, there is no "discuss[ion] above" of Quectel demanding or exercising third-party rights against Philips to obtain a FRAND license. Indeed, there is no allegation, suggestion, or intimation in the first 165 paragraphs of the Complaint that Quectel demanded, exercised, or even had third-party beneficiary rights to a FRAND license. The words "third-party" and "beneficiary" do not appear in the first 165 paragraphs of the Complaint. And the only rights and benefits those paragraphs allege with respect to Quectel concern Delaware law and retail sales, not a FRAND license. *See* D.I. 201 ¶ 20 (alleging that personal jurisdiction over Quectel exists because it "has availed itself of the rights and benefits of Delaware law"); D.I. 201 ¶ 21 (alleging that personal jurisdiction over Quectel exists because it "economically benefits from the retail sale of infringing products in the State of Delaware").

Consistent with the initial substantive clause of Count V, Philips alleges three times in the remainder of the count that Quectel "asserted and accepted" third-party beneficiary rights to a FRAND license. *See* D.I. 201 ¶¶ 167, 169. And it insists that Quectel's "asserti[on]" of these alleged rights "effectively" constituted a "promis[e] that [Quectel] will enter a FRAND license [to Philips' 2G,

3G, and 4G SEP worldwide portfolio] once the FRAND royalty can be determined." D.I. 201 ¶ 169. Philips also alleges that "Quectel must [ac]cept the obligations that come with asserting and accepting the[se] rights including paying a FRAND royalty awarded by a jury." D.I. 201 ¶ 169. But nothing in Count V or the paragraphs of the Complaint it incorporates identifies a source of these alleged third-party beneficiary rights or, more importantly, the alleged obligations Philips says flow from those rights.[1] Presumably because Philips knows that there is no contract, statute, or other legal source that imposes on Quectel an obligation to obtain from Philips a license to Philips' SEP worldwide portfolio, the terms of the declaratory judgment Philips asks me to issue do not compel Quectel to enter such a license.

Philips' failure to allege, let alone demonstrate, that Quectel has a legal obligation to obtain a license from Philips dooms Count V, as it means there is no justiciable controversy between Philips and Quectel. There is, to be sure, a controversy between Philips and Quectel. Philips alleges that it has offered a

---

[1] Paragraph 173 of the Complaint alleges that Quectel has a third-party beneficiary right to license Philips' "worldwide SEP portfolio" under ETSI's "IPR Policy" and "Philips' FRAND declarations to ETSI." D.I. 201 ¶ 173. That paragraph is part of Count VI, and Count V does not incorporate Count VI. In any event, the Complaint never alleges what the IPR Policy or a FRAND declaration is, and, more to the point, it does not allege that Quectel was obligated by contract, statute, or any other legal authority to obtain from Philips a FRAND license for Philips' worldwide SEP portfolio. This latter failure, as discussed below, is fatal to Count V.

FRAND license to Quectel and that Quectel refuses to accept that offer. But the Declaratory Judgment Act "is operative only in respect to controversies which are such in the constitutional sense." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239–40 (1937). And "in the constitutional sense," a controversy must "touch[ ] the legal relations of parties having adverse legal interests." *Id.* at 240–41; *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (holding that for a declaratory judgment action to "satisfy the case-or-controversy requirement," the underlying dispute must "'touch[ ] the legal relations of parties having adverse legal interests'") (quoting *Aetna Life Ins.* 300 U.S. at 240–41). In this case, Philips has not shown or even alleged legal relations between Philips and Quectel that make Philips' desire that Quectel accept Philips' offer of a putative FRAND license and Quectel's refusal to agree to that license adverse legal interests. Accordingly, it has not met its burden to establish the existence of a justiciable controversy under Article III.

* * * *

NOW THEREFORE, at Wilmington on this Sixteenth Day of November in 2026, it is HEREBY ORDERED that

1. Count V of the Second Amended Complaint is DISMISSED; and
2. Defendant Quectel Wireless Solutions Co. Ltd.'s Motion to Dismiss

Under Federal Rule of Civil Procedure 12(h)(3) (D.I. 232) is DENIED AS MOOT.

COLM F. CONNOLLY
CHIEF JUDGE