IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V.,<br><br>Plaintiff,<br><br>v.<br><br>QUECTEL WIRELESS SOLUTIONS CO. LTD. and EAGLE ELECTRONICS INC.,<br><br>Defendants. | Civil Action No. 20-1707-CFC |

**MEMORANDUM ORDER**

Plaintiff Koninklijke Philips N.V. (Philips) has accused Defendant Quectel Wireless Solutions Co. Ltd. (Quectel) of infringing four patents in this case. D.I. 201 ¶ 25. It accused Quectel of infringing two different patents in another case pending before me—Civil Action No. 20-1710 (the 1710 Action). *Koninklijke Philips N.V. v. Quectel Wireless Solutions Co. LTD.*, No. 20-1710, D.I. 218 ¶ 44. Philips also alleges in this case various claims arising from Quectel's refusal to accept a license offered by Philips to certain of Philips' patents on what Philips says are "FRAND" terms. "FRAND" stands for fair, reasonable, and non-discriminatory. Philips had originally alleged these FRAND claims in the 1710 Action. But in September 2025, I granted Philips' unopposed motion

(D.I. 42) to sever its FRAND claims from the 1710 Action and consolidate them into this action. D.I. 43.

Quectel filed two FRAND counterclaims against Philips in both actions. But on the morning of the first day of trial in the 1710 Action, it withdrew its FRAND counterclaims in that case. The trial in the 1710 Action concluded on August 27, 2026. Trial in this case will occur in December.

Pending before me is Philips' motion for summary judgment in its favor on Quectel's two FRAND counterclaims in this action. D.I. 350. A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because Philips has not made that showing here, I will deny its motion.

I.

Quectel's counterclaims in this action and in the 1710 Action share language, legal theories, and many underlying facts. Counterclaim One in this action is titled "Breach of FRAND Contract and Other Misconduct." D.I. 218 at 65. Counterclaim One in the 1710 Action is titled "Breach of FRAND Contract." No. 20-1710, D.I. 233 at 57. In both Counterclaim Ones, Quectel alleges that: (1) Philips "contractually committed to" the European Telecommunications Standards Institute (ETSI) to license on FRAND terms and

conditions Philips' patents that Philips says are essential to practice a 3GPP standard for 3G UMTS and/or 4G LTE cellular networks, D.I. 218 at 65, ¶ 36; No. 20-1710, D.I. 233 at 57, ¶ 35; (2) "[a]s an implementer of 3GPP specifications, Quectel is an intended third-party beneficiary" of Philips' "contractual commitments and obligations" to ETSI, D.I. 218 at 65, ¶ 39; No. 20-1710, D.I. 233 at 58, ¶ 38; and (3) "[c]ontrary to [Philips'] FRAND contractual obligations under French law, Philips has not made a good faith offer [to Quectel] for a FRAND license" to certain patents, D.I. 218 at 66, ¶ 40; No. 20-1710, D.I. 233 at 58, ¶ 39.

Both Counterclaim Two in this action and Counterclaim Two in the 1710 Action are titled "Breach of Obligation to Negotiate in Good Faith." D.I. 218 at 68; No. 20-1710, D.I. 233 at 61. And both of those counterclaims allege that, "[c]ontrary to its obligations under French law, Philips has not negotiated in good faith [with Quectel] towards a FRAND license to" certain of Philips' patents, D.I. 218 at 69, ¶ 53; No. 20-1710, D.I. 233 at 62, ¶ 51.

The FRAND counterclaims in this action and the 1710 Action differ insofar as they concern different sets of patents. The FRAND counterclaims in the 1710 Action allege actionable misconduct by Philips only with respect to the patents Philips accused Quectel of infringing in that case. *See* No. 20-1710, D.I. 233 at 57–61 (First Count); No. 20-1710, D.I. 233 at 61–64 (Second Count). The FRAND counterclaims in this case accuse Philips of failing to comply with its

FRAND licensing and negotiation obligations for all the patents in Philips' portfolio of 3GPP Standard Essential Patents (SEPs) for 3G UMTS and/or 4G LTE cellular networks. *See* D.I. 218 at 65–68 (First Count); D.I. 218 at 68–71 (Second Count).

On the morning of the first day of trial in the 1710 Action—just before opening statements were about to begin and with the jury waiting—Quectel withdrew its FRAND counterclaims in that action. No. 20-1710, 8.24.26 Trial Tr. (docketed as D.I. 580) 150:18–21. Its counsel, Mr. Reger, stated that Quectel made this last-minute decision because of my ruling earlier that morning that Quectel could not make any reference at trial to findings by the International Trade Commission related to four patents in Philips' portfolio of 3GPP SEPs. No. 20-1710, 8.24 Tr. 150:18–21; *see also* No. 20-1710, 8.24 Tr. 28:20–30:7.

Philips says that Quectel dropped the counterclaims with prejudice. D.I. 351 at 1, 5, 11. In support of its position, Philips' counsel, Mr. Thompson, offered in the opening brief Philips filed in support of the pending motion this rendition of the trial transcript:

> Mr. Reger: . . . Quectel respectfully withdraws its first and second counterclaim[s] . . . .
>
> Mr. Thompson: Your Honor, we believe that that should be removed also from the December trial because they –
>
> The Court: I'm not dealing with that now. Are you kidding me?

> Mr. Thompson: It should be with prejudice.
>
> The Court: Well, that much I assume, ***it's with prejudice[[***[3] ***[y]ou're withdrawing a claim***?
>
> Mr. Reger: ***With respect to the patents in this case, that's right, Your Honor*** . . . .

D.I. 351 at 5 (alterations, emphasis, and footnote in the original). In footnote 3 of Philips' opening brief, Mr. Thompson writes:

> While the court reporter put a period here in the transcript, in view of the fact that Quectel's counsel had already stated to the Court that the counterclaims were being dropped and the issue being discussed was whether it was with prejudice or not, this is how Philips recalls the Court's question was made orally.

D.I. 351 at 5 n.3.

Philips' "recollection" is—and I say this charitably—mistaken. I have listened to the audio recording. The court reporter got it right. Mr. Reger answered "that's right" in response to me asking him, "[y]ou're withdrawing a claim?" I did not ask, and he did not respond "that's right" to, the question "it's with prejudice you're withdrawing a claim?"

Any doubt Philips had about what Mr. Reger said and what I understood him to say when he withdrew Quectel's FRAND counterclaims should have been dispelled by three discussions that followed Mr. Reger's "that's right" response to my question, "[y]ou're withdrawing a claim?" The first discussion occurred

immediately after Mr. Reger's response when I warned Quectel that by withdrawing the two claims in the 1710 Action, it *risked* being precluded from raising them in this action:

> THE COURT: If you think that you are going to get to retry the two claims that you brought in this case in December, I wouldn't assume that.
>
> MR. REGER: Understood, Your Honor.
>
> THE COURT: As long as you understand that. *I don't have to make that decision now*, but I think there is [a] decent chance that by your withdrawing the claims now with the jury ready to go, that's the end of those two claims.
>
> MR. REGER: Understood, Your Honor.

No. 20-1710, 8.24 Tr. 151:10–19 (emphasis added).

The second discussion occurred at the end of the trial's first day:

> MR. THOMPSON: If I may, Your Honor.
>
> THE COURT: I don't have time.
>
> MR. THOMPSON: There is one idea I have, which is that they just dropped, with prejudice, a breach of – –
>
> THE COURT: Hold on. Just hold on. That is an example of what I mentioned, what I said at sidebar. So [“]they just dropped with prejudice.[”] You raised that issue. *They did not commit to that.*
>
> What I said to them was they are bearing some risk here. But they did not say [“]with prejudice.[”] You stood up, and you demanded that they make it with prejudice. That was not what happened.

> Do you realize how that's problematic now when hours later, at the end of the day, you are representing to me that they dismissed it with prejudice? I was here. I witnessed it.
>
> MR. THOMPSON: Your Honor, maybe I should say it's Philips['] position it should be dismissed with prejudice.
>
> THE COURT: Yeah, but that's a lot different than saying they withdrew or dismissed their case with prejudice. That's your position, if you want to articulate it. *It is clearly a challenged position. They have reserved their rights. They explicitly did it.*
>
> All I'm saying is that's an example of what I just encounter time and time and time again in this case. It's got to stop. It's got to stop. Lawyers have an obligation of candor to the tribunal. So let's all practice that.

No. 20-1710, 8.24 Tr. 366:4–367:9 (emphasis added).

The third discussion occurred the next day:

> MR. THOMPSON: Your Honor, I had asked Quectel whether they were planning to drop that because we did check the record. I misspoke yesterday because I think the record actually reflected that they had withdrawn that. I'm sorry to say, but I do believe it was with prejudice if you look at the record.
>
> THE COURT: You think they used the words "with prejudice[?]"[]
>
> MR. THOMPSON: I think you did, Your Honor.
>
> THE COURT: Well, it was a rough transcript, but I absolutely did not. What I know I said, I'm confident… actually, I am not going to get into it with you, Mr. Thompson. We will just go back and look at the record.

> Actually, I am going to reiterate what I don't think any reasonable listener could have come away with was anything but I said to Quectel, essentially, they are taking some risk. Who knows where it takes us, but I am not going to make that decision.

No. 20-1710, 8.25 Trial Tr. (docketed as D.I. 581) 374:22–375:15.

II.

Philips argues I should grant summary judgment in its favor on Quectel's FRAND counterclaims because the doctrines of *res judicata* and claim splitting preclude Quectel from asserting those claims in this case and because Quectel cannot prove it suffered any damages. I address these arguments in turn.

A.

To preclude a party from asserting claims under the doctrine of *res judicata*, the moving party must establish: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Duhaney v. Attorney Gen.*, 621 F.3d 340, 347 (3d Cir. 2010) (internal quotation marks omitted). Philips concedes that it can satisfy the first element of *res judicata* only if I "agree[] [that] the dismissal [of Quectel's 1710 counterclaims] was 'with prejudice' or order[] that the dismissal is with prejudice." D.I. 351 at 12. For the reasons stated above, I do not agree that Quectel withdrew its FRAND counterclaims in the 1710 Action with prejudice.

Nor have I ordered the dismissal of those counterclaims with prejudice. Accordingly, Quectel's FRAND counterclaims are not barred by *res judicata*.

B.

As a general rule, "a single party-plaintiff [cannot] simultaneously maintain two actions against the same defendant." *Pennsylvania v. Navient Corp.*, 967 F.3d 273, 286 (3d Cir. 2020). This doctrine against claim splitting emanates from two fundamental principles: a district court has the inherent power to manage its docket, *Dietz v. Bouldin*, 579 U.S. 40, 41 (2016), and a plaintiff "ha[s] no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant," *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977). Because "the claim-splitting rule exists to allow district courts to manage their docket[s] and dispense with duplicative litigation," *Katz v. Gerardi*, 655 F.3d 1212, 1218–19 (10th Cir. 2011), the decision to preclude a party from asserting a cause of action on claim-splitting grounds lies within the district court's discretion, *see Brady v. UBS Fin. Servs., Inc.*, 538 F.3d 1319, 1327 n.10 (10th Cir. 2008) ("[T]he decision to dismiss on [claim-splitting] ground[s] is within the discretion of the district court."); *see also Schneider v. United States*, 301 F. App'x 187, 190 (3d Cir. 2008) (reviewing district court's decision to dismiss new complaint on claim-splitting grounds for abuse discretion); *Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 42 F.4th 688, 697 (7th Cir. 2022)

("[C]laim splitting calls for an exercise of discretion in the trial court."). Because the decision to dismiss a cause of action on claim-splitting grounds is discretionary, Philips cannot be entitled as a matter of law to a judgment in its favor on Quectel's FRAND counterclaims on claim-splitting grounds. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact *and the movant is entitled to judgment as a matter of law*.") (emphasis added).

I note for the benefit of the parties (and in the event of an appeal) that had Philips asked me to dismiss or stay Quectel's FRAND counterclaims on claim-splitting grounds, I would have denied that request. As an initial matter, Quectel is not simultaneously maintaining two sets of FRAND counterclaims against Philips. The FRAND counterclaims in the 1710 Action were dismissed. Thus, the rule against claim splitting has no application here. Second, even if the FRAND counterclaims in the 1710 Action were still pending, those counterclaims were directed solely to the licensing of the patents asserted by Philips in that case and thus are not the same claims as the FRAND counterclaims in this action. Third, Quectel's counterclaims in each action appropriately match Philips' claims in that action. Philips accused Quectel in the 1710 Action of infringing two patents and sought damages for that infringement. Quectel's FRAND counterclaims in the 1710 Action concerned only those two patents. Philips has accused Quectel in this

action of infringing four other patents and seeks damages for that infringement. But it also has FRAND claims in this action, and, until I dismissed it three days ago for lack of jurisdiction, one of those FRAND claims sought a declaratory judgment "that Quectel asserted and accepted its third[-]party beneficiary rights to a FRAND license, promising to enter a license on FRAND terms, which can be determined, and a declaration of the FRAND royalties and terms, including interest, *for Quectel to license Philips' 2G, 3G, and 4G worldwide SEP portfolio*." D.I. 201 at 62 (emphasis added). Not surprisingly, then, Quectel's counterclaims in this action concern the four asserted patents *and* Philips' worldwide SEP portfolio. Philips, I think it fair to say, got what it asked for in terms of counterclaims. And for these reasons, were I to be confronted with a motion to dismiss Quectel's FRAND counterclaims on claim-splitting grounds, I would exercise my discretion and deny that application.

C.

Finally, Philips argues that Quectel cannot prevail on its FRAND counterclaims as a matter of law because Quectel has "set forth no evidence of damages, which is an essential element of the claims." D.I. 351 at 21. Quectel, however, alleges in its counterclaims that it has had to expend resources defending itself "from Philips['] baseless allegations and demands," D.I. 218 at 59 ¶ 20; *see also* D.I. 218 at 68, ¶ 46 & 70–71, ¶ 55; and Quectel's General Counsel, Jessica

Hu, testified in her deposition in this case that Quectel has spent "more than millions" of dollars defending itself against Philips, including "about 8 million" dollars "just [on] the attorney's fees alone." D.I. 369-12 at 157:10–14, 19–24. Thus, there is evidence of record from which a rational jury could find that Quectel suffered damages.

Philips argues that Hu's deposition testimony is hearsay, D.I. 351 at 25 n.5; D.I. 398 at 10, but that fact is of no moment since Quectel says that Hu will testify at trial, D.I. 366 at 24. Philips also argues that Federal Rule of Civil Procedure 37(c) bars Quectel from adducing Hu's testimony and any other evidence of damages at trial because Quectel explicitly stated in its First Amended Rule 26 Initial Disclosures that it "has not asserted any claim for damages in this matter," D.I. 351 at 7 (quoting D.I. 354-8 at 6), and never disclosed Hu in its Rule 26 disclosures as a witness with knowledge of damages, D.I. 351 at 25 n.5; *see also* D.I. 354-8 at 3. This last issue gives me pause. I am particularly troubled by Quectel's failure to make any attempt to justify in its brief filed in opposition to the pending motion why it expressly stated in its amended Initial Disclosures that it "has not asserted any claim for damages in this matter" and never supplemented those disclosures. I am not willing, however, to grant summary judgment in Philips' favor on this basis because Philips' briefing on the issue is wanting, and I am not confident based on that briefing that the extreme sanction of excluding

critical evidence at trial is appropriate. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791–92 (3d Cir. 1994) ("The exclusion of critical evidence is an 'extreme' sanction, not normally . . . imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence.") (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977)).

* * * *

NOW THEREFORE, at Wilmington on this Nineteenth Day of November in 2026, it is HEREBY ORDERED that Plaintiff Koninklijke Philips N.V.'s Motion for Summary Judgment No. 2 for Summary Judgment Concerning Quectel's Counterclaims Nos. 1 & 2 (D.I. 350) is DENIED.

CHIEF JUDGE